**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CHAPARRAL ENERGY, INC., *et al.*,[1] | ) | Case No. 20-___ (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**APPLICATION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING**
**DEBTORS TO EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS LLC**
**AS CLAIMS AND NOTICING AGENT**
**EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

Chaparral Energy, Inc. and its subsidiaries that are debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**"), hereby file this application (this "**Application**") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Order**"), granting the relief described below.  In support thereof, the Debtors submit the *Declaration of Robert Jordan in Support of the Application of Debtors for Entry of an Order Authorizing Debtors to Employ and Retain Kurtzman Carson Consultants LLC as Claims and Noticing Agent Effective* Nunc Pro Tunc *to the Petition Date* (the "**Jordan Declaration**"), attached hereto as **Exhibit B**, and refer to the contemporaneously filed *Declaration of Charles Duginski in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**") and further represent as follows:

---

[1]    The Debtors in these cases, along with the last four digits (or five digits, in cases in which multiple Debtors have the same last four digits) of each Debtor's federal tax identification number, are: CEI Acquisition, L.L.C. (1817); CEI Pipeline, L.L.C. (6877); Chaparral Biofuels, L.L.C. (1066); Chaparral CO2, L.L.C. (1656); Chaparral Energy, Inc. (90941); Chaparral Energy, L.L.C. (20941); Chaparral Exploration, L.L.C. (1968); Chaparral Real Estate, L.L.C. (1655); Chaparral Resources, L.L.C. (1710); Charles Energy, L.L.C. (3750); Chestnut Energy, L.L.C. (9730); Green Country Supply, Inc. (2723); Roadrunner Drilling, L.L.C. (2399); and Trabajo Energy, L.L.C. (9753).  The Debtors' address is 701 Cedar Lake Boulevard, Oklahoma City, OK 73114.

## JURISDICTION

1.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.      Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are section 156(c) of title 28 of the United States Code, sections 105(a) and 503(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Rule 2002(f) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 2002-1(f).

## BACKGROUND

4.      On August 16, 2020 (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing the Chapter 11 Cases.  The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested in the Chapter 11 Cases and no committees have yet been appointed.

RLF1 23875607v.1

5.     The Debtors commenced the Chapter 11 Cases to implement their comprehensive, prepackaged plan of reorganization (the "**Plan**").  The Plan is the result of extensive negotiations between the Debtors, their revolving lenders, and their unsecured noteholders, who have agreed on a comprehensive balance sheet restructuring that will reduce the Debtors' debt burden and increase liquidity.  Holders of more than 75% of the Debtors' outstanding revolving loans and more than 75% of the Debtors' outstanding unsecured notes have documented their support for the Plan and the Chapter 11 Cases by executing a restructuring support agreement prior to the Petition Date.  Under the Plan, the Debtors will equitize all of their approximately $300 million of unsecured notes, eliminating a significant portion of their prepetition debt, and convert the revolving loans into an exit facility.  Importantly, the Plan contemplates that allowed general unsecured claims will remain unimpaired and be paid in full or "ride through" the Chapter 11 Cases.

6.     Additional information about the Debtors, including their business operations, their capital structure and prepetition indebtedness, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the First Day Declaration, which is incorporated herein by reference.

## RELIEF REQUESTED

7.     By this Application, pursuant to section 156(c) of title 28 of the United States Code, sections 105(a) and 503(b) of the Bankruptcy Code, Bankruptcy Rule 2002(f) and Local Rule 2002-1(f), the Debtors request entry of an order (a) authorizing the Debtors to employ and retain Kurtzman Carson Consultants LLC ("**KCC**") as their claims and noticing agent (the "**Claims and Noticing Agent**") in the Chapter 11 Cases effective *nunc pro tunc* to the Petition Date pursuant to that certain services agreement (the "**Services Agreement**") by and between the

3

Debtors and KCC, a copy of which is annexed as **Exhibit C**, attached hereto; and (b) granting related relief.

**A.        Retention of KCC as Claims and Noticing Agent**

8.        The Debtors propose to engage KCC to act as the Debtors' Claims and Noticing Agent.  This retention is the most effective and efficient manner of noticing the creditors and parties in interest of the filing of the Chapter 11 Cases and other developments.   In that capacity, KCC will, among other things, distribute notices and transmit, receive, process, docket, and maintain proofs of claim filed in connection with these Chapter 11 Cases.

9.        The terms of retention and employment of KCC are set forth in the Services Agreement.  Pursuant to this Application, the Debtors are seeking to retain and employ KCC as the Claims and Noticing Agent solely on the terms and provisions set forth in this Application and the proposed Order.

10.        Although the Services Agreement contemplates that KCC will provide services for the Debtors outside the scope of 28 U.S.C. § 156, the Debtors will seek authorization by separate application to retain and employ KCC as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for those services.

**B.        KCC's Qualifications**

11.        KCC is a leading chapter 11 administrator and comprises industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  KCC has acted as the official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide.  KCC's cases in this district include:  *In re Pace Industries, LLC, et al.*, Case No. 20-10927 (MFW) (Bankr. D. Del. Apr. 12, 2020); *In re TZEW Holdco LLC, et al.*, Case No. 20-10910 (CSS) (Bankr. D. Del. Apr. 8, 2020); *In re Art Van Furniture, LLC, et al.*, Case No. 20-10553 (CSS) (Bankr. D. Del. Mar. 8, 2020); *In*

4

*re Valeritas Holdings, Inc., et al.*, Case No. 20-10290 (LSS) (Bankr. D. Del. Feb. 9, 2020); *In re Melinta Therapeutics, Inc., et al.*, Case No. 19-12748 (LSS) (Bankr. D. Del. Dec. 27, 2019); *In re Celadon Group, Inc., et al.*, Case No. 19-12606 (KBO) (Bankr. D. Del. Dec. 8, 2019); *In re HRI Holding Corp., et al.*, Case No. 19-12415 (MFW) (Bankr. D. Del. Nov. 14, 2019); *In re Highland Capital Management, L.P.*, Case No. 19-12239 (CSS) (Bankr. D. Del. Oct. 16, 2019); *In re Bayou Steel BD Holdings, L.L.C.*, Case No. 19-12153 (KBO) (Bankr. D. Del. Oct. 1, 2019); *In re Pancakes & Pies, LLC, et al. (f/k/a Perkins & Marie Callender's, LLC), et al.*, Case No. 19-11743 (KG) (Bankr. D. Del. Aug. 5, 2019); *In re Emerge Energy Services LP, et al.*, Case No. 19-11563 (KBO) (Bankr. D. Del. Jul. 15, 2019); *In re Fuse, LLC, et al.*, Case No. 19-10872 (KG) (Bankr. D. Del. Apr. 22, 2019); *In re Achaogen, Inc.*, Case No. 19-10844 (BLS) (Bankr. D. Del. Apr. 15, 2019); *In re Southcross Energy Partners, L.P., et al.*, Case No. 19-10702 (MFW) (Bankr. D. Del. Apr. 1, 2019); *In re Novum Pharma, LLC*, Case No. 19-10209 (KJC) (Bankr. D. Del. Feb. 3, 2019); *In re Egalet Corp.*, Case No. 18-12439 (BLS) (Bankr. D. Del. Nov. 1, 2018); *In re Welded Construction, L.P., et al.*, Case No. 18-12378 (KG) (Bankr. D. Del. Oct. 22, 2018); *In re ATD Corporation, et al.,* Case No. 18-12221 (KJC) (Bankr. D. Del. Oct. 4, 2018); *In re RM Holdco LLC, et al.*, Case No. 18-11795 (MFW) (Bankr. D. Del. Aug. 5, 2018); *In re Heritage Home Group LLC, et al.*, Case No. 18-11736 (KG) (Bankr. D. Del. Jul. 29, 2018); *In re Tintri, Inc.*, Case No. 18-11625 (KJC) (Bankr. D. Del. Jul. 10, 2018).

