## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| CHAPARRAL ENERGY, INC., *et al.*,[1] | Case No. 20-_____ (___) |
| Debtors. | (Joint Administration Requested) |

## MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO (A) PAY THEIR PREPETITION INSURANCE OBLIGATIONS, (B) PAY THEIR PREPETITION BONDING OBLIGATIONS, (C) MAINTAIN THEIR POSTPETITION INSURANCE COVERAGE, AND (D) MAINTAIN THEIR BONDING PROGRAM, (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS, AND (III) GRANTING RELATED RELIEF

Chaparral Energy, Inc. and its subsidiaries that are debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**"), hereby move (this "**Motion**") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "**Interim Order**" and the "**Final Order**"), granting the relief described below. In support thereof, the Debtors refer to the contemporaneously filed *Declaration of Charles Duginski in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**") and further represent as follows:

---

[1] The Debtors in these cases, along with the last four digits (or five digits, in cases in which multiple Debtors have the same last four digits) of each Debtor's federal tax identification number, are: CEI Acquisition, L.L.C. (1817); CEI Pipeline, L.L.C. (6877); Chaparral Biofuels, L.L.C. (1066); Chaparral CO2, L.L.C. (1656); Chaparral Energy, Inc. (90941); Chaparral Energy, L.L.C. (20941); Chaparral Exploration, L.L.C. (1968); Chaparral Real Estate, L.L.C. (1655); Chaparral Resources, L.L.C. (1710); Charles Energy, L.L.C. (3750); Chestnut Energy, L.L.C. (9730); Green Country Supply, Inc. (2723); Roadrunner Drilling, L.L.C. (2399); and Trabajo Energy, L.L.C. (9753). The Debtors' address is 701 Cedar Lake Boulevard, Oklahoma City, OK 73114.

## JURISDICTION

1.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.      Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 9013-1(m).

## BACKGROUND

4.      On August 16, 2020 (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing the Chapter 11 Cases.  The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested in the Chapter 11 Cases and no committees have yet been appointed.

5.      The Debtors commenced the Chapter 11 Cases to implement their comprehensive, prepackaged plan of reorganization (the "**Plan**").  The Plan is the result of

extensive negotiations between the Debtors, their revolving lenders, and their unsecured noteholders, who have agreed on a comprehensive balance sheet restructuring that will reduce the Debtors' debt burden and increase liquidity.  Holders of more than 75% of the Debtors' outstanding revolving loans and more than 75% of the Debtors' outstanding unsecured notes have documented their support for the Plan and the Chapter 11 Cases by executing a restructuring support agreement prior to the Petition Date.  Under the Plan, the Debtors will equitize all of their approximately $300 million of unsecured notes, eliminating a significant portion of their prepetition debt, and convert the revolving loans into an exit facility.  Importantly, the Plan contemplates that allowed general unsecured claims will remain unimpaired and be paid in full or "ride through" the Chapter 11 Cases.

6.      Additional information about the Debtors, including their business operations, their capital structure and prepetition indebtedness, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the First Day Declaration, which is incorporated herein by reference.

**RELIEF REQUESTED**

7.      By this Motion, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 6003, the Debtors request entry of an order (I) authorizing, but not directing, the Debtors to (a) continue to administer the Insurance Policies and pay all Prepetition Insurance Obligations and pay all Prepetition Bonding Obligations (each as defined below), to the extent the Debtors determine in their absolute discretion that such payments are necessary or appropriate; (b) in the ordinary course of business, pay all Postpetition Insurance Obligations and Postpetition Bonding Obligations (each as defined below), as such payments become due; and (c) revise, extend, supplement, or change the Debtors' insurance coverage or purchase new, supplemental, or replacement surety bonds as needed in the ordinary course of business; (II)

authorizing financial institutions to honor and process related checks and transfers; and (III) granting related relief.

8.      While the Debtors do not believe Court approval is required to maintain their existing Insurance Policies and Bonding Program (each as defined below) or to amend, extend, or renew the Insurance Policies or the Bonding Program in the ordinary course of business, out of an abundance of caution, the Debtors request entry of an order authorizing them to take such actions and to pay their Insurance Obligations and their Bonding Obligations (each as defined below) where necessary to maintain their Insurance Policies and Bonding Program.

9.      Finally, the Debtors request that the Court authorize the Debtors' banks and financial institutions to receive, process, honor, pay, and, if necessary, reissue all prepetition and postpetition checks, including prepetition checks that the Debtors reissue postpetition, and fund transfers on account of the Insurance Obligations or the Bonding Obligations and authorize the Debtors' banks and financial institutions to rely on the representations of the Debtors as to which checks and fund transfers should be honored and paid in respect of the Insurance Obligations or the Bonding Obligations, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

### THE DEBTORS' INSURANCE OBLIGATIONS

10.      In the ordinary course of the Debtors' businesses, the Debtors maintain certain insurance policies that are administered by multiple third-party insurance carriers (the "**Insurance Carriers**"), which provide coverage for, among other things, commercial general liability, umbrella and excess liability, an energy package including control of well and property

and equipment, pollution legal liability, workers' compensation[2] including employer's liability, employment practices liability, foreign liability, automobile liability, directors' and officers' liability, excess directors' and officers' liability, cyber liability, fiduciary liability, commercial crime liability, and an ERISA bond (collectively, the "**Insurance Policies**").  A detailed list of the Insurance Policies that are currently held by the Debtors is attached hereto as **Exhibit C**.  The Insurance Policies are essential to the preservation of the Debtors' businesses, property, and assets, and, in some cases, such coverage is required by various federal and state laws and regulations, as well as the terms of the Debtors' various commercial contracts.

11.     The Debtors obtain their Insurance Policies through Houston Series of Lockton Companies, LLC (together with its affiliates, "**Lockton**" or the "**Broker**"), pursuant to that certain Fee for Services Agreement between the Debtors and Lockton, dated as of May 8, 2020 (the "**Lockton Contract**").  Among other things, Lockton assists the Debtors in obtaining comprehensive insurance coverage and providing related services.  Lockton also assists with the procurement and negotiation of the Insurance Policies, enabling the Debtors to obtain the Insurance Policies on advantageous terms and at competitive rates.  Should Lockton terminate the Lockton Contract, the Debtors would have to seek out their own insurance policies or find a new broker, potentially at greater expense, to assist the Debtors in obtaining comprehensive insurance coverage and providing related services.  Accordingly, the continued employment of Lockton as the Debtors' broker allows the Debtors to obtain the insurance coverage necessary to operate their

---

[2]    The Debtors have separately sought authorization to honor their obligations under their workers' compensation programs (including making prepetition payments associated with insurance premiums) as part of the contemporaneously filed *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Workforce Obligations, (B) Continue Workforce Programs and Pay Related Administrative Obligations, and (C) Pay Withholding and Payroll Related Taxes, (II) Authorizing Financial Institutions to Honor and Process Related Checks and Fund Transfers, and (III) Granting Related Relief*.  The Debtors, however, have additionally included hereunder reference to workers' compensation insurance and the attendant premiums associated with such coverage for the sake of completeness.

businesses in a reasonable and prudent manner and to realize savings in the procurement of such policies.

