## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| CHAPARRAL ENERGY, INC., *et al.*,[1] | Case No. 20-11947 (MFW) |
| Debtors. | (Joint Administration Requested) |

## MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM UNDER POSTPETITION HEDGING ARRANGEMENTS, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) GRANTING RELATED RELIEF

Chaparral Energy, Inc. and its subsidiaries that are debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**"), hereby move (this "**Motion**") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "**Interim Order**" and the "**Final Order**"), granting the relief described below.    In support thereof, the Debtors refer to the contemporaneously filed *Declaration of Charles Duginski in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**") and further represent as follows:

### JURISDICTION

1.    The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of*

---

[1] The Debtors in these cases, along with the last four digits (or five digits, in cases in which multiple Debtors have the same last four digits) of each Debtor's federal tax identification number, are: CEI Acquisition, L.L.C. (1817); CEI Pipeline, L.L.C. (6877); Chaparral Biofuels, L.L.C. (1066); Chaparral CO2, L.L.C. (1656); Chaparral Energy, Inc. (90941); Chaparral Energy, L.L.C. (20941); Chaparral Exploration, L.L.C. (1968); Chaparral Real Estate, L.L.C. (1655); Chaparral Resources, L.L.C. (1710); Charles Energy, L.L.C. (3750); Chestnut Energy, L.L.C. (9730); Green Country Supply, Inc. (2723); Roadrunner Drilling, L.L.C. (2399); and Trabajo Energy, L.L.C. (9753).  The Debtors' address is 701 Cedar Lake Boulevard, Oklahoma City, OK 73114.

*Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.      Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 105(a), 363, and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 9013-1(m).

## BACKGROUND

4.      On August 16, 2020 (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing the Chapter 11 Cases.  The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested in the Chapter 11 Cases and no committees have yet been appointed.

5.      The Debtors commenced the Chapter 11 Cases to implement their comprehensive, prepackaged plan of reorganization (the "**Plan**").  The Plan is the result of extensive negotiations between the Debtors, their revolving lenders (the "**Prepetition Lender**s"), and their unsecured noteholders, who have agreed on a comprehensive balance sheet

2

restructuring that will reduce the Debtors' debt burden and increase liquidity. Holders of more than 75% of the Debtors' outstanding revolving loans and more than 75% of the Debtors' outstanding unsecured notes have documented their support for the Plan and the Chapter 11 Cases by executing a restructuring support agreement prior to the Petition Date. Under the Plan, the Debtors will equitize all of their approximately $300 million of unsecured notes, eliminating a significant portion of their prepetition debt, and convert the revolving loans into an exit facility. Importantly, the Plan contemplates that allowed general unsecured claims will remain unimpaired and be paid in full or "ride through" the Chapter 11 Cases.

6.      Additional information about the Debtors, including their business operations, their capital structure and prepetition indebtedness, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the First Day Declaration, which is incorporated herein by reference.

## RELIEF REQUESTED

7.      By this Motion, pursuant to sections 105(a), 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1(m), and consistent with industry practice, the Debtors request entry of an interim order and final order (a) authorizing the Debtors to enter into and perform under Postpetition Hedging Arrangements (as defined herein) with the Prepetition Lenders and their hedging affiliates, (b) authorizing the Debtors to honor, pay, or otherwise satisfy all obligations, liabilities, and indebtedness of the Debtors arising under Postpetition Hedging Arrangements as they come due in the ordinary course, (c) authorizing the Debtors to grant liens and superpriority administrative claims on account of Postpetition Hedging Arrangements, (d) authorizing the counterparties to Postpetition Hedging Arrangements (the "**Postpetition Hedge Providers**") to exercise all rights and

3

remedies solely in accordance with the terms of each agreement governing such Postpetition Hedging Arrangement, (e) in the event of an event of default or termination event under the Postpetition Hedging Arrangements or after the occurrence of the Termination Date (as defined in the Cash Collateral Order (as defined herein)), authorizing the Postpetition Hedge Providers to exercise all rights and remedies and rights to set off, net, and apply any payment amounts that such Postpetition Hedge Providers would otherwise be obligated to pay to any Debtor in connection with the Postpetition Hedging Arrangements against any prepetition indebtedness owed to such Pospetition Hedge Provider, and (f) granting related relief.

**BASIS FOR RELIEF**

8.      The Debtors are domestic exploration and production companies primarily engaged in the acquisition, development, and production of oil and natural gas reserves in the United States.   Energy commodity prices are volatile and a decline in commodity prices negatively impacts the Debtors' revenues, liquidity, and reserves.  Energy commodity prices are determined by prevailing market conditions, regional and worldwide economic and geopolitical activity, supply versus demand, weather, seasonality, and other factors that influence market conditions.  The Debtors have historically mitigated the effects of volatility in commodity prices on their businesses by hedging a substantial portion of their expected production.

9.      Hedging arrangements are customary and common in the Debtors' industry because oil and natural gas prices are particularly volatile. Such hedging arrangements effectively act as an insurance policy against precipitous declines in commodity prices. For example, in exchange for protection against significant "downside" exposure, companies entering into a hedge agree to cap their revenues at a certain level for the hedged portion of their production.  Because hedges only last a specified amount of time (typically one to three years),

4

hedges cannot entirely insulate a company from the impact of a sustained downturn in a commodities market—such as the one currently being experienced by the oil and gas industry. They do, however, provide a vital measure of protection by guaranteeing certain cash flows during the hedged period.  This stability not only allows companies like the Debtors to plan for this time period, but assures their creditors and other stakeholders that they will have enough revenues to service their debt and meet other financial obligations.