12.     By appointing KCC as the Claims and Noticing Agent in these Chapter 11 Cases, the distribution of notices and the processing of claims will be expedited, and the Office of the Clerk of the Bankruptcy Court for the District of Delaware (the "**Clerk**") will be relieved of the administrative burden of processing any such claims.

5

**C.      Services to Be Provided by KCC**

13.      This Application pertains only to the work to be performed by KCC under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f).  Any work to be performed by KCC outside of this scope is not covered by this Application or the Order.[2]

14.      Subject to the Court's approval, at the request of the Debtors, and to the extent necessary, KCC will perform the following tasks in its role as the Claims and Noticing Agent in these Chapter 11 Cases (collectively, the "**Claims and Noticing Services**"), as well as all quality control relating thereto:

(a)      Prepare and serve required notices and documents in these Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including, without limitation: (i) notice of the commencement of these Chapter 11 Cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code; (ii) notice of any claims bar date; (iii) notices of transfers of claims; (iv) notices of objections to claims and objections to transfers of claims; (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d); (vi) notice of the effective date of any plan; and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of these Chapter 11 Cases;

(b)      Maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "**Schedules**"), listing the Debtors' known creditors and the amounts owed thereto;

(c)      Maintain a: (i) list of all potential creditors, equity holders, and other parties in interest and (ii) "core" service/mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k), and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010 and update said lists and make said lists available upon request by a party in interest or the Clerk;

---

[2]  As noted above, the Debtors plan to seek authorization to retain and employ KCC as administrative advisor in these Chapter 11 Cases by separate application pursuant to section 327(a) of the Bankruptcy Code because the administration of these Chapter 11 Cases will require KCC to perform duties outside the scope of 28 U.S.C. § 156(c).

(d)     Furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify such potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)     Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)     For all notices, motions, orders, or other pleadings or documents served, prepare and file, or cause to be filed, with the Clerk an affidavit or certificate of service within seven business days of service, which includes: (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served; (ii) a list of persons to whom it was served (in alphabetical order) with their mailing or email addresses as appropriate; (iii) the manner of service; and (iv) the date served;

(g)     Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h)     Maintain the official claims register for each Debtor (collectively, the "**Claims Registers**") on behalf of the Clerk, and, upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers;

(i)     Specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.); (vi) the applicable Debtor; and (vii) any disposition of the claim;

(j)     Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(k)     Record all transfers of claims and provide any notices of such transfers, as required by Bankruptcy Rule 3001(e);

(l)     Relocate, by messenger or overnight delivery, all of the Court-filed proofs of claim to the offices of KCC, not less than weekly;

(m)     Upon completion of the docketing process for all claims received to date for each of the Chapter 11 Cases, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(n)     Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on or changes to the Claims Registers and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(o)     Assist in the dissemination of information to the public and respond to requests for administrative information regarding these Chapter 11 Cases as directed by the Debtors and/or the Court, including through the use of a case website and/or call center;

(p)     If these Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three days of notice to KCC of entry of the order converting the Chapter 11 Cases;

(q)     30 days prior to the close of these Chapter 11 Cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing KCC as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these Chapter 11 Cases;

(r)     Within seven days of notice to KCC of entry of an order closing these Chapter 11 Cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the Chapter 11 Cases; and

(s)     At the close of these Chapter 11 Cases: (i) box and transport all original documents, in proper format, as provided by the Clerk, to (A) the Philadelphia Federal Records Center, located at 14700 Townsend Road, Philadelphia, PA 19154, or (B) any other location requested by the Clerk; and (ii) docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.

15.     The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by KCC.

## D.     Professional Compensation

16.     The Debtors respectfully request that the undisputed fees and expenses incurred by KCC in the performance of the Claims and Noticing Services in accordance with the terms of the Services Agreement be treated as administrative expenses of the Debtors' estates

pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.

17.     KCC agrees to maintain records of all services, showing dates, categories of services, fees charged, and expenses incurred.  KCC further agrees to serve monthly invoices on the Debtors, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), counsel for the Debtors, counsel for any official committee appointed in these Chapter 11 Cases, and any party in interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Services Agreement or monthly invoices between any of the foregoing parties and KCC, such party and KCC shall meet and confer in an attempt to resolve the dispute.  If resolution is not achieved, the parties may seek resolution of the matter by the Court.

18.     Prior to the Petition Date, the Debtors provided KCC with a retainer in the amount of $45,000.  KCC seeks to first apply the retainer to all prepetition invoices and, thereafter, to hold the remainder of the retainer under the Services Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred under the Services Agreement.

**E.     Indemnification**

19.     As part of the overall compensation payable to KCC under the terms of the Services Agreement, the Debtors have agreed to certain indemnification obligations as set forth in the Services Agreement, to the extent permitted by applicable law.

20.     Under the terms of the Services Agreement and indemnification provisions included therein, which were negotiated at arm's length between the Debtors and KCC, the Debtors have agreed to indemnify and hold harmless KCC and its affiliates, members, directors, officers, employees, consultants, subcontractors, and agents (collectively, together with KCC, the "**KCC Indemnified Parties**") under certain circumstances specified in the Services Agreement, except in circumstances resulting from KCC Indemnified Parties' gross negligence or willful

9

misconduct or as otherwise provided in the Services Agreement or any order authorizing the

employment and retention of KCC. The Debtors believe that such indemnification obligations are

reasonable, necessary to retain the services of a claims and noticing agent in these Chapter 11

Cases, and, consequently, in the best interests of the Debtors, their estates, and their creditors.

**F.      KCC's Disinterestedness**

21.      KCC has reviewed its conflicts system to determine whether it has any

relationships with the creditors and parties in interest provided by the Debtors, and, to the best of

the Debtors' knowledge, information, and belief, and except as disclosed in the Jordan Declaration,

KCC represents that it neither holds nor represents any interest materially adverse to the Debtors'

estates in connection with any matter on which it will be employed.