12.     Maintenance of insurance coverage under the various Insurance Policies on an uninterrupted basis is essential to the continued operation of the Debtors' businesses and is required under the United States Trustee's Operating Guidelines for Chapter 11 Cases (the "**Operating Guidelines**"), the federal laws and regulations applicable to the Debtors' businesses, the laws of the various states in which the Debtors operate, and the Debtors' various contractual commitments.  Thus, the Debtors submit that they should be authorized to continue to pay all postpetition premiums, taxes, charges, fees, and other obligations (including the fees and commissions due to the Broker) relating to the Insurance Policies, and any other additional, revised, or supplemental Insurance Policies or programs obtained by the Debtors (the "**Postpetition Insurance Obligations**") as such obligations come due in the ordinary course of the Debtors' businesses.

13.     The Debtors request authorization to pay all prepetition premiums, taxes, charges, fees, deductibles, and other obligations owed under or with respect thereto (including the fees and commissions due to the Broker) (the "**Prepetition Insurance Obligations**" and, together with the Postpetition Insurance Obligations, the "**Insurance Obligations**") to the extent that the Debtors determine, in their sole discretion, that such payment is necessary to avoid cancellation, default, alteration, assignment, attachment, lapse, or any form of impairment to the coverage, benefits, or proceeds provided under the Insurance Policies, and to maintain good relationships with the various Insurance Carriers and the Broker.  The Debtors' maintenance of their relationships with the Insurance Carriers and the Broker is critical to ensuring the continued availability of insurance coverage and reasonable pricing of such coverage for future policy

periods.  The Debtors additionally request, out of an abundance of caution, authority to renew or replace the Insurance Policies as they may expire or lapse in the ordinary course.

14.     The Debtors will need to continue their insurance coverage throughout the duration of these Chapter 11 Cases.  The Debtors respectfully submit that the maintenance of their existing Insurance Policies falls squarely within their ordinary course of business and have only sought relief within this Motion out of an abundance of caution.  To reduce both the administrative burden on these Chapter 11 Cases and the expense of operating as debtors in possession, the Debtors request authorization to maintain, amend, extend, or renew the Insurance Policies, as necessary, in the ordinary course of business.

15.     While the Debtors are unable to estimate expenses related to the Insurance Obligations going forward, as renewal negotiations are ongoing, the Debtors paid a total amount of $9,032,000 in annual premiums and payments associated with all Insurance Policies in the 12 months ending July 31, 2020.  The Debtors' Insurance Policies renew at various times throughout each year.  The Debtors pay all of the annual premiums due for each of the policies at the beginning of each particular policy period with the exception of a "control of well" policy and workers' compensation policy.  For the Debtors' control of well policy, the Debtors initially pay a deposit based on planned drilling and thereafter pay additional premium fees as adjusted based on actual drilling on a quarterly basis.  For the Debtors' workers' compensation policy, the Debtors pay a premium based on estimated costs and thereafter pay additional premium fees or are refunded premium fees as adjusted based on an audit of actual activity during the policy period.  The next scheduled audit for the Debtors' workers' compensation policy is in October 2020, and the Debtors may be required to pay additional premiums based on actual activity during the workers' compensation policy period.

16.     The Debtors are not aware of any pending requests for payment under the Insurance Policies.  However, in the event that a request for payment of amounts attributable to the period prior to the Petition Date is outstanding or is received by the Debtors in accordance with the Insurance Policies, the Debtors request authority to pay such prepetition amounts in their sole discretion.

17.     Moreover, the Debtors believe that it is in the best interests of their creditors and estates to continue their business relationship with the Broker.  As noted above, the Debtors believe that all payments due and owing to the Broker have been paid in full and the Debtors are not aware of any pending requests for payment under the Lockton Contract.

### THE DEBTORS' BONDING PROGRAM

18.     In the ordinary course of business, the Debtors are required by certain applicable statutes, rules, and regulations to maintain a bonding program, pursuant to which the Debtors provide surety bonds to certain third parties to secure the Debtors' payment or performance of certain obligations (or post cash collateral directly to cover such obligations), often to governmental units or other public agencies (the "**Bonding Program**").  The Bonding Program covers a range of obligations, including, among other things, (a) excess weight and other highway street permits; (b) taxes; (c) conservation and environmental obligations; and (d) utilities (the "**Covered Obligations**").  A detailed list of the surety bonds that are currently maintained by the Debtors is attached hereto as **Exhibit D**.[3]  The Bonding Program provides coverage that is typical in scope and amount for businesses within the Debtors' industry.  The Debtors typically obtain their surety bonds through Lockton.

---

[3]     The Debtors request authority to honor obligations and renew all surety bonds, as applicable, notwithstanding any failure of the Debtors to include a particular surety bond on **Exhibit D**.

19.     Statutes or ordinances often require the Debtors to post surety bonds or cash collateral to secure the Covered Obligations.  For example, an operator of a well must obtain a surety bond in favor of the Bureau of Land Management prior to commencing drilling on oil and gas leases on federally owned lands.  *See* 43 C.F.R. § 3104.1 (2009).  The Debtors obtained and paid a blanket surety bond in favor of the Bureau of Indian Affairs in connection with drilling operations on certain tribal lands covering all existing wells operated as well as new wells drilled. Additionally, in April 2020, the Debtors posted an additional $450,000 in favor of the Oklahoma Tax Commission as a result of increased bonding requirements.  By this Motion, the Debtors seek to (a) continue to pay any obligations owed to the Surety Issuer (as defined below) that accrued but remain unpaid as of the Petition Date, and any fees and other obligations associated therewith (including the fees and commissions due to the Broker) (the "**Prepetition Bonding Obligations**"); (b) in the ordinary course of business, pay all postpetition premiums, taxes, charges, fees, and other obligations (including the fees and commissions due to Lockton) relating to the Bonding Program as such payments become due (the "**Postpetition Bonding Obligations**" and, together with the Prepetition Bonding Obligations and the Surety Indemnity Obligations, the "**Bonding Obligations**"); and (c) purchase new, supplemental, or replacement surety bonds in the ordinary course of business.