10.    Prior to the Petition Date, the Debtors were party to hedging arrangements with several counterparties, all of whom were secured lenders or affiliates thereof under the Debtors' prepetition revolving credit facility.  On July 15, 2020, the Debtors elected not to make a scheduled interest payment to its senior noteholders and entered into a forbearance agreement with its revolving lenders pursuant to which the revolving lenders agreed to forbear from exercising rights and remedies arising as a result of the Debtors' election not to make the interest payment to the senior noteholders.  The terms of the forbearance agreement required that the Debtors provide the administrative agent with a proposed process and timeline for terminating its existing hedges, and the hedge counterparties all indicated a willingness to participate in an orderly unwind of the Debtors' hedge portfolio.

11.    In light of the Debtors' ongoing liquidity concerns, the Debtors concluded that an orderly, prepetition unwind of their hedge portfolio, effectuated in coordination with the Debtors' hedge counterparties, would allow the Debtors to obtain more value for hedges than they would if such hedge counterparties elected to unilaterally terminate hedges postpetition, without communicating or coordinating with the Debtors.  In accordance with the process outlined in the forbearance agreement, the Debtors consensually unwound their prepetition hedges during July 2020 and received a net amount of approximately $28.2 million, of which

5

$24 million was used to reduce the loans outstanding under the Debtors' prepetition revolving credit facility.

12.     Due to the Debtors' current exposure to ongoing commodity price volatility, the Debtors seek authority to enter into, and perform under, new hedging arrangements (the "**Postpetition Hedging Arrangements**").  The Postpetition Hedging Arrangements will only be with Prepetition Lenders or their hedging affiliates.

13.     The Postpetition Hedging Arrangements will afford the Debtors a means to reduce the impact of volatile commodity prices on the Debtors' cash flow during the pendency of the Chapter 11 Cases. The Postpetition Hedging Arrangements will also allow the Debtors to protect their liquidity throughout the pendency of the Chapter 11 Cases, which is essential to the Debtors as they plan to fund the Chapter 11 Cases through cash on hand and cash flows from regular business operations.   The Debtors believe that entry into Postpetition Hedging Arrangements is in the best interest of the Debtors' estates and their creditors and will help the Debtors maximize value for all stakeholders.

## APPLICABLE AUTHORITY

**A. Section 363(c) of the Bankruptcy Code Authorizes the Debtors to Enter into the Postpetition Hedging Arrangements.**

14.     Section 363(c) of the Bankruptcy Code provides that a debtor in possession "may enter into transactions . . . in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  The ordinary course of business standard embodied in this provision is intended to allow a debtor in possession the flexibility to run its business during its chapter 11 proceedings. *See Moore v. Brewer (In re HMH Motor Servs., Inc.)*, 259 B.R. 440, 448-49 (Bankr. S.D. Ga. 2000). A debtor in possession may therefore use, sell, or lease property of the estate without the need for

prior court approval if the transaction is in the ordinary course of business. *See Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (holding that ordinary course of business use of estate property does not require a prior hearing); *Armstrong World Indus. Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 394 (Bankr. S.D.N.Y. 1983) (holding that where a debtor in possession is merely exercising the privileges of its status, there is no general right to notice and a hearing concerning particular transactions conducted in the ordinary course of business).

15.     The Bankruptcy Code does not define "ordinary course of business." *In re Commercial Mortg. & Fin. Co.*, 414 B.R. 389, 393 (Bankr. N.D. Ill. 2009).  However, courts have clarified that the standard is meant "to embrace the reasonable expectations of interested parties of the nature of transactions that the debtor would likely enter in the course of its normal, daily business."  *In re Roth American, Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) (stating that section 363 of the Bankruptcy Code is designed to allow a debtor in possession "flexibility to engage in ordinary transactions without unnecessary . . . oversight"); *Med. Malpractice Ins. Assoc. v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997) (finding that "ordinary course of business" is meant "to embrace the reasonable expectations of interested parties of the nature of transactions that the debtor would likely enter in the course of its normal, daily business") (quoting *In re Watford*, 159 B.R. 597, 599 (M.D. Ga. 1993)); *In re Coordinated Apparel, Inc.*, 179 B.R, 40, 43 (Bankr. S.D.N.Y. 1995). The two tests ordinarily applied by courts to determine the ordinary course of business are the "horizontal" test and the "vertical" test.  *Denton Cnty. Elec. Co-Op., Inc. v. Eldorado Ranch (In re Denton Cnty. Elec. Coop., Inc.)*, 281 B.R. 876, 882 n.12 (Bankr. N.D. Tex. 2002).  "The 'horizontal test' focuses on the way businesses operate within a given industry.  The 'vertical test' focuses on the expectations of creditors." *Id.*

7

16.     Entry into the Postpetition Hedging Arrangements satisfies both tests. Under the horizontal test, the Hedging Arrangements are typical arrangements and ubiquitous among companies in the Debtors' industry.  Exploration and production businesses operate with hedging and trading arrangements similar to those contemplated by the Hedging Arrangements. Accordingly, the Debtors believe the Postpetition Hedging Arrangements fall within the standard, ordinary course practice of companies in the Debtors' industry, and should be permitted.