22.      Moreover, in connection with its retention as Claims and Noticing Agent,

KCC represents in the Jordan Declaration, among other things, that:

(a)      KCC is not a creditor of the Debtors;

(b)      KCC is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code;

(c)      KCC will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these Chapter 11 Cases;

(d)      By accepting employment in these Chapter 11 Cases, KCC waives any rights to receive compensation from the United States government in connection with these Chapter 11 Cases;

(e)      In its capacity as the Claims and Noticing Agent in these Chapter 11 Cases, KCC will not be an agent of the United States and will not act on behalf of the United States;

(f)      KCC will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these Chapter 11 Cases;

10

(g)    In its capacity as the Claims and Noticing Agent in these Chapter 11 Cases, KCC will not intentionally misrepresent any fact to any person;

(h)    KCC shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

(i)    KCC will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)    None of the services provided by KCC as the Claims and Noticing Agent in these Chapter 11 Cases shall be at the expense of the Clerk.

23.    KCC will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## G.    Compliance with Claims Agent Protocol

24.    The Debtors submit that, to the extent applicable, this Application complies with the Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c) (the "**Claims Agent Protocol**") and conforms to the standard section 156(c) application in use in the Court.  In accordance with the Claims Agent Protocol, prior to the selection of KCC as the Claims and Noticing Agent, the Debtors have obtained, reviewed, and compared engagement proposals from at least three Court-approved claims and noticing agents, including KCC, to ensure selection through a competitive process.  Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that KCC's rates are competitive and reasonable given its quality of services and expertise.

## BASIS FOR RELIEF REQUESTED

## A.    Retention and Employment of KCC as Claims and Noticing Agent Is Permitted

25.    Although the Debtors have not filed the Schedules, they anticipate that there will be potentially numerous entities that will need to be noticed.  In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the

11

appointment of a notice and claims agent is both necessary and in the best interests of the Debtors' estates and creditors because the Debtors will be relieved of the burdens associated with the notice and claims processing services to be provided by KCC.  Relieved of such burdens, the Debtors will be able to devote their full attention and resources to maximizing value for their stakeholders and facilitating the orderly administration of the Chapter 11 Cases.

26.     Bankruptcy Rule 2002 generally regulates what notices must be given to creditors and other parties in interest in bankruptcy cases.  Under Bankruptcy Rule 2002(f), the Court may direct that some person other than the Clerk give notice of the various matters described below.  Moreover, section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other than the Clerk for administration of bankruptcy cases.  It states, in relevant part, as follows:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.  The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

27.     In addition, Local Rule 2002-1(f) provides:

> Upon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c).  In all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within seven (7) days thereafter.  The notice and/or claims clerk shall comply with the Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. 156(c) (which can be found on the Court's website) and shall perform the [Claims and Noticing Services].

Local Rule 2002-1(f).

12

28.     Accordingly, Bankruptcy Rule 2002, Local Rule 2002-1(f), and section 156(c) of title 28 of the United States Code empower the Court to utilize outside agents and facilities for notice and claims purposes, provided that the Debtors' estates bear the cost of such services.

29.     For all of the foregoing reasons, the Debtors believe that the retention of KCC as the Claims and Noticing Agent in these Chapter 11 Cases is necessary and in the best interests of the Debtors, their estates and creditors, and all parties in interest.  Furthermore, the Debtors respectfully submit that the fees and expenses that would be incurred by KCC under the proposed engagement would be administrative in nature and, therefore, should not be subject to standard fee application procedures of professionals.

30.     By separate application, the Debtors intend to seek authorization to retain and employ KCC as administrative agent in these Chapter 11 Cases, pursuant to section 327(a) of the Bankruptcy Code, because the administration of the Chapter 11 Cases will require KCC to perform duties outside the scope of 28 U.S.C. § 156(c).

**B.      *Nunc Pro Tunc* Relief Is Appropriate**

31.     Pursuant to the Debtors' request, KCC has agreed to serve as Claims and Noticing Agent on and after the Petition Date with assurances that the Debtors would seek approval of its employment and retention *nunc pro tunc* to the Petition Date, so that KCC may be compensated for its services prior to the approval of this Application.  The Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment, as provided in this Application, because KCC has provided and continues to provide valuable services to the Debtors' estates in the interim period.  The Local Rules empower courts in this district to approve *nunc pro tunc* employment, and the Debtors submit that such approval is justified here.  *See, e.g.*,

13

Local Rule 2014-1(b) ("If the retention motion is granted, the retention shall be effective as of the date the motion was filed, unless the Court orders otherwise.").

32.     Courts in this jurisdiction have routinely approved *nunc pro tunc* employment, similar to that requested herein, in matters comparable to this matter. *See, e.g.*, *In re Exide Holdings, Inc.*, No. 20-11157 (CSS) (Bankr. D. Del. May 21, 2020); *In re Art Van Furniture, LLC*, No. 20-10553 (CSS) (Bankr. D. Del. March 10, 2020); *In re RentPath Holdings, Inc.*, No. 20-10312 (BLS) (Bankr. D. Del. Feb. 13, 2020); *In re Bayou Steel BD Holdings, L.L.C.*, No. 19-12153 (KBO) (Bankr. D. Del. Oct. 3, 2019); *In re VER Technologies Holdco LLC*, No. 18-10834 (KG) (Bankr. D. Del. April 6, 2018); *In re Rand Logistics, Inc.*, No. 18-10175 (BLS) (Bankr. D. Del. Jan. 31, 2018); *In re ExGen Tex. Power, LLC*, No. 17-12377 (BLS) (Bankr. D. Del. Nov. 8, 2017); *In re TerraVia Holdings, Inc.*, No. 17-11655 (CSS) (Bankr. D. Del. Aug. 3, 2017); *In re Keystone Tube Co., LLC*, No. 17-11330 (CSS) (Bankr. D. Del. June 20, 2017).

## NOTICE

33.     Notice of this Application will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) the administrative agent for the Debtors' prepetition revolving credit facility; (c) counsel to the administrative agent for the Debtors' prepetition revolving credit facility; (d) the indenture trustee under the Debtors' 8.750% senior notes due 2023; (e) Stroock & Stroock & Lavan LLP and Young, Conaway, Stargatt & Taylor, LLP as counsel to the ad hoc group of holders of the 8.750% senior notes due 2023; (f) the Internal Revenue Service; (g) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (h) the United States Attorney for the District of Delaware; (i) the Attorneys General for the states of Oklahoma and Texas; (j) counsel to Naylor Farms, Inc. and Harrel's LLC, as lead plaintiffs in the action captioned *Naylor Farms, Inc., individually and as class representative on behalf of all similarly situated persons v.*

14

*Chaparral Energy, L.L.C.*, Case No. 11-00634 (W.D. Ok. 2011); (k) the parties included on the Debtors' consolidated list of twenty (20) largest unsecured creditors; and (l) any party that is entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "**Notice Parties**").  The Debtors submit that, under the circumstances, no other or further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in the Application and such other and further relief as may be just and proper.


Dated: August 16, 2020
       Wilmington, Delaware

                              Chaparral Energy, Inc.
                              Debtors and Debtors in Possession


                               /s/  *Charles Duginski*
                              Charles Duginski
                              Chief Executive Officer and
                              President of Chaparral Energy, Inc.