20.     The issuance of a surety bond shifts the risk of the Debtors' nonperformance or nonpayment of their obligations covered by the surety bond from the beneficiary of the surety to the surety.  If the Debtors fail to pay Covered Obligations, the applicable surety will pay the Debtors' obligations up to a specified amount.  Unlike an insurance policy, if a surety incurs a loss on a surety bond, the surety is entitled to recover the full amount of that loss from the Debtors. The Debtors are party to an indemnity agreement with US Specialty Insurance Company

(the "**Surety Issuer**") that sets forth the surety's rights to recover from the Debtors (collectively, the "**Surety Indemnity Agreement**").  Under each Surety Indemnity Agreement, the Debtors agree to indemnify the surety from any loss, cost, or expense that the surety may incur on account of the issuance of any surety bonds on behalf of the Debtors.  Each Surety Indemnity Agreement also permits the surety to request collateral security from the Debtors from time to time in connection with the Surety Indemnity Agreements.

21.     The success of the Debtors' efforts to operate effectively and efficiently will depend on the maintenance of the Bonding Program on an uninterrupted basis.  No feasible alternative to maintaining the Bonding Program exists.

22.     As of the Petition Date, the Debtors' outstanding surety bonds were issued by one surety: the Surety Issuer (30 surety bonds totaling approximately $2,123,000) (collectively, the "**Sureties**").  The Debtors currently have pending requests of $11,250 from Lockton for payment under the Bonding Program, which the Debtors intend to pay during the first 45 days of these Chapter 11 Cases.

23.     The Debtors' outstanding surety bonds secure their performance and obligations in the following general categories and for the following approximate amounts:

| Number of Bonds | Nature of Bond | Approximate Aggregate Bond Amount |
|---|---|---|
| 1 | Excess Weight and Other Highway and Street Permits | $10,000 |
| 26 | Conservation and Environmental Bonds / Reclamation Bonds | $1,602,000 |
| 3 | Tax Bonds | $511,000 |
| **30** | **Total** | **$2,123,000** |

24.     The premiums for the surety bonds are generally determined on an annual basis and are paid by the Debtors when the bonds are issued and annually upon renewal.  The total amount estimated to be paid in annual premiums and payments associated with all of the surety

bonds at their renewal date is approximately $43,000.  As of the Petition Date, the Debtors estimate that all premium payments due and owing under the Bonding Policy have been paid in full and the Debtors are not aware of any pending requests for payment by the Sureties.  However, in the event that a request for payment of amounts attributable to the period prior to the Petition Date is outstanding or is received by the Debtors in accordance with the surety bonds, the Debtors request authority to pay such prepetition amounts as they deem necessary.

25.     To continue their business operations, the Debtors must be able to provide financial assurances to federal and state governments, regulatory agencies, and other third parties. This in turn requires the Debtors to maintain the existing Bonding Program, including paying the Bonding Obligations as they come due, providing the sureties with collateral when requested, as well as renewing or potentially acquiring additional bonding capacity as needed in the ordinary course of their businesses, requesting releases from obsolete bonding obligations, and executing other agreements in connection with the Bonding Program.

26.     The Debtors therefore request that they be authorized to maintain the Bonding Program in the same manner as maintained prepetition to: (a) pay any Prepetition Bonding Obligations; (b) continue to make all payments for Postpetition Bonding Obligations; and (c) revise, extend, supplement, or change the Bonding Program as needed, including through the issuance of new surety bonds.

## BASIS FOR RELIEF REQUESTED

**A.     Payment of the Insurance Obligations and Renewal of the Insurance Policies Is Necessary to Comply with Applicable Law and the Operating Guidelines**

27.     Maintenance of insurance coverage under the various Insurance Policies is essential to the continued operation of the Debtors' businesses and is required under the Operating Guidelines, the federal laws and regulations applicable to the Debtors' business, the laws of the

various states in which the Debtors operate, and the Debtors' various contractual commitments. *See* Operating Guidelines Sec. 6 (requiring maintenance of appropriate insurance coverage).

28.     The Debtors believe that the ordinary course maintenance of their necessary insurance coverage, including paying all Insurance Obligations, satisfying all postpetition commitments to the Insurance Carriers, renewing the Insurance Policies, or entering into new insurance arrangements, without further order of the Court, is necessary and essential to the Debtors' achievement of their chapter 11 objectives, especially where, as here, the Debtors' failure to take all actions necessary to honor their obligations to and preserve their relationships with the Insurance Carriers could have disastrous consequences for the Debtors' estates.

29.     The Debtors do not believe that there are any accrued and unpaid amounts owed to the Broker as of the Petition Date.  Nevertheless, insofar as the employment of the Broker is necessary for the ordinary course maintenance of the Insurance Policies in the most efficient, cost-effective manner (and has the additional benefit of positioning the Debtors to obtain the most competitive rates and high-quality service from the Broker in connection with any renewals of the Insurance Policies), the Debtors believe that, out of an abundance of caution, they should be authorized to continue to pay, as they come due, any broker's fees or other amounts owed to the Broker under the Lockton Agreement.

**B.     Section 105 of the Bankruptcy Code and the Doctrine of Necessity Support Payment of the Insurance Obligations and the Bonding Obligations**

30.     The proposed payments of the Insurance Obligations and the Bonding Obligations are necessary and appropriate pursuant to section 105 of the Bankruptcy Code and under the "doctrine of necessity."  Section 105 authorizes this Court "to issue any order ... necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105. The doctrine of necessity is a well-settled doctrine in this jurisdiction that permits a bankruptcy

court to authorize payment of certain prepetition claims prior to the completion of the reorganization process where the payment of such claims is necessary to the reorganization. *See In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment);[4] *see also In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E. D. Va. 1992) ("[T]he court can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a prepetition unsecured creditor, a debtor must show the payment is necessary to avert a serious threat to the Chapter 11 process.").

31.    For the reasons stated herein, and in light of the risks applicable to the Debtors' operations and the critical need for the Debtors to protect their assets and recoverable value from such risks through, among other things, maintenance of legally mandated insurance coverage, good relationships with the Insurance Carriers and the Broker, as well as maintenance of the Bonding Program, payment of the Insurance Obligations and the Bonding Obligations is proper and in accordance with section 105 of the Bankruptcy Code.  Payment of the Insurance Obligations and the Bonding Obligations is necessary to the Debtors' achievement of their chapter 11 objectives.

---

[4]    The Court's power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The United States Supreme Court first articulated the doctrine of necessity over a century ago, in *Miltenberger v. Logansport, C. & Sw. Ry. Co.*, 106 U.S. 286 (1882), in affirming the authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors, and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership. *See id.* at 309-14. The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in *Miltenberger*. *See In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the [debtor's] continued operation . . . in serious jeopardy.").