17.     Under the vertical test, creditors' reasonable expectations of a debtor's "ordinary course of business" are based on the debtor's specific prepetition business practices and norms and the expectation that the debtor will conform to those practices and norms while operating as a debtor in possession.  *In re Garofalo's Finer Foods, Inc.*, 186 B.R. 414, 425 (N.D. Ill. 1995).  Thus, a fundamental characteristic of an "ordinary" postpetition business transaction is its similarity to a prepetition business practice.  *Marshack v. Orange Commercial Credit (In re Bat'l Lumber & Supply, Inc.)*, 184 B.R. 74, 79 (9th Cir. B.A.P. 1995); *In re James A. Phillips, Inc.*, 29 B.R. 391, 394 (S.D.N.Y. 1983).  The size, nature, and type of business and the size and nature of the transaction in question are all relevant to determining whether the transactions at issue are ordinary.  *U.S. ex rel. Harrison v. Estate of Deutscher*, 115 B.R. 592, 598 (M.D. Tenn. 1990); *In re Johns-Manville Corp.*, 60 B.R. at 617.

18.     The Debtors' historical practice has been to hedge a substantial percentage of their expected production.  The Postpetition Hedging Arrangements will be substantively similar to the Debtors' prepetition hedging arrangements and obligations.  Accordingly, the relief requested in the motion is consistent with the Debtors' own past, ordinary course practice.

8

**B. Entry into the Postpetition Hedging Arrangements is a Sound Exercise of the Debtors' Business Judgment.**

19.    To the extent that the Postpetition Hedging Arrangements implicate section 363(b) of the Bankruptcy Code, the Debtors submit that entering into such transactions would constitute a proper exercise of the Debtors' business judgment.  Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to use property of the estate other than in the ordinary course of business after notice and a hearing.  Courts have held that there must be some articulated business justification for using, selling, or leasing property out of the ordinary course of business before the bankruptcy judge may order such disposition under section 363(b).  *See, e.g.*, *The Dai-Ici Kangyo Bank Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate . . . courts require the debtor to show that a sound business purpose justifies such actions").

20.    The decision to enter into Postpetition Hedging Arrangements is in the sound business judgment of the Debtors because it is an important tool for stabilizing cash flow for the Debtors' estates.  Energy prices can be highly volatile and that volatility can place tremendous stress on energy companies.  The current pricing environment is a testament to that fact.  Absent authority to enter into Postpetition Hedging Arrangements the Debtors would remain exposed to fluctuations in commodities prices without any adequate means to protect themselves.

21.    The relief sought in this Motion is intended to preserve the value of the Debtors' estates.  To effectively manage the financial risks inherent to the Debtors' business and fluctuating prices of energy-related trades, the Debtors must be able to enter into Postpetition

Hedging Arrangements.  Accordingly, the Debtors believe the relief requested herein will yield benefits that are in the best interests of the Debtors, their estates, and creditors.

**B. Debtors Should be Authorized to Grant Postpetition Liens and Superpriority Claims in Respect of the Postpetition Hedging Arrangements Pursuant to Section 364 of the Bankruptcy Code.**

22.    Section 364 of the Bankruptcy Code authorizes a debtor to obtain "credit" on a superpriority or senior secured basis when obtaining such credit on other terms is unavailable.  11 U.S.C. §§ 364(c), (d).  Courts generally afford debtors considerable deference to determine, in their business judgment, the terms under which they obtain postpetition secured credit.  *See, e.g.*, *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011); *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981).

23.    The Debtors believe that preserving the value of their operations and business requires entering into new hedging arrangements. To provide the necessary comfort to the counterparties to the Postpetition Hedging Arrangements that the Debtors will be able to honor the postpetition hedging obligations, the Debtors seek to incur obligations that rank equally with the obligations arising under the Loan Documents (as defined in the Cash Collateral Order). Specifically, the Debtors are seeking authority to provide liens and superpriority administrative claims equal in priority to the Adequate Protection Liens and Adequate Protection Claims, each as defined in the Debtors' proposed *Interim Order (A) Authorizing The Debtors To Use Cash Collateral, (B) Granting Adequate Protection, (C) Modifying The Automatic Stay, (D) Scheduling a Final Hearing, and (E) Granting Related Relief* (the "**Interim Cash Collateral Order**," and together with any order authorizing such relief on a final basis, collectively, the "**Cash Collateral Order**"), filed contemporaneously herewith, in respect of the Postpetition Hedging Arrangements.

24.     Courts in this and other jurisdictions have approved similar relief.  *See, e.g.*, *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS) (Bankr. D. Del. July 13, 2020) (authorizing debtors to provide liens and superpriority claims to hedge counterparties); *In re Templar Energy LLC*, No. 20-11441 (BLS) (Bankr. D. Del. June 29, 2020); *In re McDermott International, Inc.*, No. 20-30336 (DRJ) (Bankr. S.D. Texas Jan. 23, 2020); *In re PES Holdings, LLC*, No. 18-10122 (KG) (Bankr. D. Del Feb. 26, 2018); *In re Genon Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex. June 14, 2017); *In re Vanguard Nat. Res., LLC*, No. 17-30560 (MI) (Bankr. S.D. Tex. June 9, 2017); *In re Linn Energy, LLC*, No. 16-60040 (DRJ) (Bankr. S.D. Tex. May 17, 2016); *In re Penn Virginia Corp.*, No. 16-32395 (KLP) (Bankr. E.D. Va. May 13, 2016); *In re Chaparral Energy, Inc.*, No. 16-11144 (LSS) (Bankr. D. Del. Dec. 14, 2016).