15

**Exhibit A**

**Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| CHAPARRAL ENERGY, INC., *et al.*,[1] | Case No. 20-_____ (___) |
| Debtors. | (Jointly Administered) |

## ORDER AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS AND NOTICING AGENT EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE

Upon the application (the "**Application**")[2] of Chaparral Energy, Inc. and its subsidiaries that are debtors and debtors in possession (collectively, the "**Debtors**") in the Chapter 11 Cases for entry of an order, pursuant to section 156(c) of title 28 of the United States Code, sections 105(a) and 503(b) of the Bankruptcy Code, Bankruptcy Rule 2002(f) and Local Rule 2002-1(f), (a) authorizing the Debtors to employ and retain Kurtzman Carson Consultants LLC ("**KCC**") as their claims and noticing agent (the "**Claims and Noticing Agent**") in the Chapter 11 Cases effective *nunc pro tunc* to the Petition Date pursuant to the Services Agreement; and (b) granting related relief; and the Court having jurisdiction to consider the matters raised in the Application pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having authority to hear the matters raised in the Application pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the

---

[1] The Debtors in these cases, along with the last four digits (or five digits, in cases in which multiple Debtors have the same last four digits) of each Debtor's federal tax identification number, are: CEI Acquisition, L.L.C. (1817); CEI Pipeline, L.L.C. (6877); Chaparral Biofuels, L.L.C. (1066); Chaparral CO2, L.L.C. (1656); Chaparral Energy, Inc. (90941); Chaparral Energy, L.L.C. (20941); Chaparral Exploration, L.L.C. (1968); Chaparral Real Estate, L.L.C. (1655); Chaparral Resources, L.L.C. (1710); Charles Energy, L.L.C. (3750); Chestnut Energy, L.L.C. (9730); Green Country Supply, Inc. (2723); Roadrunner Drilling, L.L.C. (2399); and Trabajo Energy, L.L.C. (9753). The Debtors' address is 701 Cedar Lake Boulevard, Oklahoma City, OK 73114.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

Application and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Application and opportunity for a hearing on the Application having been given to the Notice Parties, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Application, the Jordan Declaration and the First Day Declaration; and the Court having held, if necessary, a hearing on the Application (the "**Hearing**"); and the Court having found that the legal and factual bases set forth in the Application and at the Hearing, if any, establish just cause for the relief granted herein; and the Court having determined that the relief requested in the Application being in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

### ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Application is GRANTED, as set forth herein.

2.      Notwithstanding the terms of the Services Agreement attached to the Application, the Application is granted solely as set forth in this Order.

3.      The Debtors are authorized to employ and retain KCC as their Claims and Noticing Agent, effective *nunc pro tunc* to the Petition Date, to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim filed in these cases (if any), and all related tasks, all as described in the Application (collectively, the "**Claims and Noticing Services**"), as set forth in the Application and under the terms of the Services Agreement, attached to the Application as **Exhibit C**, relating to such services.

4.      KCC shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these Chapter 11 Cases.  KCC is authorized and directed to maintain official Claims Registers for each of the Debtors, to provide public access

2

to every proof of claim unless otherwise ordered by the Court, and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

5.       KCC is authorized to take such other action to comply with all duties set forth in the Application.

6.       The Debtors may, in their sole discretion, submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by KCC but is not specifically authorized by this Order.

7.       KCC is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim.

8.       KCC shall maintain records of all services performed, showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtors, the U.S. Trustee, counsel to the Debtors, counsel to any official committee appointed in the Chapter 11 Cases monitoring the expenses of the Debtors, and any party in interest who specifically requests service of the monthly invoices.

9.       Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of KCC incurred pursuant to the Services Agreement are to be treated as an administrative expense of the Debtors' estates.

10.      Without further order of the Court, the Debtors are authorized to compensate and reimburse KCC in accordance with the terms and conditions of the Services Agreement upon KCC's submission to the Debtors of invoices summarizing, in reasonable detail, the services rendered and the reasonable and necessary expenses incurred in connection therewith and without the necessity for KCC to file an application for compensation or reimbursement with the Court.

11. KCC may apply its retainer against all prepetition fees and expenses; thereafter, KCC may hold the remainder of the retainer under the Services Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred under the Services Agreement.

12. If any dispute arises relating to the Services Agreement or KCC's monthly invoices, the disputing party and KCC shall meet and confer in an attempt to resolve such dispute; *provided* that the parties may seek resolution of the matter from the Court if resolution is not achieved.

13. Except to the extent set forth below, the Debtors are authorized to indemnify KCC under the terms of the Services Agreement:

> (i) KCC shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Services Agreement for services other than the Claims and Noticing Services provided under the Services Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by this Court.

> (ii) Notwithstanding anything to the contrary in the Services Agreement, the Debtors shall have no obligation to indemnify KCC, or provide contribution or reimbursement to KCC, for any claim or expense that is either: (a) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from KCC's bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, willful misconduct, or fraud; (b) for a contractual dispute in which the Debtors allege breach of KCC's contractual obligations under the Services Agreement unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (c) settled prior to a judicial determination as to the exclusions set forth in clauses (a) and (b) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which KCC should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement as modified by the Application and this Order.

14. If before the earlier of: (a) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no longer subject to appeal); or (b) the entry of an order closing these Chapter 11 Cases, KCC believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Services Agreement (as modified by this Order), including,

4

without limitation, the advancement of defense costs, KCC must file an application before this Court, and the Debtors may not pay any such amounts to KCC before the entry of an order by this Court approving such application and payment requested therein.  This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by KCC for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify KCC.  All parties in interest shall retain the right to object to any demand by KCC for indemnification, contribution, or reimbursement.

15.     In the event KCC is unable to provide the Claims and Noticing Services, KCC shall immediately notify the Clerk and counsel to the Debtors and, upon approval of this Court, turn over all original proofs of claim and computer information to another claims and noticing agent with the advice and consent of the Clerk and counsel to the Debtors.

16.     Notwithstanding any term in the Services Agreement to the contrary, during the Chapter 11 Cases, KCC's liability will not be limited to the amount paid or billed to the Debtors.

17.     KCC shall not cease providing claims processing services during these Chapter 11 Cases for any reason, including nonpayment, without an order of this Court.

18.     In the event of any inconsistency between the Services Agreement, the Application, and this Order, this Order shall govern.

19.     Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

20.     The Debtors and KCC are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

21.     Notice of the Application has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Application or the entry of this Order shall be required.

22.     The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

6

**<u>Exhibit B</u>**

**Jordan Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CHAPARRAL ENERGY, INC., *et al.*,[1] | ) | Case No. 20-___ (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

### DECLARATION OF ROBERT JORDAN IN SUPPORT OF APPLICATION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS AND NOTICING AGENT EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE

I, Robert Jordan, being duly sworn, state the following under penalty of perjury:

1.      I am a Senior Managing Director of Corporate Restructuring Services for Kurtzman Carson Consultants LLC ("**KCC**"), a chapter 11 administrative services firm whose offices are located at 222 N. Pacific Coast Highway, 3rd Floor, El Segundo, California 90245.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      I submit this declaration (this "**Declaration**") in support of the Debtors' *Application of Debtors for Entry of an Order Authorizing the Debtors to Employ and Retain Kurtzman Carson Consultants LLC as Claims and Noticing Agent Effective* Nunc Pro Tunc *to the Petition Date* (the "**Application**")[2] to which this Declaration is attached.