C.     **Section 363 of Bankruptcy Code Supports Payment of the Insurance Obligations and the Bonding Obligations**

32.     To the extent that payment of any of the Insurance Obligations and the Bonding Obligations sought to be paid under this Motion would be deemed to constitute a use of property outside the ordinary course of business, a basis for authorizing payment of the amounts associated with such obligations is found under section 363(b) of the Bankruptcy Code.  Section 363(b)(1) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1). Under this section, a court may authorize a debtor to pay certain prepetition claims so long as a sound business purpose exists for the transaction.  *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).  "In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b) [of the bankruptcy code], courts consider a variety of factors, which essentially represent a 'business judgment test.'"  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999).  Once the debtor articulates a reasonable basis for its business decisions, "courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

33.     The Debtors have routinely paid premiums, taxes, charges, fees, and other obligations in connection with their Insurance Policies and the Bonding Program, and, thus, view the payments of such obligations as ordinary course payments.  To the extent the Court (or any party in interest) believes that this Court's express authorization under section 363(b) of the

Bankruptcy Code is necessary to honor the Insurance Obligations or Bonding Obligations, however, the Debtors assert that sound business judgment supports the relief requested herein because the failure to pay such obligations could result in the cancellation of the Insurance Policies or its surety bonds, the Debtors' inability to obtain renewal of the Insurance Policies or its surety bonds on terms that are as competitive, and the violation of the Operating Guidelines, the various applicable federal and state laws and regulations, various contractual commitments, and the fiduciary duties of the debtors in possession. Each of these outcomes would be detrimental to the Debtors, their creditors, and their estates. Accordingly, the Debtors submit that they have satisfied the requisite standard applied to requests under section 363(b) of the Bankruptcy Code and, to the extent necessary, this Court should authorize the payment of all Insurance Obligations and the Bonding Obligations on such basis.

**D.**     **Section 363 of the Bankruptcy Code Supports the Debtors' Request to Maintain Postpetition Insurance Coverage and the Bonding Program, and Enter into New Coverage as Needed**

34.     The Debtors submit that section 363(c) of the Bankruptcy Code provides statutory authority for the Debtors' request for authorization to satisfy all of the Debtors' postpetition commitments with respect to the Insurance Carriers and Sureties, renew the Insurance Policies and surety bonds, or enter into new insurance policies and surety bonds in the Debtors' reasonable and sole discretion. In pertinent part, section 363(c)(1) of the Bankruptcy Code provides that "unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The maintenance of the Insurance Policies and the Bonding Program, and honoring of postpetition obligations arising thereunder, including undertaking renewals of the Insurance Policies and surety bonds as they expire or entering into new insurance

arrangements or surety contracts, are each the type of ordinary course transactions contemplated by the foregoing provision.  To the extent, however, that this Court believes that any such actions are not properly characterized as transactions in the ordinary course of the Debtors' business, the Debtors respectfully request that this Court authorize the Debtors to take such actions pursuant to section 363(b) of the Bankruptcy Code as a reasonable exercise of their business judgment.

**E.      Precedent Cases Support the Granting of the Requested Relief**

35.      Relief similar to the relief requested herein has been granted in this district in numerous chapter 11 cases.  *See, e.g.*, *In re Vivus, Inc.*, Case No. 20-11779 (LSS) (Bankr. D. Del. July 10, 2020); *In re Pyxus International, Inc.*, Case No. 20-11570 (LSS) (Bankr. D. Del. June 16, 2020); *In re Longview Power, LLC*, Case No. 20-10951 (BLS) (Bankr. D. Del. May 18, 2020) (authorizing debtors to continue and maintain insurance policies); *In re RentPath Holdings, Inc.*, Case No. 20-10312 (BLS) (Bankr. D. Del. March 10, 2020) (authorizing debtors to continue insurance and surety bond programs); *In re Bumble Bee Parent, Inc.*, Case No. 19-12502 (LSS) (Bankr. D. Del. Dec. 18, 2019) (authorizing debtors to maintain insurance policies); *In re Furie Operating Alaska, LLC*, Case No. 19-11781 (LSS) (Bankr. D. Del. Sept. 13, 2019) (authorizing debtors to maintain insurance policies); *In re Blackhawk Mining LLC*, Case No. 19-11595 (LSS) (Bankr. D. Del. Aug. 19, 2019) (authorizing debtors to continue insurance and surety bond programs).

**APPLICABLE FINANCIAL INSTITUTIONS SHOULD BE AUTHORIZED TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

36.      The Debtors also request that all applicable financial institutions be authorized to (a) receive, process, honor, and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, the claims that the Debtors request authority to pay in this Motion, regardless of whether the checks were presented or fund transfer

requests were submitted before, on, or after the Petition Date, and (b) rely on the Debtors'

designation of any particular check as approved by the Proposed Orders.

## BANKRUPTCY RULE 6003 HAS BEEN SATISFIED AND
## BANKRUPTCY RULE 6004 SHOULD BE WAIVED

37.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a

motion to pay all or part of a prepetition claim within twenty-one days after the Petition Date if

the relief is necessary to avoid immediate and irreparable harm.  *See* Fed. R. Bankr. P. 6003(b).

Based on the foregoing, the Debtors submit that they have satisfied the requirements of Bankruptcy

Rule 6003(b) because the interim relief set forth in **Exhibit A** is necessary to avoid immediate and

irreparable harm.

38.     To the extent that any aspect of the relief sought herein constitutes a use of

property under section 363(b) of the Bankruptcy Code, the Debtors request a waiver of the notice

requirements under Bankruptcy Rule 6004(a) and the fourteen day stay under Bankruptcy Rule

6004(h).  As described above, the relief that the Debtors request in this Motion is immediately

necessary in order for the Debtors to be able to continue to operate their businesses and preserve

the value of their estates.  The Debtors respectfully request that the Court waive the notice

requirements imposed by Bankruptcy Rule 6004(a) and the fourteen day stay imposed by

Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate

relief.