25. Granting first-priority liens and superpriority administrative expense claims is not unduly burdensome on the Debtors, and the Debtors believe these grants are necessary to create willingness among the Postpetition Hedge Providers to agree to allow the Debtors to enter into any Postpetition Hedging Arrangements, which are essential both to the stability of the Debtors' businesses and the success of the Debtors' restructuring.  In light of the foregoing, the Debtors believe that authorizing the Debtors to provide first-priority liens and superpriority administrative expense claims in respect of the Postpetition Hedging Arrangements will preserve the value of the Debtors' estates and is, therefore, appropriate and in the best interests of the Debtors, their estates, and all parties in interest in these Chapter 11 Cases, and should be permitted

## BANKRUPTCY RULE 6003 HAS BEEN SATISFIED AND BANKRUPTCY RULE 6004 SHOULD BE WAIVED

26.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay all or part of a prepetition claim within twenty-one days after the Petition Date if

11

the relief is necessary to avoid immediate and irreparable harm.  *See* Fed. R. Bankr. P. 6003(b). Based on the foregoing, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003(b) because the relief set forth in **Exhibit A** is necessary to avoid immediate and irreparable harm.

27.     To the extent that any aspect of the relief sought herein constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen day stay under Bankruptcy Rule 6004(h).  As described above, the relief that the Debtors request in this Motion is immediately necessary in order for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.  The Debtors respectfully request that the Court waive the notice requirements imposed by Bankruptcy Rule 6004(a) and the fourteen day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

28.     Nothing contained herein is intended or should be construed as, or deemed to constitute (a) an admission as to the amount, basis for, or validity of any agreement or claim against the Debtors under the Bankruptcy Code or applicable nonbankruptcy law; (b)  a waiver or impairment of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of the type specified or defined in this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a

12

waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or applicable law.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**NOTICE**

27.    Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) the administrative agent for the Debtors' prepetition revolving credit facility in such capacity, the "**Prepetition Agent**;" (c) Vinson & Elkins LLP as counsel to the administrative agent for the Debtors' prepetition revolving credit facility; (d) the indenture trustee under the Debtors' 8.750% senior notes due 2023; (e) Stroock & Stroock & Lavan LLP and Young, Conaway, Stargatt & Taylor, LLP as counsel to the ad hoc group of holders of the 8.750% senior notes due 2023; (f) the Internal Revenue Service; (g) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (h) the United States Attorney for the District of Delaware; (i) the Attorneys General for the states of Oklahoma and Texas; (j) counsel to Naylor Farms, Inc. and Harrel's LLC, as lead plaintiffs in the action captioned *Naylor Farms, Inc., individually and as class representative on behalf of all similarly situated persons v. Chaparral Energy, L.L.C.*, Case No. 11-00634 (W.D. Ok. 2011); (k) the parties included on the Debtors' consolidated list of twenty (20) largest unsecured creditors; (l) the Postpetition Hedge Providers; and (m) any party that is entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "**Notice Parties**"). The Debtors submit that, under the circumstances, no other or further notice is required.

13

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and the Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: August 17, 2020
      Wilmington, Delaware

/s/ Brendan J. Schlauch
John H. Knight (No. 3848)
Amanda R. Steele (No. 5530)
Brendan J. Schlauch (No. 6115)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King St.
Wilmington, Delaware 19801
Telephone: 302-651-7700
Fax: 302-651-7701
E-mail: knight@rlf.com
        steele@rlf.com
        schlauch@rlf.com

- and -

Damian S. Schaible (*pro hac vice* pending)
Angela M. Libby (*pro hac vice* pending)
Jacob S. Weiner (*pro hac vice* pending)
Paavani Garg (*pro hac vice* pending)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone:  212-450-4000
Fax:  212-701-5800
Email: damian.schaible@davispolk.com
        angela.libby@davispolk.com
        jacob.weiner@davispolk.com
        paavani.garg@davispolk.com

*Proposed Counsel for Debtors and Debtors in Possession*

14

**<u>EXHIBIT A</u>**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CHAPARRAL ENERGY, INC., *et al.*,[1] | ) | Case No. 20-11947 (MFW) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM UNDER POSTPETITION HEDGING ARRANGEMENTS, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Chaparral Energy, Inc. and its subsidiaries that are debtors and debtors in possession (collectively, the "**Debtors**") in the Chapter 11 Cases for entry of an Interim Order and Final Order, pursuant to sections 105(a), 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1(m), and consistent with industry practice, requesting entry of an Interim Order and a Final Order (a) authorizing the Debtors to enter into and perform under Postpetition Hedging Arrangements with the Prepetition Lenders and their hedging affiliates, (b) authorizing the Debtors to honor, pay, or otherwise satisfy all obligations, liabilities, and indebtedness of the Debtors arising under Postpetition Hedging Arrangements as they come due in the ordinary course, (c) authorizing the Debtors to grant liens and superpriority administrative claims on account of Postpetition Hedging Arrangements,

---

[1]    The Debtors in these cases, along with the last four digits (or five digits, in cases in which multiple Debtors have the same last four digits) of each Debtor's federal tax identification number, are: CEI Acquisition, L.L.C. (1817); CEI Pipeline, L.L.C. (6877); Chaparral Biofuels, L.L.C. (1066); Chaparral CO2, L.L.C. (1656); Chaparral Energy, Inc. (90941); Chaparral Energy, L.L.C. (20941); Chaparral Exploration, L.L.C. (1968); Chaparral Real Estate, L.L.C. (1655); Chaparral Resources, L.L.C. (1710); Charles Energy, L.L.C. (3750); Chestnut Energy, L.L.C. (9730); Green Country Supply, Inc. (2723); Roadrunner Drilling, L.L.C. (2399); and Trabajo Energy, L.L.C. (9753).  The Debtors' address is 701 Cedar Lake Boulevard, Oklahoma City, OK 73114.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(d) authorizing the Postpetition Hedge Providers to exercise all rights and remedies solely in accordance with the terms of each agreement governing such Postpetition Hedging Arrangement, (e) in the event of an event of default or termination event under the Postpetition Hedging Arrangements or after the occurrence of the Termination Date (as defined in the Cash Collateral Order (as defined below)), authorizing the Postpetition Hedge Providers to exercise all rights and remedies and rights to set off, net, and apply any payment amounts that such Postpetition Hedge Providers would otherwise be obligated to pay to any Debtor in connection with the Postpetition Hedging Arrangements against any prepetition indebtedness owed to such Pospetition Hedge Provider, and (f) granting related relief; and the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion and opportunity for a hearing on the Motion having been given to the Notice Parties, under the circumstances, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion and the First Day Declaration; and the Court having held a hearing on the Motion (the "**Hearing**"); and the Court having found that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and the Court having determined that the relief requested in the Motion being in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and the Court having determined that the relief requested in the Motion is

2

necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED on an interim basis, as set forth herein.