---

[1]    The Debtors in these cases, along with the last four digits (or five digits, in cases in which multiple Debtors have the same last four digits) of each Debtor's federal tax identification number, are: CEI Acquisition, L.L.C. (1817); CEI Pipeline, L.L.C. (6877); Chaparral Biofuels, L.L.C. (1066); Chaparral CO2, L.L.C. (1656); Chaparral Energy, Inc. (90941); Chaparral Energy, L.L.C. (20941); Chaparral Exploration, L.L.C. (1968); Chaparral Real Estate, L.L.C. (1655); Chaparral Resources, L.L.C. (1710); Charles Energy, L.L.C. (3750); Chestnut Energy, L.L.C. (9730); Green Country Supply, Inc. (2723); Roadrunner Drilling, L.L.C. (2399); and Trabajo Energy, L.L.C. (9753).  The Debtors' address is 701 Cedar Lake Boulevard, Oklahoma City, OK 73114.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

**KCC's Qualifications**

3.      KCC specializes in providing comprehensive chapter 11 administrative services, including noticing, claims processing, balloting, and other related services critical to the effective administration of chapter 11 cases.  Indeed, KCC has developed efficient and cost-effective methods to properly handle the voluminous mailings associated with the noticing, claims processing, and balloting portions of chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holders, and all other parties in interest.  Further, KCC has experience working with, and will continue to work with, the Clerk's office to ensure that the services provided conform to all of the Court's procedures, the Local Rules, and the provisions of any orders entered by the Court.

4.      The Debtors' estates and their creditors will benefit from KCC's retention because KCC has developed efficient and cost-effective methods in this area of expertise.  KCC is fully equipped to handle the volume of mailing involved in properly sending the required notices to and processing the claims of creditors in the Chapter 11 Cases.  KCC is one of the country's leading chapter 11 administrators, with experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases.

5.      KCC has substantial experience in matters of this size and complexity and has acted as the official claims and noticing agent in many large bankruptcy cases filed in this district and in other districts nationwide.  KCC's cases include: *In re Pace Industries, LLC, et al.*, Case No. 20-10927 (MFW) (Bankr. D. Del. Apr. 12, 2020); *In re TZEW Holdco LLC, et al.*, Case No. 20-10910 (CSS) (Bankr. D. Del. Apr. 8, 2020); *In re Art Van Furniture, LLC, et al.,*, Case No. 20-10553 (CSS) (Bankr. D. Del. Mar. 8, 2020); *In re Valeritas Holdings, Inc., et al.*, Case No. 20-10290 (LSS) (Bankr. D. Del. Feb. 9, 2020); *In re Melinta Therapeutics, Inc., et al.*, Case No. 19-12748

2

(LSS) (Bankr. D. Del. Dec. 27, 2019); *In re Celadon Group, Inc., et al.*, Case No. 19-12606 (KBO) (Bankr. D. Del. Dec. 8, 2019); *In re HRI Holding Corp., et al.*, Case No. 19-12415 (MFW) (Bankr. D. Del. Nov. 14, 2019); *In re Highland Capital Management, L.P.*, Case No. 19-12239 (CSS) (Bankr. D. Del. Oct. 16, 2019); *In re Bayou Steel BD Holdings, L.L.C.*, Case No. 19-12153 (KBO) (Bankr. D. Del. Oct. 1, 2019); *In re Pancakes & Pies, LLC, et al. (f/k/a Perkins & Marie Callender's, LLC), et al.*, Case No. 19-11743 (KG) (Bankr. D. Del. Aug. 5, 2019); *In re Emerge Energy Services LP, et al.*, Case No. 19-11563 (KBO) (Bankr. D. Del. Jul. 15, 2019); *In re Fuse, LLC, et al.*, Case No. 19-10872 (KG) (Bankr. D. Del. Apr. 22, 2019); *In re Achaogen, Inc.*, Case No. 19-10844 (BLS) (Bankr. D. Del. Apr. 15, 2019); *In re Southcross Energy Partners, L.P., et al.*, Case No. 19-10702 (MFW) (Bankr. D. Del. Apr. 1, 2019); *In re Novum Pharma, LLC*, Case No. 19-10209 (KJC) (Bankr. D. Del. Feb. 3, 2019); *In re Egalet Corp.*, Case No. 18-12439 (BLS) (Bankr. D. Del. Nov. 1, 2018); *In re Welded Construction, L.P., et al.*, Case No. 18-12378 (KG) (Bankr. D. Del. Oct. 22, 2018); *In re ATD Corporation, et al.,* Case No. 18-12221 (KJC) (Bankr. D. Del. Oct. 4, 2018); *In re RM Holdco LLC, et al.*, Case No. 18-11795 (MFW) (Bankr. D. Del. Aug. 5, 2018); *In re Heritage Home Group LLC, et al.*, Case No. 18-11736 (KG) (Bankr. D. Del. Jul. 29, 2018); *In re Tintri, Inc.*, Case No. 18-11625 (KJC) (Bankr. D. Del. Jul. 10, 2018); *In re The Walking Company Holdings, Inc.*, Case No. 18-10474 (LSS) (Bankr. D. Del. Mar. 8, 2018); *In re VER Technologies Holdco LLC*, No. 18-10834 (KG) (Bankr. D. Del. April 6, 2018); *In re Rand Logistics, Inc.*, No. 18-10175 (BLS) (Bankr. D. Del. Jan. 29, 2018); *In re ExGen Tex. Power, LLC*, No. 17-12377 (BLS) (Bankr. D. Del. Nov. 7, 2017); *In re TerraVia Holdings, Inc.*, No. 17-11655 (CSS) (Bankr. D. Del. Aug. 2, 2017); *In re Prospector Offshore Drilling S.à r.l*, No. 17-11572 (CSS) (Bankr. D. Del. July 20, 2017); *In re Keystone Tube Co., LLC (A.M. Castle & Co.)*, No. 17-11330 (LSS) (Bankr. D. Del. June 18, 2017); *In re Sungevity, Inc.*, No. 17-10561 (KG)

3

(Bankr. D. Del. Mar. 15, 2017); *In re Aquion Energy, Inc.*, No. 17-10500 (KJC) (Bankr. D. Del. Mar. 8, 2017).

## Services Provided

6.      As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), KCC will perform, at the request of the Clerk, the services specified in the Application and the Services Agreement.  In performing such services, KCC will charge the Debtors the rates set forth in the Services Agreement, which is attached to the Application as **Exhibit C**.

7.      The Services Agreement sets forth the terms and conditions by which KCC will render services to the Debtors during the Chapter 11 Cases.  The proposed terms and conditions of KCC's engagement as set forth in the Services Agreement are consistent with, and typical of, other notice and claims agent engagements in chapter 11 cases approved in this and other districts.

8.      The Claims Registers shall be opened to the public for examination without charge during regular business hours and on a case-specific website maintained by KCC.