## RESERVATION OF RIGHTS

39.     Nothing contained herein is intended or should be construed as, or deemed

to constitute (a) an admission as to the amount, basis for, or validity of any agreement or claim

against the Debtors under the Bankruptcy Code or applicable nonbankruptcy law; (b)  a waiver or

impairment of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise

or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of the type specified or defined in this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or applicable law.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## NOTICE

40.     Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) the administrative agent for the Debtors' prepetition revolving credit facility; (c) counsel to the administrative agent for the Debtors' prepetition revolving credit facility; (d) the indenture trustee under the Debtors' 8.750% senior notes due 2023; (e) Stroock & Stroock & Lavan LLP and Young, Conaway, Stargatt & Taylor, LLP, as counsel to the ad hoc group of holders of the 8.750% senior notes due 2023; (f) the Internal Revenue Service; (g) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (h) the United States Attorney for the District of Delaware; (i) the Attorneys General for the states of Oklahoma and Texas; (j) counsel to Naylor Farms, Inc. and Harrel's LLC, as lead plaintiffs in the action captioned *Naylor Farms, Inc., individually and as class representative on behalf of all similarly situated persons v. Chaparral Energy, L.L.C.*, Case No. 11-00634 (W.D. Ok. 2011); (k) the parties included on the Debtors' consolidated list of twenty (20) largest unsecured creditors; (l) applicable financial institutions; (m) Insurance Carriers; (n) the Broker; (o) the Surety Issuer; and (p) any party that is

entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "**<u>Notice Parties</u>**").  The

Debtors submit that, under the circumstances, no other or further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and the Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: August 16, 2020
        Wilmington, Delaware

By:    */s/ Brendan J. Schlauch*
       John H. Knight (No. 3848)
       Amanda R. Steele (No. 5530)
       Brendan J. Schlauch (No. 6115)
       RICHARDS, LAYTON & FINGER, P.A.
       One Rodney Square
       920 North King Street
       Wilmington, Delaware 19801
       Telephone:  302-651-7700
       Fax:  302-651-7701
       Email:    collins@rlf.com
                  steele@rlf.com
                  schlauch@rlf.com

       - and -

       Damian S. Schaible (*pro hac vice* pending)
       Angela M. Libby (*pro hac vice* pending)
       Jacob Weiner (*pro hac vice* pending)
       Paavani Garg (*pro hac vice* pending)
       DAVIS POLK & WARDWELL LLP
       450 Lexington Avenue
       New York, New York 10017
       Telephone:  212-450-4000
       Fax:  212-701-5800
       Email:    damian.schaible@davispolk.com
                  angela.libby@davispolk.com
                  jacob.weiner@davispolk.com
                  paavani.garg@davispolk.com

       *Proposed Counsel for Debtors and*
       *Debtors in Possession*

**<u>EXHIBIT A</u>**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CHAPARRAL ENERGY, INC., *et al.*,[1] | Case No. 20-_____ (___) |
| Debtors. | (Jointly Administered) |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) PAY THEIR PREPETITION INSURANCE OBLIGATIONS, (B) PAY THEIR PREPETITION BONDING OBLIGATIONS, AND (C) MAINTAIN THEIR POSTPETITION INSURANCE COVERAGE, (D) MAINTAIN THEIR BONDING PROGRAM, (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**") of Chaparral Energy, Inc. and its subsidiaries that are debtors and debtors in possession (collectively, the "**Debtors**") in the Chapter 11 Cases for entry of an Interim Order and Final Order, pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 6003, (I) authorizing the Debtors to (a) continue to administer the Insurance Policies and pay all Prepetition Insurance Obligations and pay all Prepetition Bonding Obligations, to the extent the Debtors determine in their absolute discretion that such payments are necessary or appropriate; (b) in the ordinary course of business, pay all Postpetition Insurance Obligations and Postpetition Bonding Obligations, as such payments become due; and (c) revise, extend, supplement, or change the Debtors' insurance coverage or the Bonding Program as needed in the ordinary course of business; (II) authorizing financial institutions to honor and process related

---

[1] The Debtors in these cases, along with the last four digits (or five digits, in cases in which multiple Debtors have the same last four digits) of each Debtor's federal tax identification number, are: CEI Acquisition, L.L.C. (1817); CEI Pipeline, L.L.C. (6877); Chaparral Biofuels, L.L.C. (1066); Chaparral CO2, L.L.C. (1656); Chaparral Energy, Inc. (90941); Chaparral Energy, L.L.C. (20941); Chaparral Exploration, L.L.C. (1968); Chaparral Real Estate, L.L.C. (1655); Chaparral Resources, L.L.C. (1710); Charles Energy, L.L.C. (3750); Chestnut Energy, L.L.C. (9730); Green Country Supply, Inc. (2723); Roadrunner Drilling, L.L.C. (2399); and Trabajo Energy, L.L.C. (9753). The Debtors' address is 701 Cedar Lake Boulevard, Oklahoma City, OK 73114.

checks and transfers; and (III) granting related relief; and the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion and opportunity for a hearing on the Motion having been given to the Notice Parties, under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion and the First Day Declaration; and the Court having held a hearing on the Motion (the "**_Hearing_**"); and the Court having found that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and the Court having determined that the relief requested in the Motion being in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Motion is GRANTED on an interim basis as set forth herein.

2.     The final hearing to consider the relief requested in the Motion shall be held on _____, 2020 at __:_____ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time,

on _____, 2020.  In the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the final hearing.

3.      The Debtors are authorized, but not directed, in their sole discretion to continue their Insurance Policies and Bonding Program, and to pay any Insurance Obligations and Bonding Obligations, whether arising prepetition or postpetition; *provided* that the Debtors shall not exceed $11,250 in payments for Insurance Obligations and Bonding Obligations arising prepetition prior to entry of the Final Order.

4.      The Debtors are authorized, but not directed, in their sole discretion, to revise, extend, supplement, or change their Insurance Policies and their Bonding Program as needed and to renew or enter into new insurance policies and surety bonds, or other agreements in connection with their Insurance Policies and Bonding Programs, including, without limitation, upon termination of an Insurance Policy or a Bonding Program.

5.      The Debtors are authorized to pay the fees, costs, and commissions of Lockton in connection with the Insurance Policies and the Bonding Program in the ordinary course of business.

6.      All applicable banks and other financial institutions are hereby authorized to receive, process, honor, and pay any and all checks, drafts, wires, check transfer requests, or automated clearing house transfers evidencing amounts paid by the Debtors under this Order whether presented prior to, on, or after the Petition Date.  Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

7.     The Debtors are hereby authorized, but not directed, to issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests with respect to Prepetition Insurance Obligations and Prepetition Bonding Obligations dishonored or rejected, and to reimburse any expenses that holders of claims in connection with the Prepetition Insurance Obligations and Prepetition Bonding Obligations may incur as a result of any bank's failure to honor a prepetition check.

8.     Nothing in this Interim Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and all of the Debtors' rights with respect to such matters are expressly reserved.

9.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person or entity or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

10.     Nothing in this Interim Order nor the Debtors' payment of claims pursuant to this Interim Order shall be construed as or deemed to constitute (a) an agreement or admission by the Debtors as to the validity of any claim against the Debtors on any ground; (b) a grant of third party beneficiary status or bestowal of any additional rights on any third party; (c) a waiver or impairment of any rights, claims, or defenses of the Debtors' rights to dispute any claim on any grounds; (d) a promise by the Debtors to pay any claim; or (e) an implication or admission by the Debtors that such claim is payable pursuant to this Order.