2.      The final hearing to consider the relief requested in the Motion shall be held on _____, 2020 at __:____ _.m. prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2020.  In the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the final hearing.

3.      Subject to the terms of this Interim Order, the Debtors are authorized, but not directed, to enter into and perform under Postpetition Hedging Arrangements with the Prepetition Lenders or their hedging affiliates and to honor, pay, or otherwise satisfy all obligations arising thereunder as they come due.

4.      Notwithstanding the foregoing, unless the Prepetition Agent otherwise consents in writing, the Debtors shall not enter into Postpetition Hedging Arrangements with counterparties who have not signed the $300,000,000 Senior Secured Exit Revolving Facility Commitment Letter dated August 15, 2020 with the Debtors, unless the Debtors have the right to terminate such Postpetition Hedging Arrangements if the Postpetition Hedging Arrangement would not be permitted under the exit facility approved by the Plan.

5.      The Debtors shall provide Stroock & Stroock & Lavan LLP and Young, Conaway, Stargatt & Taylor, LLP as counsel to the ad hoc group of holders of the 8.750% senior notes due 2023, notice before entering into any Postpetition Hedging Arrangements.

6.      Subject to the terms of this Interim Order, the Debtors are authorized, but not directed, to enter into and perform under Postpetition Hedging Arrangements; provided, however, that such Postpetition Hedging Arrangements shall not exceed 65% of the reasonably anticipated overall production from proved oil and gas properties for such calendar month.

7.      As security and assurance of the Debtors' obligations arising under the Postpetition Hedging Arrangements and in exchange for counterparties to the Postpetition Hedging Arrangements providing benefits to the Debtors in accordance with this Interim Order:

a.   the counterparties to the Postpetition Hedging Agreements shall be granted liens and superpriority administrative claims *pari passu* in rank to the Adequate Protection Liens and Adequate Protection Claims, each as defined in the Cash Collateral Order, and in each case subject to the Carve Out and Permitted Liens (each as defined in the Cash Collateral Order[3]);

b.   to the extent that any obligation of the Debtors is granted superpriority administrative expense status that would otherwise be senior to the administrative expense status of the Postpetition Hedging Arrangements granted hereunder (other than the Carve Out and Permitted Liens), the Postpetition Hedging Arrangements shall, without the need for any further Court order, automatically be granted superpriority administrative expense status that is *pari passu* with that of such obligation;

c.   the Postpetition Hedge Providers may exercise any rights, powers and remedies under the Postpetition Hedging Arrangements, including, but not limited to, the right to set off, net, and apply any payment, settlement payment, termination values, termination payments, and any other amounts that such Postpetition Hedge Provider would be entitled to receive from any Debtor or otherwise be obligated to pay to any Debtor in connection with any Postpetition Hedge Arrangement solely in accordance with the terms of each agreement governing such Postpetition Hedge Arrangement; *provided* that

---

[3] As used herein, "Cash Collateral Order" means the Debtors' proposed *Interim Order (A) Authorizing The Debtors To Use Cash Collateral, (B) Granting Adequate Protection, (C) Modifying The Automatic Stay, (D) Scheduling a Final Hearing, and (E) Granting Related Relief* (the "**Interim Cash Collateral Order**,") together with any order authorizing such relief on a final basis.

4

upon the occurrence and during the continuation of an event of default or a termination event (each as defined in agreements governing the Postpetition Hedging Arrangements), any Postpetition Hedge Provider shall have the right to suspend, terminate, liquidate, withhold performance or unwind its Postpetition Hedge Arrangement, set off and net transactions and apply any payment, settlement payment, termination values, termination payments to reduce permanently any Prepetition Claim (as defined in the Cash Collateral Order) owed to the Postpetition Hedge Provider upon notice by such Postpetition Hedge Provider to the Debtors solely in accordance with the applicable Postpetition Hedge Arrangement (in which case the Prepetition Lenders shall also have the right to apply any such amounts to reduce permanently any Prepetition Claim owed to such Prepetition Lenders in acordance with the terms of the Credit Agreement (as defined in the Cash Collateral Order), which rights shall not be stayed, avoided, or otherwise limited by operation of any provision of the Bankruptcy Code;[4]

d.   upon a Termination Date (as defined in the Cash Collateral Order), the Prepetition Lenders under the Debtors' prepetition revolving credit facility may apply any payment, settlement payment, termination values, termination payments, and any other amounts that any Postpetition Hedge Provider would be obligated to pay to any Debtor under any Postpetition Hedge Arrangement to reduce any Prepetition Claim owed to such Prepetition Lenders in accordance with the terms of the Credit Agreement (as defined in the Cash Collateral Order);

e.   the reorganized Debtors shall assume the agreements governing the Postpetition Hedging Arrangements under the Plan; and

f.   for the avoidance of doubt, the Debtors' rights under the Postpetition Hedging Arrangements constitute (i) solely for the purposes of exercising remedies under the prepetition revolving credit documents, Prepetition Collateral, and the Prepetition Agent is hereby granted, effective as of the date hereof, liens and security interests in the Postpetition Hedging Arrangements (such liens and security interests being automatically perfected without the necessity of execution by the Debtors (or recordation or other filing) of, including without limitation, security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control), and (ii) Adequate Protection Collateral under the Cash Collateral Order.