9.      KCC will follow the notice and claim procedures that conform to the guidelines promulgated by the Clerk's office or as otherwise directed by the Court.

## Professional Compensation

10.     Subject to the Court's approval, the Debtors have agreed to compensate KCC for professional services rendered in connection with the Chapter 11 Cases pursuant to the Services Agreement.  KCC believes that the rates for its notice and claims processing services are comparable to the rates charged by its competitors for similar services.

11.     KCC respectfully submits that the fees and expenses incurred by KCC are administrative in nature and should not be subject to the standard fee application procedures for professionals.  Specifically, KCC requests authorization to be compensated on a monthly basis (in

4

the ordinary course of business and in accordance with the terms and conditions set forth in the Services Agreement). KCC agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the U.S. Trustee, counsel for the Debtors, and counsel for any official committee appointed in the Chapter 11 Cases.

12.    If any dispute arises relating to the Services Agreement or KCC's monthly invoices, KCC and such disputing party will meet in an attempt to resolve the dispute. If a resolution is not achieved, the parties will seek resolution of the matter from the Court.

13.    Before the Petition Date, KCC received a retainer from the Debtors in the amount of $45,000 to be applied in satisfaction of obligations incurred pursuant to the Services Agreement. KCC seeks to first apply its retainer to all prepetition invoices and, thereafter, to hold the remainder of the retainer under the Services Agreement during the cases as security for the payment of fees and expenses incurred under the Services Agreement.

**Disinterestedness**

14.    KCC is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that KCC and its professional personnel:

    (a)    Are not creditors, equity security holders, or insiders of the Debtors;

    (b)    Are not and were not, within two years before the date of the filing of the Chapter 11 Cases, directors, officers, or employees of the Debtors; and

    (c)    Do not have an interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

*See* 11 U.S.C. § 101(14).

5

15.    Further, KCC represents that:

(a)    It will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Claims and Noticing Agent in these Chapter 11 Cases;

(b)    By accepting employment in these Chapter 11 Cases, KCC waives any right to receive compensation from the United States government in its capacity as Claims and Noticing Agent;

(c)    In its capacity as Claims and Noticing Agent in these Chapter 11 Cases, KCC will not be an agent of the United States and will not act on behalf of the United States;

(d)    It will not employ any past or present employees of the Debtors in connection with its work as Claims and Noticing Agent in these Chapter 11 Cases;

(e)    In its capacity as Claims and Noticing Agent in these Chapter 11 Cases, KCC will not intentionally misrepresent any fact to any person;

(f)    It shall be under the supervision and control of the Clerk with respect to the receipt and recordation of claims and claim transfers;

(g)    It will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(h)    None of the services provided by KCC as Claims and Noticing Agent in these Chapter 11 Cases will be at the expense of the Clerk.

16.    Although the Debtors do not propose to retain KCC under section 327 of the Bankruptcy Code pursuant to the Application (such retention will be sought by separate application), I caused to be submitted for review by our conflicts system the names of all known potential parties in interest (the "**Potential Parties in Interest**") in these Chapter 11 Cases.  The list of Potential Parties in Interest was provided by the Debtors and included, among other things, the Debtors, non-Debtor affiliates, significant equity holders, the Debtors' current and former directors and officers, secured creditors, top 50 unsecured creditors, vendors, and other parties.  The results of the conflict check were compiled and reviewed by KCC professionals under my supervision.  At this time, and as set forth in further detail herein, KCC is not aware of any

6

relationship that would present a disqualifying conflict of interest. Should KCC discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, KCC will use reasonable efforts to promptly file a supplemental declaration.

17.    To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither KCC, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors, or other relevant parties. KCC may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which KCC serves or has served in a neutral capacity as claims and noticing agent or administrative advisor for another chapter 11 debtor.

18.    KCC may also have relationships with other professionals to be retained by the Debtors.

19.    KCC is an indirect subsidiary of Computershare Limited ("**Computershare**"). Computershare is a financial services and technologies provider for the global securities industry. Within the Computershare corporate structure, KCC operates as a separate, segregated business unit. As such, any relationships that Computershare and its affiliates maintain do not create an interest of KCC that is materially adverse to the Debtors' estates or any class of creditors or security holders.

20.    KCC has and will continue to represent clients in matters unrelated to these Chapter 11 Cases. In addition, KCC and its personnel have and will continue to have relationships in the ordinary course of its business with certain vendors, professionals, and other parties in interest that may be involved in the Debtors' Chapter 11 Cases. KCC may also provide professional services to entities or persons that may be creditors or parties in interest in these

Chapter 11 Cases, which services do not directly relate to, or have any direct connection with, these Chapter 11 Cases or the Debtors.

21.     To the best of my knowledge, neither KCC nor any of its employees represent any interest materially adverse to the Debtors' estates with respect to any matter upon which KCC is to be engaged.  Based on the foregoing, I believe that KCC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

## Indemnification

22.     As part of the overall compensation payable to KCC under the terms of the Services Agreement, KCC is entitled to certain indemnification obligations, which are described in detail in the Services Agreement.  Specifically, the Services Agreement provides that the Debtors will indemnify and hold harmless KCC and its affiliates, personnel, and subcontractors, among others, under certain circumstances specified in the Services Agreement.

23.     The terms of the Services Agreement and indemnification provisions were negotiated between KCC and the Debtors at arm's length, and I believe that these indemnification provisions and the Services Agreement are reasonable.

RLF1 23875607v.1

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated: August 16, 2020                              Respectfully submitted,


                                                    */s/  Robert Jordan*
                                                    Robert Jordan
                                                    Senior Managing Director
                                                    Kurtzman Carson Consultants LLC
                                                    222 N. Pacific Coast Highway, 3rd Floor
                                                    El Segundo, California 90245
                                                    Telephone: (310) 823-9000

**Exhibit C**

**Services Agreement**



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 28th day of May 2020, between Chaparral Energy, Inc. (together with its affiliates and subsidiaries, the "Company"),[1] and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC"). In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**Terms and Conditions**

I.      SERVICES

A.      KCC agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.      KCC further agrees to provide (i) computer software support and training in the use of the support software, (ii) KCC's standard reports as well as consulting and programming support for the Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the fees outlined in a pricing schedule provided to the Company (the "KCC Fee Structure").

C.      Without limiting the generality of the foregoing, KCC may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by KCC and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.      The price listed for each service in the KCC Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part.  Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders.  Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by KCC.

E.      The Company acknowledges and agrees that KCC will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement.  The parties agree that KCC may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.  The Company agrees and understands that KCC shall not provide the Company or any other party with any legal advice.

---

[1] The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.

1



# KCC AGREEMENT FOR SERVICES

II.      PRICES, CHARGES AND PAYMENT

A.      KCC agrees to charge and the Company agrees to pay KCC for its services at the rates and prices set by KCC that are in effect as of the date of this Agreement and in accordance with the KCC Fee Structure.  KCC's prices are generally adjusted periodically to reflect changes in the business and economic environment and are inclusive of all charges.  KCC reserves the right to reasonably increase its prices, charges and rates; provided, however, that KCC will give thirty (30) days' written notice to the Company prior to any increase.