11.     The requirements of Bankruptcy Rules 6003 and 6004(a) are satisfied by the contents of the Motion.

12.     Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Interim Order is hereby waived, and the terms and conditions of this Interim Order shall be effective and enforceable immediately upon its entry.

13.     The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

14.     The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

## EXHIBIT B

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CHAPARRAL ENERGY, INC., *et al.*,[1] | ) | Case No. 20-_____ (___) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO (A) PAY THEIR PREPETITION INSURANCE OBLIGATIONS, (B) PAY THEIR PREPETITION BONDING OBLIGATIONS, AND (C) MAINTAIN THEIR POSTPETITION INSURANCE COVERAGE, (D) MAINTAIN THEIR BONDING PROGRAM, (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**") of Chaparral Energy, Inc. and its subsidiaries that are debtors and debtors in possession (collectively, the "**Debtors**") in the Chapter 11 Cases for entry of an Interim Order and Final Order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 and Local Rule 9013-1(m) (I) authorizing the Debtors to (a) continue to administer the Insurance Policies and pay all Prepetition Insurance Obligations and pay all Prepetition Bonding Obligations, to the extent the Debtors determine in their absolute discretion that such payments are necessary or appropriate; (b) in the ordinary course of business, pay all Postpetition Insurance Obligations and Postpetition Bonding Obligations, as such payments become due; and (c) revise, extend, supplement, or change the Debtors' insurance coverage or the Bonding Program as needed in the ordinary course of business; (II) authorizing financial

---

[1] The Debtors in these cases, along with the last four digits (or five digits, in cases in which multiple Debtors have the same last four digits) of each Debtor's federal tax identification number, are: CEI Acquisition, L.L.C. (1817); CEI Pipeline, L.L.C. (6877); Chaparral Biofuels, L.L.C. (1066); Chaparral CO2, L.L.C. (1656); Chaparral Energy, Inc. (90941); Chaparral Energy, L.L.C. (20941); Chaparral Exploration, L.L.C. (1968); Chaparral Real Estate, L.L.C. (1655); Chaparral Resources, L.L.C. (1710); Charles Energy, L.L.C. (3750); Chestnut Energy, L.L.C. (9730); Green Country Supply, Inc. (2723); Roadrunner Drilling, L.L.C. (2399); and Trabajo Energy, L.L.C. (9753). The Debtors' address is 701 Cedar Lake Boulevard, Oklahoma City, OK 73114.

institutions to honor and process related checks and transfers; and (III) granting related relief; and the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion and opportunity for a hearing on the Motion having been given to the Notice Parties, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion and the First Day Declaration; and the Court having granted interim relief on the Motion on [•], 2020 (D.I. [•]); and the Court having held, if necessary, a final hearing on the Motion (the "**Hearing**"); and the Court having found that the legal and factual bases set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and the Court having determined that the relief requested in the Motion being in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED, as set forth herein.

2.      The Debtors are authorized, but not directed, in their sole discretion to continue their Insurance Policies and Bonding Program, and to pay any Insurance Obligations and Bonding Obligations, whether arising prepetition or postpetition.

3.     The Debtors are authorized, but not directed, in their sole discretion, to revise, extend, supplement, or change their Insurance Policies and their Bonding Program as needed and to renew or enter into new insurance policies and surety bonds, or other agreements in connection with their Insurance Policies and Bonding Programs, including, without limitation, upon termination of an Insurance Policy or a Bonding Program.

4.     The Debtors are authorized to pay the fees, costs, and commissions of Lockton in connection with the Insurance Policies and the Bonding Program in the ordinary course of business.

5.     All applicable banks and other financial institutions are hereby authorized to receive, process, honor, and pay any and all checks, drafts, wires, check transfer requests, or automated clearing house transfers evidencing amounts paid by the Debtors under this Order whether presented prior to, on, or after the Petition Date.  Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

6.     The Debtors are hereby authorized, but not directed, to issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests with respect to Prepetition Insurance Obligations and Prepetition Bonding Obligations dishonored or rejected, and to reimburse any expenses that holders of claims in connection with the Prepetition Insurance Obligations and Prepetition Bonding Obligations may incur as a result of any bank's failure to honor a prepetition check.

7.     Nothing in this Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory

contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and all of the Debtors' rights with respect to such matters are expressly reserved.

8.      Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person or entity or (b) be deemed to convert the priority of any claim from a prepetition claim into an administrative expense claim.

9.      Nothing in this Final Order nor the Debtors' payment of claims pursuant to this Final Order shall be construed as or deemed to constitute (a) an agreement or admission by the Debtors as to the validity of any claim against the Debtors on any ground; (b) a grant of third party beneficiary status or bestowal of any additional rights on any third party; (c) a waiver or impairment of any rights, claims, or defenses of the Debtors' rights to dispute any claim on any grounds; (d) a promise by the Debtors to pay any claim; or (e) an implication or admission by the Debtors that such claim is payable pursuant to this Final Order.

10.     The requirements of Bankruptcy Rule 6004(a) are satisfied by the contents of the Motion.

11.     Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Final Order is hereby waived, and the terms and conditions of this Final Order shall be effective and enforceable immediately upon its entry.

12.     The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Final Order.

13.     Notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion or the entry of this Final Order shall be required.

14.     The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

**EXHIBIT C**

Policy Schedule

| POLICY TYPE | EFFECTIVE PERIOD | POLICY NUMBER | CARRIER | APPROXIMATE ANNUALIZED GROSS PREMIUM |
|---|---|---|---|---|
| Cyber Insurance | 10/1/2019-10/1/2020 | ESI011634938 | CFC Underwriting Limited | $24,800 |
| Fiduciary Liability | 10/1/2019-10/1/2020 | 8201-6130 | Federal Insurance Company (Chubb) | $8,440 |
| Crime | 10/1/2019-10/1/2020 | 8201-6130 | Federal Insurance Company (Chubb) | $12,705 |
| ERISA Bond | 10/1/2019-10/1/2020 | W150369982 | Old Republic Surety Company | $150 |
| Auto Liability | 10/1/2019-10/1/2020 | (19)7360-56-28 | Federal Insurance Co. (Chubb) | $160,425 |
| Workers' Comp | 10/1/2019-10/1/2020 | 03264908 19 1 | Compsource Mutual Insurance Company | $69,543 |
| TX Workers' Comp | 10/1/2019-10/1/2020 | (20) 7177-08-79 | Federal Insurance Co. (Chubb) | $449 |
| Umbrella Liability | 10/1/2019-10/1/2020 | 7981-73-16 | Federal Insurance Co. (Chubb) | $273,357 |
| Excess Liability | 10/1/2019-10/1/2020 | 002525404 | Ironshore | $144,500 |
| Excess Liability | 10/1/2019-10/1/2020 | MKLV3EFX100415 | Markel American Insurance Company | $77,383 |
| Environmental Excess Liability | 10/1/2019-10/1/2020 | 002527104 | Ironshore | $166,005 |
| Foreign Liability | 10/1/2019-10/1/2020 | 7497-19-21 TUL | GREAT NORTHERN INSURANCE COMPANY (Chubb) | $2,500 |
| General Liability | 10/1/2019-10/1/2020 | 3577-51-53 DAL | GREAT NORTHERN INSURANCE COMPANY (Chubb) | $200,502 |
| Pollution Liability | 10/1/2019-10/1/2020 | 001481706 | Ironshore | $96,837 |
| Control of Well | 10/1/2019-10/1/2020 | B0572MA191169 | Lloyd's of London 71% Houston Casualty 11% StarStone 7% Arch 4% Aggregated Offline Market 7% | $250,000 |