---

[4] For the avoidance of doubt, sections 362(b)(17) and (b)(27) of the Bankruptcy Code apply to the Postpetition Hedging Arrangements for the benefit of the Postpetition Hedge Providers, and, accordingly, relief from the automatic stay shall not be required in order to take any actions pursuant to sections 105(a), 560, and 561 of the Bankruptcy Code between the Debtors and the Postpetition Hedge Providers.

8.      If any or all of the provisions of this Interim Order or the Cash Collateral Order are stayed, modified in a manner adverse to a counterparty to a Postpetition Hedging Arrangement or vacated, or this Interim Order otherwise terminates, such stay, modification, vacation, or termination will not affect (a) the validity of any indebtedness, obligation, or liability incurred by the Debtors to any of the counterparties before the receipt of written notice by the counterparties of the effective date of such stay, modification or vacation, (b) the validity or enforceability of the administrative claims, and the netting, termination, and other rights authorized or created hereby or pursuant to the Postpetition Hedging Arrangement or any related documents, or (c) the rights of the counterparties to exercise rights and remedies pursuant to the  Postpetition Hedging Arrangement, and each counterparty shall be entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

9.      The automatic stay provisions of section 362 and the setoff and netting provisions of section 553 of the Bankruptcy Code are hereby modified solely to the extent necessary to:

a.      permit immediate unconditional exercise and enforcement of the rights, powers and remedies, by the Postpetition Hedge Providers, the Prepetition Agent on behalf of the Postpetition Hedge Providers, and the Prepetition Agent on behalf of the Prepetition Lenders, set forth in paragraph 7(c) and (d) herein and the Postpetition Hedge Providers' rights thereunder shall not be modified, stayed, avoided, or otherwise limited by order of this Court or any court proceeding under the Bankruptcy Code, including, but not limited to, the right to collect from the Debtors amounts that may be owed to a Postpetition Hedge Provider following such termination and the right to withhold performance pursuant to the terms of any agreement governing a Postpetition Hedging Arrangements.  The Debtors waive the right and shall not seek relief, including under section 105(a) or section 549 of the Bankruptcy Code, to the extent that any such relief would in any way restrict or impair the rights of the Prepetition Agent or any Postpetition Hedge Provider described herein; and

b.      permit the Prepetition Agent, on behalf of the Postpetition Hedge Providers, but without obligation to do so, to take all actions to validate and perfect the liens and security interests granted hereunder, including by filing or recording

6

financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments in any jurisdiction. For the avoidance of doubt, whether or not the Prepetition Agent chooses to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted under this Interim Order, such liens and security interests shall be deemed valid, automatically perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination, as of the date hereof; and

c.    provide that the Prepetition Agent's, Postpetition Hedge Providers', and the Prepetition Agent's and Prepetition Lenders' rights, powers, privileges, and remedies under the agreements governing the Postpetition Hedging Arrangements, as applicable, and this Interim Order may not be modified, stayed, avoided, or otherwise limited by further order of the Court or any court proceeding under the Bankruptcy Code without the consent of such parties.

10.    Nothing in this Interim Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and all of the Debtors' rights with respect to such matters are expressly reserved.

11.    Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person or entity or (b) be deemed to convert the priority of any claims from a prepetition claim into an administrative expense claim.

12.    Nothing in this Interim Order nor the Debtors' payment of claims pursuant to this Interim Order shall be construed as or deemed to constitute (a) an agreement or admission by the Debtors as to the validity of any claim against the Debtors on any ground, (b) a grant of third party beneficiary status or bestowal of any additional rights on any third party, (c) a waiver or impairment of any rights, claims or defenses of the Debtors' rights to dispute any claim on any

7

grounds, (d) a promise by the Debtors to pay any claim, or (e) an implication or admission by the Debtors that such claim is payable pursuant to this Interim Order.

13.    The requirements of Bankruptcy Rules 6003 and 6004(a) are satisfied by the contents of the Motion.

14.    Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Interim Order is hereby waived, and the terms and conditions of this Interim Order shall be effective and enforceable immediately upon its entry.

15.    The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

16.    The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

RLF1 23877230v.1

**<u>EXHIBIT B</u>**

**Proposed Final Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| CHAPARRAL ENERGY, INC., *et al.*,[1] | Case No. 20-11947 (MFW) |
| Debtors. | (Jointly Administered) |

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM UNDER POSTPETITION HEDGING ARRANGEMENTS, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Chaparral Energy, Inc. and its subsidiaries that are debtors and debtors in possession (collectively, the "**Debtors**") in the Chapter 11 Cases for entry of an Interim Order and Final Order, pursuant to sections 105(a), 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1(m), and consistent with industry practice, requesting entry of an Interim Order and a Final Order (a) authorizing the Debtors to enter into and perform under Postpetition Hedging Arrangements with the Prepetition Lenders and their hedging affiliates, (b) authorizing the Debtors to honor, pay, or otherwise satisfy all obligations, liabilities, and indebtedness of the Debtors arising under Postpetition Hedging Arrangements as they come due in the ordinary course, (c) authorizing the Debtors to grant liens and superpriority administrative claims on account of Postpetition Hedging Arrangements, (d) authorizing the Postpetition Hedge Providers to exercise all rights and remedies solely in