B.      In addition to fees and charges for services, the Company agrees to pay KCC's reasonable and documented transportation, lodging, and meal expenses incurred in connection with services provided under this Agreement.

C.      In addition to all fees for services and expenses hereunder, the Company shall pay to KCC (i) any fees and charges related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by KCC and the Company, and (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by KCC or paid by KCC to a taxing authority.

D.      Where the Company requires services that are unusual or beyond the normal business practices of KCC, or are otherwise not provided for in the KCC Fee Structure, the cost of such services shall be charged to the Company at a competitive rate, which rate shall be mutually agreed by the Company and KCC in advance.

E.      KCC agrees to submit its invoices to the Company monthly and the Company agrees that the amount invoiced is due and payable within thirty (30) days of the Company's receipt of the invoice. KCC's invoices will contain reasonably detailed descriptions of charges for both hourly (fees) and non-hourly (expenses) case specific charges. Where total invoice amounts are expected to exceed $10,000 in any single month and KCC reasonably believes it will not be paid, KCC may require advance payment from the Company due and payable upon demand and prior to the performance of services hereunder.  If any amount is unpaid as of thirty (30) days from the receipt of the invoice (provided that such payment has been approved by the Bankruptcy Court following any bankruptcy filing), the Company further agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days.  In the case of a dispute in the invoice amount, the Company shall give written notice to KCC within ten (10) days of receipt of the invoice by the Company.  The undisputed portion of the invoice will remain due and payable within thirty (30) days of the Company's receipt of the invoice.  Late charges shall not accrue on any amounts in dispute or any amounts unable to be paid due to Court order or applicable law.  Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) must be paid at least three (3) days in advance of those fees and expenses being incurred.  Certain fees and charges may need to be adjusted due to availability related to the COVID-19 (novel coronavirus) global health issue; provided, however, that KCC will give the Company prompt written notice prior to any increase.

F.      In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that KCC shall be employed pursuant to 28 U.S.C. § 156(c) to the extent possible and otherwise in accordance with applicable



# KCC AGREEMENT FOR SERVICES

Bankruptcy law and that all amounts due under this Agreement shall, to the extent possible, be paid as administrative expenses of the Company's chapter 11 estate.  As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause pleadings to be filed with the Bankruptcy Court seeking entry of an order or orders approving this Agreement (the "Retention Order").  The form and substance of the pleadings and the Retention Order shall be reasonably acceptable to KCC.  If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services in accordance with the terms of this Agreement.  The parties recognize and agree that if there is a conflict between the terms of this Agreement and the terms of the Retention Order, the terms of the Retention Order shall govern during the chapter 11 or other proceeding.

G.       To the extent permitted by applicable law, KCC shall receive a retainer in the amount of $45,000 (the "Retainer") that may be held by KCC as security for the Company's payment obligations under the Agreement.  The Retainer is due upon execution of this Agreement.  KCC shall be entitled to hold the Retainer until the termination of the Agreement, unless otherwise ordered by the Bankruptcy Court.  Following termination of the Agreement, KCC shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

III.    RIGHTS OF OWNERSHIP

A.      The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC.  The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation.  The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.      The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed or utilized during the term of this Agreement by KCC shall be the exclusive property of KCC.  Fees and expenses paid by the Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for the Company's use during and in connection with the services provided by KCC under this Agreement.

IV.    NON-SOLICITATION

The Company agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of KCC during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless KCC provides prior written consent to such solicitation or retention.

V.     CONFIDENTIALITY

Each of KCC and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the

#93246235v5



# KCC AGREEMENT FOR SERVICES

services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

## VI.    SUSPENSION OF SERVICE AND TERMINATION

A.      This Agreement shall remain in force until terminated or suspended by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein).  As used herein, the term "Cause" means (i) gross negligence or willful misconduct of KCC that causes serious and material harm to the Company's reorganization under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay KCC invoices for more than sixty (60) days from the date of invoice, (iii) an order of the Bankruptcy Court requiring termination of this Agreement, or (iv) the accrual of invoices or unpaid services in excess of the retainer held by KCC where KCC reasonably believes, after reasonable due inquiry, it will not be paid.

B.      In the event that this contract is terminated, regardless of the reason for such termination, KCC shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions and KCC shall provide all necessary staff, services and assistance required for an orderly transfer.  The Company agrees to pay for such services in accordance with KCC's then existing prices for such services.  If such termination occurs following entry of the Retention Order, the Company shall immediately seek entry of an order (in form and substance reasonably acceptable to KCC) that discharges KCC from service and responsibility in the Company's bankruptcy case.

C.      The Company shall remain liable for all fees and expenses imposed under this Agreement as a result of data or physical media maintained or stored by KCC.  KCC shall dispose of the data and media in the manner requested by the Company.  The Company agrees to pay KCC for reasonable expenses incurred as a result of the disposition of data or media.  If the Company has not utilized KCC's services under this Agreement for a period of at least ninety (90) consecutive days,  KCC may dispose of the data or media, and be reimbursed by the Company for the expense of such disposition, after giving the Company thirty (30) days' written notice.  Notwithstanding any term herein to the contrary, following entry of the Retention Order, the disposition of any data or media by KCC shall be in accordance with any applicable instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of the Bankruptcy Court.

## VII.    SYSTEM IMPROVEMENTS

KCC strives to provide continuous improvements in the quality of service to its clients.  KCC, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's chapter 11 case.

#93246235v5



# KCC AGREEMENT FOR SERVICES

## VIII.    BANK ACCOUNTS

At the Company's request and subject to Court approval following any chapter 11 filing, KCC may be authorized to establish accounts with financial institutions in the name of and as agent for the Company.  To the extent that certain financial products are provided to the Company pursuant to KCC's agreement with financial institutions, KCC may receive compensation from such financial institutions for the services KCC provides pursuant to such agreement.

## IX.    LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.    The Company shall indemnify and hold KCC and its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, together with KCC, the "KCC Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all third-party losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") to the extent resulting from, arising out of or related to KCC's performance under this Agreement. Such indemnification shall exclude Losses resulting from a KCC Indemnified Party's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any indemnified party.  The Company shall notify KCC in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the Company becomes aware of with respect to the services provided by KCC under this Agreement.  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

B.    In no event shall either party be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.  In no event shall KCC's liability to the Company for any Losses, whether direct or indirect, arising out of this Agreement exceed the greater of (i) two times the total amount billed to the Company and actually paid to KCC for the services contemplated under the Agreement and (ii) $500,000.00; provided, however, that this limitation shall not apply to the Company during any chapter 11 case in which the Company is a debtor.  If an indemnified party intends to claim indemnification under this Section IX, then such indemnified party shall notify the indemnifying party reasonably promptly in writing upon the commencement of any claim, action, investigation, or proceeding that the party seeking indemnification becomes aware of with respect to this Agreement.