| POLICY TYPE | EFFECTIVE PERIOD | POLICY NUMBER | CARRIER | APPROXIMATE ANNUALIZED GROSS PREMIUM |
|---|---|---|---|---|
| Oil Lease Property | 10/1/2019-10/1/2020 | B0572MA191169 | Lloyd's of London 71% Houston Casualty 11% StarStone 7% Arch 4% Aggregated Offline Market 7% | $67,734 |
| All Property | 10/1/2019-10/1/2020 | B0572MA191169 | Lloyd's of London 71% Houston Casualty 11% StarStone 7% Arch 4% Aggregated Offline Market 7% | $47,250 |
| Directors and Officers Liability | 7/24/2019-7/24/2021 | 01-602-33-94 | National Union Fire Insurance Company of Pittsburgh, Pa. (AIG) | $152,000 |
| Directors and Officers Liability | 7/24/2019-7/24/2021 | ELU162883-19 | XL Specialty Insurance Company | $106,400 |
| Directors and Officers Liability | 7/24/2019-7/24/2021 | 34-MGU-19-A47338 | U.S. Specialty Insurance Company (Tokio Marine) | $87,797 |
| Directors and Officers Liability | 7/24/2019-7/24/2021 | G31334366 002 | Westchester Fire Insurance Company (Chubb) | $75,762 |
| Directors and Officers Liability | 7/24/2019-7/24/2021 | 01-602-44-23 | National Union Fire Insurance Company of Pittsburgh, Pa. (AIG) | $64,676 |
| Directors and Officers Liability | 7/24/2019-7/24/2021 | ELU162887-19 | XL Specialty Insurance Company | $61,442 |
| Directors and Officers Liability | 7/24/2019-7/24/2021 | 47-EPC-303424-06 | Berkshire Hathaway Specialty Insurance | $123,120 |
| Directors and Officers Liability | 7/24/2019-7/24/2021 | 0311-6927 | Allied World Specialty Insurance Company | $98,222 |
| Directors and Officers Liability | 7/24/2019-7/24/2021 | 100005431 | QBE Insurance Corporation | $90,915 |

| POLICY TYPE | EFFECTIVE PERIOD | POLICY NUMBER | CARRIER | APPROXIMATE ANNUALIZED GROSS PREMIUM |
|---|---|---|---|---|
| Directors and Officers Liability | 7/24/2019-7/24/2021 | DOX30001189400 | Endurance American Insurance Company (SOMPO International) | $84,550 |
| Directors and Officers Liability | 7/24/2019-7/24/2021 | SM19DOLZ00WC41C | Navigators Insurance Company | $77,786 |
| Directors and Officers Liability | 7/24/2019-7/24/2021 | DOX1000100-00 | ARCH INSURANCE COMPANY | $74,285 |
| Directors and Officers Liability | 7/24/2019-7/24/2021 | MLX 4209791-1 | Argonaut Insurance Company (Argo Pro) | $69,085 |
| Directors and Officers Liability | 7/24/2019-7/24/2021 | G31334445 002 | Westchester Fire Insurance Company (Chubb) | $38,542 |
| Directors and Officers Liability | 7/24/2019-7/24/2021 | 01-602-84-45 | National Union Fire Insurance Company of Pittsburgh, Pa. (AIG) | $33,162 |
| Directors and Officers Liability | 7/24/2019-7/24/2021 | 0311-6928 | Allied World Specialty Insurance Company | $52,506 |
| Directors and Officers Liability | 7/24/2019-1/24/2021 | P081011901 | Lloyd's of London | $116,167 |
| Directors and Officers Liability (Run-off) | 8/16/2020-8/15/2026 | 01-602-33-94 | National Union Fire Insurance Company of Pittsburgh, Pa. (AIG) | $456,000 |
| Directors and Officers Liability (Run-off) | 8/16/2020-8/15/2026 | ELU162883-19 | XL Specialty Insurance Company | $319,200 |
| Directors and Officers Liability (Run-off) | 8/16/2020-8/15/2026 | 34-MGU-19-A47338 | U.S. Specialty Insurance Company (Tokio Marine) | $263,390 |
| Directors and Officers Liability (Run-off) | 8/16/2020-8/15/2026 | G31334366 002 | Westchester Fire Insurance Company (Chubb) | $227,256 |

| POLICY TYPE | EFFECTIVE PERIOD | POLICY NUMBER | CARRIER | APPROXIMATE ANNUALIZED GROSS PREMIUM |
|---|---|---|---|---|
| Directors and Officers Liability (Run-off) | 8/16/2020-8/15/2026 | 01-602-44-23 | National Union Fire Insurance Company of Pittsburgh, Pa. (AIG) | $194,028 |
| Directors and Officers Liability (Run-off) | 8/16/2020-8/15/2026 | ELU162887-19 | XL Specialty Insurance Company | $184,327 |
| Directors and Officers Liability (Run-off) | 8/16/2020-8/15/2026 | 47-EPC-303424-06 | Berkshire Hathaway Specialty Insurance | $430,920 |
| Directors and Officers Liability (Run-off) | 8/16/2020-8/15/2026 | 0311-6927 | Allied World Specialty Insurance Company | $387,828 |
| Directors and Officers Liability (Run-off) | 8/16/2020-8/15/2026 | 100005431 | QBE Insurance Corporation | $332,500 |
| Directors and Officers Liability (Run-off) | 8/16/2020-8/15/2026 | DOX30001189400 | Endurance American Insurance Company (SOMPO International) | $308,750 |
| Directors and Officers Liability (Run-off) | 8/16/2020-8/15/2026 | SM19DOLZ00WC41C | Navigators Insurance Company | $284,050 |
| Directors and Officers Liability (Run-off) | 8/16/2020-8/15/2026 | DOX1000100-00 | ARCH INSURANCE COMPANY | $271,268 |
| Directors and Officers Liability (Run-off) | 8/16/2020-8/15/2026 | MLX 4209791-1 | Argonaut Insurance Company (Argo Pro) | $252,278 |
| Directors and Officers Liability (Run-off) | 8/16/2020-8/15/2026 | G31334445 002 | Westchester Fire Insurance Company (Chubb) | $140,679 |