---

[1]    The Debtors in these cases, along with the last four digits (or five digits, in cases in which multiple Debtors have the same last four digits) of each Debtor's federal tax identification number, are: CEI Acquisition, L.L.C. (1817); CEI Pipeline, L.L.C. (6877); Chaparral Biofuels, L.L.C. (1066); Chaparral CO2, L.L.C. (1656); Chaparral Energy, Inc. (90941); Chaparral Energy, L.L.C. (20941); Chaparral Exploration, L.L.C. (1968); Chaparral Real Estate, L.L.C. (1655); Chaparral Resources, L.L.C. (1710); Charles Energy, L.L.C. (3750); Chestnut Energy, L.L.C. (9730); Green Country Supply, Inc. (2723); Roadrunner Drilling, L.L.C. (2399); and Trabajo Energy, L.L.C. (9753).  The Debtors' address is 701 Cedar Lake Boulevard, Oklahoma City, OK 73114.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

accordance with the terms of each agreement governing such Postpetition Hedging Arrangement, (e) in the event of an event of default or termination event under the Postpetition Hedging Arrangements or after the occurrence of the Termination Date (as defined in the Cash Collateral Order (as defined below)), authorizing the Postpetition Hedge Providers to exercise all rights and remedies and rights to set off, net, and apply any payment amounts that such Postpetition Hedge Providers would otherwise be obligated to pay to any Debtor in connection with the Postpetition Hedging Arrangements against any prepetition indebtedness owed to such Postpetition Hedge Provider, and (f) granting related relief; and the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion and opportunity for a hearing on the Motion having been given to the Notice Parties, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion and the First Day Declaration; and the Court having granted interim relief on the Motion on [●], 2020 (D.I. [●]); and the Court having held, if necessary, a final hearing on the Motion (the "**Hearing**"); and the Court having found that the legal and factual bases set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and the Court having determined that the relief requested in the Motion being in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and upon all of the

2

proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Motion is GRANTED, as set forth herein.

2.    Subject to the terms of this Final Order, the Debtors are authorized, but not directed, to enter into and perform under Postpetition Hedging Arrangements with the Prepetition Lenders or their hedging affiliates and to honor, pay, or otherwise satisfy all obligations arising thereunder as they come due.

3.    Notwithstanding the foregoing, unless the Prepetition Agent otherwise consents in writing, the Debtors shall not enter into Postpetition Hedging Arrangements with counterparties who have not signed the $300,000,000 Senior Secured Exit Revolving Facility Commitment Letter dated August 15, 2020 with the Debtors, unless the Debtors have the right to terminate such Postpetition Hedging Arrangements if the Postpetition Hedging Arrangement would not be permitted under the exit facility approved by the Plan.

4.    The Debtors shall provide Stroock & Stroock & Lavan LLP and Young, Conaway, Stargatt & Taylor, LLP as counsel to the ad hoc group of holders of the 8.750% senior notes due 2023, notice before entering into any Postpetition Hedging Arrangements.

5.    Subject to the terms of this Interim Order, the Debtors are authorized, but not directed, to enter into and perform under Postpetition Hedging Arrangements; provided, however, that such Postpetition Hedging Arrangements shall not exceed 65% of the reasonably anticipated overall production from proved oil and gas properties for such calendar month.

3

6.      As security and assurance of the Debtors' obligations arising under the

Postpetition Hedging Arrangements and in exchange for counterparties to the Postpetition

Hedging Arrangements providing benefits to the Debtors in accordance with this Interim Order:

    a.      the counterparties to the Postpetition Hedging Agreements shall be granted liens and superpriority administrative claims *pari passu* in rank to the Adequate Protection Liens and Adequate Protection Claims, each as defined in the Cash Collateral Order, and in each case subject to the Carve Out and Permitted Liens (each as defined in the Cash Collateral Order[3]);

    b.      to the extent that any obligation of the Debtors is granted superpriority administrative expense status that would otherwise be senior to the administrative expense status of the Postpetition Hedging Arrangements granted hereunder (other than the Carve Out and Permitted Liens), the Postpetition Hedging Arrangements shall, without the need for any further Court order, automatically be granted superpriority administrative expense status that is *pari passu* with that of such obligation;

    c.      the Postpetition Hedge Providers may exercise any rights, powers and remedies under the Postpetition Hedging Arrangements, including, but not limited to, the right to set off, net, and apply any payment, settlement payment, termination values, termination payments, and any other amounts that such Postpetition Hedge Provider would be entitled to receive from any Debtor or otherwise be obligated to pay to any Debtor in connection with any Postpetition Hedge Arrangement solely in accordance with the terms of each agreement governing such Postpetition Hedge Arrangement; *provided* that upon the occurrence and during the continuation of an event of default or a termination event (each as defined in agreements governing the Postpetition Hedging Arrangements), any Postpetition Hedge Provider shall have the right to suspend, terminate, liquidate, withhold performance or unwind its Postpetition Hedge Arrangement, set off and net transactions and apply any payment, settlement payment, termination values, termination payments to reduce permanently any Prepetition Claim (as defined in the Cash Collateral Order) owed to the Postpetition Hedge Provider upon notice by such Postpetition Hedge Provider to the Debtors solely in accordance with the applicable Postpetition Hedge Arrangement (in which case the Prepetition Lenders shall also have the right to apply any such amounts to reduce permanently any Prepetition Claim owed to such Prepetition Lenders in acordance with the terms of the Credit Agreement (as defined in the Cash

---

[3] As used herein, "Cash Collateral Order" means the Debtors' proposed *Interim Order (A) Authorizing The Debtors To Use Cash Collateral, (B) Granting Adequate Protection, (C) Modifying The Automatic Stay, (D) Scheduling a Final Hearing, and (E) Granting Related Relief* (the "**Interim Cash Collateral Order**,") together with any order authorizing such relief on a final basis.