C.    The Company is responsible for the accuracy of the programs, data and information it or any Company Party submits for processing to KCC.  KCC does not verify information provided by the Company and, with respect to the preparation of schedules and statements, all decisions are at the sole discretion and direction of the Company.  The Company reviews and approves all schedules and statements filed on behalf of, or by, the Company; KCC bears no responsibility for the accuracy or contents therein.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs and data submitted by the Company to KCC.

D.    The Company agrees that except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or

#93246235v5



# KCC AGREEMENT FOR SERVICES

express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## X.    FORCE MAJEURE

KCC will not be liable for any delay or failure in performance when such delay or failure arises from circumstances beyond its reasonable control, including without limitation acts of God, acts of government in its sovereign or contractual capacity, acts of public enemy or terrorists, acts of civil or military authority, war, riots, civil strife, terrorism, blockades, sabotage, rationing, embargoes, epidemics, pandemics, outbreaks of infectious diseases or any other public health crises, earthquakes, fire, flood, other natural disaster, quarantine or any other employee restrictions, power shortages or failures, utility or communication failure or delays, labor disputes, strikes, or shortages, supply shortages, equipment failures, or software malfunctions.

## XI.    INDEPENDENT CONTRACTORS

The Company and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

## XII.    NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or electronic mail or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

Kurtzman Carson Consultants LLC        Chaparral Energy, Inc.
222 N. Pacific Coast Highway, 3rd Floor   701 Cedar Lake Blvd.
El Segundo, CA  90245                  Oklahoma City, OK 73114
Attn:  Drake D. Foster                 Attn: Justin Byrne
Tel: (310) 823-9000                    Tel: (405) 426-4382
Fax: (310) 823-9133                    E-Mail: justin.byrne@chaparralenergy.com
E-Mail: dfoster@kccllc.com

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

## XIII.    APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of California.

## XIV.    ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement

#93246235v5



# KCC AGREEMENT FOR SERVICES

between the parties, which supersedes and merges all prior proposals, understandings, other agreements, and communications oral and written between the parties relating to the subject matter of this Agreement.  The Company represents that it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or law.  If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.  This Agreement may be modified only by a written instrument duly executed by an authorized representative of the Company and an officer of KCC.

## XV.    COUNTERPARTS; EFFECTIVENESS

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

## XVI.    ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned without written consent by KCC to a wholly-owned subsidiary or affiliate of KCC.

## XVII.    ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

[SIGNATURE PAGE FOLLOWS]

#93246235v5



## KCC AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

BY:  Evan Gershbein                    DATE: 5/28/20
TITLE:  EVP, Corporate Restructuring Services

Chaparral Energy, Inc.

BY:  Justin Byrne                      May 28, 2020
TITLE:  Vice President and General Counsel        DATE:

8



## FEE STRUCTURE

### Consulting Services & Rates[1]

| Position | Hourly Rate |
|---|---|

*Analyst* — $27 - $45

The Analyst processes incoming mail, including proofs of claim, ballots, creditor correspondence and returned mail. Also assists with the generation of mailing services.

*Technology/Programming Consultant* — $31.50 - $85.50

The Technology/Programming Consultant assists with complex system requests, including unique claim/ballot reporting and custom website updates.

*Consultant/Senior Consultant/Senior Managing Consultant* — $63 - $175.50

The Consultant is the day-to-day contact for mailings, including the preparation and filing of affidavits of service (a critical due process component). He/she also responds to creditor and counsel inquiries, maintains the public access website, identifies actionable pleadings (i.e., claims objections, notices of transfer, withdrawals, etc.) and updates the official claims register.  KCC's Consultants average over six years of experience.

The Senior Consultant manages the various data collection processes required by the Chapter 11 process. This includes, among other things, compiling the creditor matrix and Schedules/SOFAs (and generating drafts of same for counsel and advisors), reviewing and processing claims, overseeing contract review, overseeing all mailings and generating custom claim and ballot reports. KCC's Senior Consultants average over seven years of experience.

The Senior Managing Consultant is the primary contact for the company, counsel and other professionals and oversees and supports the entirety of an engagement. KCC's SMCs average over twelve years of experience and are generally former practitioners.

*Securities/Solicitation Consultant[2]* — $184.50

The Securities Director/Solicitation Consultant is the day-to-day contact and acts as advisor on transactions including balloting with treatment election, rights offers, exchange offers and complex plan distributions. This position handles service of related materials to banks, brokers and agents and manages tabulation and audit processes, preparing detailed reporting of results.  In addition, the Solicitation Consultant provides support on all voting, tabulation, Schedule and SOFA services and other additional complex consulting tasks.

*Securities Director/Solicitation Lead* — $193.50

The Solicitation Lead/Securities Director oversees all activities of the group and provides counsel with respect to solicitation and noticing events ensuring that processes employed are effective and practical for securities depositories, bank, brokers, nominees and their agents. In addition, the Solicitation Lead provides counsel on all voting, tabulation, Schedule and SOFA services and other additional complex consulting tasks.

*Weekend, holidays and overtime* — *Waived*

---

[1] Please note that additional professional services not covered by this proposal will be charged at hourly rates, including any outsourced services performed under our supervision and control. Certain fees and charges may need to be adjusted due to availability related to the COVID-19 (novel coronavirus) global health issue.

[2] Certain events and technology development fees may be applicable.



## FEE STRUCTURE

### Printing Services & Noticing Services

| | |
|---|---|
| Printing | $0.10 per image (volume discounts apply) |
| Labels | Waived |
| Document folding and inserting | Waived |
| Envelopes | Varies by size |
| E-mail noticing | Waived[3] |
| Fax noticing | $0.08 per page |
| Claim Acknowledgement Card | Waived |
| Insert creditor information into customized documents | Waived |
| Newspaper and legal notice publishing | Quote prior to publishing |

### Claims Administration & Management Expenses

| | |
|---|---|
| License fee and data storage | $0.10 per record per month |
| Database and system access (unlimited users) | Waived |
| Custom client reports | Waived |
| Access to KCC CaseView (secure, password protected) | Waived |

- Proprietary, secured, password protected portal for unlimited users
- Comprehensive case data, including extensive real time analytics on claim, solicitation and processing information
- Functionality to run or request customized reports summarizing case analytics

### KCC eServices

| | |
|---|---|
| Case website set up & hosting | Waived |
| Automated updates of case docket and claims register | Waived |
| Online claims filing (ePOC) | Waived |

### Document Management/Imaging

| | |
|---|---|
| Electronic imaging (scanning & bar coding) | $0.10 per imaged page |
| Virtual Data Room | Quote prior to VDR set-up |
| CD-ROMS (mass document storage) | Varies upon requirements |

---

[3] A set-up fee for email services larger than 100 parties may apply. This set-up fee varies depending on the total number of parties.



FEE STRUCTURE

## Call Center Support Services

| | |
|---|---|
| Case-specific voice-mail box for creditors | Waived |
| Interactive Voice Response ("IVR") | Set-up and per minute fee waived |
| Monthly maintenance charge | Waived |
| Management of Call Center | Standard hourly rates |

## Disbursements

| | |
|---|---|
| Check issuance | Quote prior to printing |
| W-9 mailing and maintenance of TIN database | See hourly rates and noticing charges |