| POLICY TYPE | EFFECTIVE PERIOD | POLICY NUMBER | CARRIER | APPROXIMATE ANNUALIZED GROSS PREMIUM |
|---|---|---|---|---|
| Directors and Officers Liability (Run-off) | 8/16/2020-8/15/2026 | 01-602-84-45 | National Union Fire Insurance Company of Pittsburgh, Pa. (AIG) | $121,042 |
| Directors and Officers Liability (Run-off) | 8/16/2020-8/15/2026 | 0311-6928 | Allied World Specialty Insurance Company | $191,650 |
| Directors and Officers Liability (Run-off) | 8/16/2020-8/15/2026 | P081011901 | Lloyd's of London | $511,404 |
| Employment Edge | 7/22/2020-7/24/2021 | EPPP30001867300 | Endurance American Insurance Company (SOMPO International) | $23,000 |

## EXHIBIT D

Bonding Obligations

| Obligee | Principal | Premium | Bond Amount | Nature of Bond | Surety Bond Number |
|---|---|---|---|---|---|
| State of Oklahoma, Department of Public Safety | Chaparral Energy, L.L.C. | $250.00 | $10,000.00 | Excess Weight and Other Highway and Street Permits | B001271 |
| Comptroller of Public Accounts | Chaparral Energy, L.L.C. | $500.00 | $20,000.00 | Fuel Tax | B001097 |
| State of Oklahoma Taxpayer Assistance Division, Oklahoma Tax Commission | Chaparral Energy, L.L.C. | $375.00 | $15,000.00 | Gross Production Tax | B001401 |
| State of Oklahoma, Tax Payer Assistance Divison - Oklahoma Tax Commission | Chaparral Energy, L.L.C. | $625.00 | $475,152.35 | Gross Production Tax | B005304 |
| Bureau of Indian Affairs | Noram Petroleum, L.L.C. | $250.00 | $10,000.00 | Reclamation - Oil/Gas | B001060 |
| United States, Department of the Interior, BLM | Chaparral Energy, L.L.C. | $3,750.00 | $150,000.00 | Reclamation - Oil/Gas | B001194 |
| U.S. Department of the Interior, BLM | Chaparral Resources, LLC | $625.00 | $25,000.00 | Reclamation - Oil/Gas | B001233 |
| US Department of the Interior, Bureau of Indian Affairs | CEI Bristol Acquisition, L.P., Chaparral Energy, L.L.C., Chaparral Oil, L.L.C. | $3,750.00 | $150,000.00 | Reclamation - Oil/Gas | B001236 |
| Oklahoma Department of Wildlife Conservation | Chaparral Energy, L.L.C. | $250.00 | $10,000.00 | Reclamation - Oil/Gas | B001267 |
| New Mexico State Land Office | Chaparral Energy, L.L.C. | $625.00 | $25,000.00 | Reclamation - Oil/Gas | B001449 |
| The City of Norman, Oklahoma | Chaparral Energy, L.L.C. | $625.00 | $25,000.00 | Reclamation - Oil/Gas | B001524 |
| Industrial Commission of North Dakota, Oil and Gas Division | Chaparral Energy, L.L.C. | $1,250.00 | $50,000.00 | Reclamation - Oil/Gas | B001986 |

| Obligee | Principal | Premium | Bond Amount | Nature of Bond | Surety Bond Number |
|---|---|---|---|---|---|
| LLOG Production Company | Chaparral Texas, L.P. (as predecessor in interest to Chaparral Energy, L.L.C.) | $2,500.00 | $100,000.00 | Reclamation - Oil/Gas | B002600 |
| The Railroad Commission of Texas, Oil and Gas Division | CEI Pipeline, LLC | $625.00 | $25,000.00 | Reclamation - Oil/Gas | B004464 |
| The Railroad Commission of Texas, Oil and Gas Division | Chaparral Energy, L.L.C. | $3,750.00 | $150,000.00 | Reclamation - Oil/Gas | B004882 |
| The City of Oklahoma City | Chaparral Energy, L.L.C. | $625.00 | $25,000.00 | Reclamation - Oil/Gas | B005173 |
| State of Oklahoma, Secretary of State | Chaparral Energy, L.L.C. | $625.00 | $25,000.00 | Reclamation - Oil/Gas | B005174 |
| The City of Perry, Oklahoma | Chaparral Energy, L.L.C. | $625.00 | $25,000.00 | Reclamation - Oil/Gas | B005379 |
| City of Mustang, OK | Chaparral Energy, L.L.C. | $625.00 | $25,000.00 | Reclamation - Oil/Gas | B005420 |
| The Railroad Commission of Texas, Oil and Gas Division | Chaparral Energy, L.L.C. | $5,071.00 | $202,822.00 | Reclamation - Oil/Gas | B006239 |
| Oklahoma Tax Commission, Taxpayer Assistance Division | Chaparral Energy, L.L.C. | $250.00 | $2,500.00 | Reclamation - Oil/Gas | B009547 |
| Oklahoma Corporation Commission, Oil and Gas Conservation Division | Chaparral Energy, L.L.C. | $625.00 | $25,000.00 | Reclamation - Oil/Gas | B010145 |
| Bureau of Indian Affairs | Chaparral Energy, L.L.C. | $250.00 | $898.00 | Reclamation - Oil/Gas | B010381 |
| Town of Union City | Chaparral Energy, L.L.C. | $2,500.00 | $100,000.00 | Reclamation - Oil/Gas | B010970 |
| Town of Union City | Chaparral Energy, L.L.C. | $2,500.00 | $100,000.00 | Reclamation - Oil/Gas | B011001 |
| Town of Union City | Chaparral Energy, L.L.C. | $2,500.00 | $100,000.00 | Reclamation - Oil/Gas | B011020 |
| Town of Union City | Chaparral Energy, L.L.C. | $2,500.00 | $100,000.00 | Reclamation - Oil/Gas | B011121 |
| City of El Reno, OK | Chaparral Energy, L.L.C. | $625.00 | $25,000.00 | Reclamation - Oil/Gas | B011218 |
| City of El Reno, OK | Chaparral Energy, L.L.C. | $625.00 | $25,000.00 | Reclamation - Oil/Gas | B011219 |

| Obligee | Principal | Premium | Bond Amount | Nature of Bond | Surety Bond Number |
|---|---|---|---|---|---|
| Town of Union City | Chaparral Energy, L.L.C. | $2,500.00 | $100,000.00 | Reclamation - Oil/Gas | B012408 |