4

Collateral Order), which rights shall not be stayed, avoided, or otherwise limited by operation of any provision of the Bankruptcy Code;[4]

d.      upon a Termination Date (as defined in the Cash Collateral Order), the Prepetition Lenders under the Debtors' prepetition revolving credit facility may apply any payment, settlement payment, termination values, termination payments, and any other amounts that any Postpetition Hedge Provider would be obligated to pay to any Debtor under any Postpetition Hedge Arrangement to reduce any Prepetition Claim owed to such Prepetition Lenders in accordance with the terms of the Credit Agreement (as defined in the Cash Collateral Order);

e.      the reorganized Debtors shall assume the agreements governing the Postpetition Hedging Arrangements under the Plan; and

f.      for the avoidance of doubt, the Debtors' rights under the Postpetition Hedging Arrangements constitute (i) solely for the purposes of exercising remedies under the prepetition revolving credit documents, Prepetition Collateral, and the Prepetition Agent is hereby granted, effective as of the date hereof, liens and security interests in the Postpetition Hedging Arrangements (such liens and security interests being automatically perfected without the necessity of execution by the Debtors (or recordation or other filing) of, including without limitation, security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control), and (ii) Adequate Protection Collateral under the Cash Collateral Order.

7.      If any or all of the provisions of this Final Order or the Cash Collateral Order are stayed, modified in a manner adverse to a counterparty to a Postpetition Hedging Arrangement or vacated, or this Interim Order otherwise terminates, such stay, modification, vacation, or termination will not affect (a) the validity of any indebtedness, obligation, or liability incurred by the Debtors to any of the counterparties before the receipt of written notice by the counterparties of the effective date of such stay, modification or vacation, (b) the validity or enforceability of the administrative claims, and the netting, termination, and other rights authorized or created hereby or pursuant to the Postpetition Hedging Arrangement or any

---

[4] For the avoidance of doubt, sections 362(b)(17) and (b)(27) of the Bankruptcy Code apply to the Postpetition Hedging Arrangements for the benefit of the Postpetition Hedge Providers, and, accordingly, relief from the automatic stay shall not be required in order to take any actions pursuant to sections 105(a), 560, and 561 of the Bankruptcy Code between the Debtors and the Postpetition Hedge Providers.

RLF1 23877230v.1

related documents, or (c) the rights of the counterparties to exercise rights and remedies pursuant to the Postpetition Hedging Arrangement, and each counterparty shall be entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

8.     The automatic stay provisions of section 362 and the setoff and netting provisions of section 553 of the Bankruptcy Code are hereby modified solely to the extent necessary to:

a.     permit immediate unconditional exercise and enforcement of the rights, powers and remedies, by the Postpetition Hedge Providers, the Prepetition Agent on behalf of the Postpetition Hedge Providers, and the Prepetition Agent on behalf of the Prepetition Lenders, set forth in paragraph 7(c) and (d) herein and the Postpetition Hedge Providers' rights thereunder shall not be modified, stayed, avoided, or otherwise limited by order of this Court or any court proceeding under the Bankruptcy Code, including, but not limited to, the right to collect from the Debtors amounts that may be owed to a Postpetition Hedge Provider following such termination and the right to withhold performance pursuant to the terms of any agreement governing a Postpetition Hedging Arrangements. The Debtors waive the right and shall not seek relief, including under section 105(a) or section 549 of the Bankruptcy Code, to the extent that any such relief would in any way restrict or impair the rights of the Prepetition Agent or any Postpetition Hedge Provider described herein; and

b.     permit the Prepetition Agent, on behalf of the Postpetition Hedge Providers, but without obligation to do so, to take all actions to validate and perfect the liens and security interests granted hereunder, including by filing or recording financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments in any jurisdiction. For the avoidance of doubt, whether or not the Prepetition Agent chooses to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted under this Interim Order, such liens and security interests shall be deemed valid, automatically perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination, as of the date hereof; and

c.     provide that the Prepetition Agent's, Postpetition Hedge Providers', and the Prepetition Agent's and Prepetition Lenders' rights, powers, privileges, and remedies under the agreements governing the Postpetition Hedging Arrangements, as applicable, and this Interim Order may not be modified, stayed, avoided, or otherwise limited by further order of the Court or any court proceeding under the Bankruptcy Code without the consent of such parties.

6

9.     Nothing in this Final Order or any action taken by the Debtors in furtherance of the implementation hereof shall be deemed to constitute an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and all of the Debtors' rights with respect to such matters are expressly reserved.

10.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall (a) create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person or entity or (b) be deemed to convert the priority of any claims from a prepetition claim into an administrative expense claim.

11.     Nothing in this Final Order nor the Debtors' payment of claims pursuant to this Final Order shall be construed as or deemed to constitute (a) an agreement or admission by the Debtors as to the validity of any claim against the Debtors on any ground, (b) a grant of third party beneficiary status or bestowal of any additional rights on any third party, (c) a waiver or impairment of any rights, claims or defenses of the Debtors' rights to dispute any claim on any grounds, (d) a promise by the Debtors to pay any claim, or (e) an implication or admission by the Debtors that such claim is payable pursuant to this Final Order.

12.     The requirements of Bankruptcy Rule 6004(a) are satisfied by the contents of the Motion.

13.     Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Final Order is hereby waived, and the terms and conditions of this Final Order shall be effective and enforceable immediately upon its entry.

14.     The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Final Order.

7

15.     Notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion or the entry of this Final Order shall be required.

16.     The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

8