## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CHAPARRAL ENERGY, INC., *et al.*,[1] | ) | Case No. 20-11947 (MFW) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Obj. Deadline: September 8, 2020 at 4:00 p.m. (ET)** |
|  | ) | **Hearing Date: September 14, 2020 at 2:00 p.m. (ET)** |

## APPLICATION OF DEBTORS FOR AUTHORITY TO (I) EMPLOY AND RETAIN ROTHSCHILD & CO US INC. AND INTREPID PARTNERS, LLC AS INVESTMENT BANKERS FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE AND (II) WAIVE CERTAIN INFORMATION DISCLOSURE REQUIREMENTS

The above-captioned debtors and debtors-in-possession (the "Debtors") hereby submit this *Application of Debtors for Authority to (i) Employ and Retain Rothschild & Co US Inc. and Intrepid Partners, LLC as Investment Bankers for the Debtors* Nunc Pro Tunc *to the Petition Date and (ii) Waive Certain Information Disclosure Requirements* (this "Application"). This Application is supported by the (A) *Declaration of Kevin Glodowski in Support of the Application of Debtors for Authority To (i) Employ and Retain Rothschild & Co US Inc. and Intrepid Partners, LLC as Investment Bankers for the Debtors* Nunc Pro Tunc *to the Petition Date and (ii) Waive Certain Information Disclosure Requirements*, filed contemporaneously herewith and attached hereto as **Exhibit A** (the "Glodowski Declaration"), (B) *Declaration of*

---

[1] The Debtors in these cases, along with the last four digits (or five digits, in cases in which multiple Debtors have the same last four digits) of each Debtor's federal tax identification number, are: CEI Acquisition, L.L.C. (1817); CEI Pipeline, L.L.C. (6877); Chaparral Biofuels, L.L.C. (1066); Chaparral CO2, L.L.C. (1656); Chaparral Energy, Inc. (90941); Chaparral Energy, L.L.C. (20941); Chaparral Exploration, L.L.C. (1968); Chaparral Real Estate, L.L.C. (1655); Chaparral Resources, L.L.C. (1710); Charles Energy, L.L.C. (3750); Chestnut Energy, L.L.C. (9730); Green Country Supply, Inc. (2723); Roadrunner Drilling, L.L.C. (2399); and Trabajo Energy, L.L.C. (9753). The Debtors' address is 701 Cedar Lake Boulevard, Oklahoma City, OK 73114.

*David R. Gehring in Support of the Application of Debtors for Authority To (i) Employ and*

*Retain Rothschild & Co US Inc. and Intrepid Partners, LLC as Investment Bankers for the*

*Debtors* Nunc Pro Tunc *to the Petition Date and (ii) Waive Certain Information Disclosure*

*Requirements*, filed contemporaneously herewith and attached hereto as **Exhibit B** (the "Gehring

Declaration"), and (C) the entire record of the chapter 11 cases.  In further support of this

Application, the Debtors respectfully state as follows:

**Relief Requested**

1.      By this Application, and pursuant to sections 327(a) and 328(a) of title 11 of the

United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-2(h) of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules"), the Debtors seek entry of an order (the "Proposed

Order") (a) authorizing the Debtors to employ and retain Rothschild & Co US Inc. ("Rothschild

& Co") and Intrepid Partners, LLC ("Intrepid," and, together with Rothschild & Co, collectively,

the "Investment Bankers") as their investment bankers *nunc pro tunc* to the Petition Date (as

defined below), in accordance with the terms and conditions set forth in that certain engagement

letter, dated as of April 7, 2020 ("Engagement Letter")[2], a copy of which is attached as Exhibit 1

to the Proposed Order, (b) approving the terms of the Investment Bankers' employment and

retention, including the fee and expense structure and the indemnification, contribution,

reimbursement, and related provisions set forth in the Engagement Letter, (c) waiving certain

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the
         Engagement Letter.

2

informational requirements of Local Rule 2016-2, and (d) granting such other and further relief as is just and proper.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

3.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4.      Venue of the chapter 11 cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

5.      On August 16, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      No request has been made for the appointment of a trustee or examiner, and no official committee has been appointed in the chapter 11 cases.

7.      Additional information about the Debtors' businesses and affairs, capital structure and prepetition indebtedness, and the events leading up to the Petition Date, can be found in the

3

*Declaration of Charles Duginski in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings* (the "Duginski Declaration"), which is incorporated herein by reference.

8.    The chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Under Fed. R. Bankr. P. 1015 and Del. Bankr. L.R. 1015-1 Authorizing Joint Administration of Chapter 11 Cases* [Doc No. 74] entered by the Court on August 18, 2020 in each of the chapter 11 cases.

## Qualifications of the Investment Bankers

9.    The Debtors require qualified and experienced investment bankers to assist them in pursuing the transaction(s) that are crucial to the success of the chapter 11 cases.  The Debtors seek to retain Rothschild & Co and Intrepid as their investment bankers because, among other things, Rothschild & Co has extensive experience and an excellent reputation in providing high quality investment-banking and financial-restructuring services to debtors, their boards of directors, and various secured and unsecured classes of creditors in bankruptcy reorganizations and other restructurings, and Intrepid is a highly regarded boutique investment banking firm with extensive experience specific to the oil and gas industry.  As such, each Investment Banker brings a distinct and complementary perspective and skill set to the Debtors' chapter 11 cases that are necessary to maximize recovery to all stakeholders.  Recognizing that these complementary skillsets would be valuable to clients in the oil and gas industry facing financial distress, Rothschild & Co and Intrepid entered into a strategic alliance in 2018 to provide investment banking and financial advisory services to clients in the oil and gas industry, such as the Debtors, that would need to utilize both skillsets offered by Rothschild & Co and Intrepid (the "Strategic Alliance").  In addition, as described more fully in this Application, the Glodowski Declaration, and the Gehring Declaration, the Investment Bankers have a substantial

4

understanding of the Debtors' business from having jointly advised the Debtors on strategic alternatives since the end of 2019, and in Intrepid's case, having advised the Debtors on M&A focused strategic alternatives since April 2019.

### Rothschild & Co's Qualifications

10.     Rothschild & Co is a member of one of the world's leading independent investment banking groups, with more than fifty offices in more than forty countries.  Rothschild & Co has expertise in domestic and cross-border restructurings, mergers and acquisitions, new capital raises, and other financial-advisory and investment-banking services and particular experience in providing high-quality financial advice to financially troubled companies. Rothschild & Co is an experienced bankruptcy and restructuring advisor to debtors in a variety of industries.  Rothschild & Co is highly qualified to advise on strategic alternatives and its professionals have extensive experience in deals involving complex financial and operating restructurings.  Moreover, Rothschild & Co is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation.

11.     Rothschild & Co and its professionals have extensive experience working with financially troubled companies within a variety of industries in complex financial restructurings, both out of court and in chapter 11 cases.  Rothschild & Co's business reorganization professionals have served as financial and strategic advisors to debtors in numerous cases, including, among others: *In re Cenveo, Inc.*, No. 18-22178 (RDD) (Bankr. S.D.N.Y. Mar. 8, 2018); *In re M & G USA Corp.*, No. 17-12307 (BLS) (Bankr. D. Del. Dec. 1, 2017); *In re Genon Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.R. Tex. July 13, 2017); *In re rue21, Inc.*, No. 17-22045 (GLT) (Bankr. W.D. Pa. June 28, 2017); *In re Answers Holdings, Inc.*, No. 17 10496 (SMB) (Bankr. S.D.N.Y. Apr. 7, 2017); *In re Ultra Petrol. Corp.*, No. 16-32202 (MI) (Bankr.

5

S.D. Tex. June 20, 2016); *In re SunEdison, Inc.*, No. 16-10992 (SMB) (Bankr. S.D.N.Y. May 20, 2016); *In re Alpha Nat. Res., Inc.*, No. 15-33896 (KRH) (Bankr. E.D. Va. Aug. 4, 2015); *In re Allen Sys. Grp., Inc.*, No. 15-10332 (KJC) (Bankr. D. Del. Mar. 19, 2015); *In re GT Advanced Techs., Inc.*, No. 14-11916 (HJB) (Bankr. D.N.H. Oct. 30, 2014); *In re NII Holdings, Inc.*, No. 14-12611 (SCC) (Bankr. S.D.N.Y. Oct. 22, 2014); *In re Autoseis, Inc. (Glob. Geophysical)*, No. 14-20130 (RSS) (Bankr. S.D. Tex. Apr. 25, 2014); *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D.Del. Dec. 18, 2013); *In re Allied Sys. Holdings, Inc.*, Case No. 12-11564 (CSS) (Bankr. D. Del. Oct. 16, 2012); *In re Nebraska Book Company, Inc.*, No. 11-12005 (PJW) (Bankr. D. Del. Aug 10, 2011); *In re AMR Corp.*, Case No. 11-15463 (SHL) (Bankr. S.D.N.Y. Mar. 2, 2012); *In re Harry & David Holdings, Inc.*, No. 11-10884 (MFW) (Bankr. D. Del. Apr. 27, 2011); *In re Neenah Enters. Inc.*, No. 10-10360 (MFW) (Bankr. D. Del. Mar. 8, 2010); *In re Trident Res. Corp.*, No. 09-13150 (MFW) (Bankr. D. Del. Jan. 28, 2010); *In re Milacron Inc.*, Case No. 09- 11235 (JVA) (Bankr. S.D. Ohio Apr. 6, 2009); *In re Recycled Paper Greetings Inc.*, No. 09-10002 (KG) (Bankr. D. Del. Jan. 23, 2009); *In re VeraSun Energy Corp.*, No. 08-12606 (BLS) (Bankr. D. Del. Jan. 6, 2009); *In re Nw. Airlines Corp.*, No. 05-17930 (ALG) (Bankr. S.D.N.Y. Sept. 14, 2005); *In re Solutia Inc.*, No. 03-17949 (PCB) (Bankr. S.D.N.Y. May 14, 2004); *In re WestPoint Stevens, Inc.*, No. 03-13532 (RDD) (Bankr. S.D.N.Y. June 3, 2003); *In re UAL Corp.*, No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 9, 2002).[3] In addition to these cases, Rothschild & Co has advised creditors and significant stakeholders in a large number of bankruptcies and distressed situations.

---

[3]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to the Application.  Copies of these orders are available upon request to the Debtors' proposed counsel.

12. In light of the size and complexity of the Debtors' chapter 11 cases, the resources, capabilities, and experience of Rothschild & Co in advising the Debtors as an investment banker are crucial to the success of the Debtors' chapter 11 strategies. An experienced investment banker, such as Rothschild & Co, fulfills a critical need that complements the services offered by the Debtors' other professionals, including Intrepid. For these reasons, the Debtors require the services of a capable and experienced investment banker with restructuring experience, such as Rothschild & Co.

### Intrepid's Qualifications

13. Intrepid has extensive experience and an excellent reputation in providing high-quality financial-advisory and investment-banking services to companies, investors, and other participants in the energy industry. Intrepid Financial Partners, L.L.C., the parent company of Intrepid and its affiliates, is an independent, energy-focused merchant bank with offices in New York City and Houston. Intrepid is a leading provider of financial-advisory services to the energy industry and has a specific focus on the North American oil and gas sector. Intrepid has broad and deep expertise providing oil and gas clients specialized advice on matters including, but not limited to, restructurings, mergers, acquisitions, capital structure advisory, and capital raises.

14. As set forth in the Gehring Declaration, Intrepid's professionals have extensive experience and an excellent reputation in providing high-quality investment banking services to companies in the oil and gas industry. Intrepid has served as financial and strategic advisor in reorganization cases, including: *In re Fieldwood Energy, LLC*, No. 20-33948 (MI) (Bankr. S.D. Tex. Aug. 3, 2020); *In re Rosehill Resources, Inc.*, No. 20-33695 (Bankr. S.D.Tex. July 26, 2020); *In re EXCO Resources, Inc.*, No. 18-30155 (MI) (Bankr. S.D. Tex. Apr. 19, 2018); *In re*

7

*Emerald Oil, Inc.*, No. 16-10704 (KG) (Bankr. D. Del. Apr. 26, 2016).  Intrepid's professionals have also provided investment banking services in other chapter 11 cases and out-of-court restructurings and recapitalizations, including among others: EV Energy Partners, LP, Goodrich Petroleum Corporation, Halcon Resources Corporation, Knight Oil Tools, Linn Energy, LLC, Quicksilver Resources Inc., and Stone Energy Corporation.  In addition, the senior professionals of Intrepid have advised oil and gas companies like the Debtors on dozens of M&A, strategic advisory and financing transactions, including among others: Buckeye Partners, L.P., Contango Oil & Gas Company, Elite Compression Services, LLC, Energy XXI Gulf Coast, Inc., EnVen Energy Corporation, Extraction Oil & Gas, Inc., Harvest Oil & Gas Corp, NuStar Energy LP, Sanchez Energy Corporation, and Vitesse Energy, LLC.

15.     In light of the size and complexity of the Debtors' chapter 11 cases, the resources, capabilities, and experience of Intrepid in advising the Debtors as an investment banker are crucial to the success of the Debtors' chapter 11 strategies.  Intrepid's specialized expertise in the oil and gas industry fulfills a critical need that complements the services offered by Rothschild & Co (as well as the Debtors' other professionals).

**<u>Services Provided to the Debtors Prior to the Petition Date</u>**

16.     Prior to the filing of the chapter 11 cases, the Debtors retained the Investment Bankers to serve as their investment bankers pursuant to the Engagement Letter, which engagement was principally for the purpose of assisting the Debtors' senior management in the formulation, analysis, and implementation of various strategic or capital structure alternatives. More specifically, Intrepid was first engaged by the Debtors in April 2019 to advise on M&A alternatives. Thereafter, in December 2019, Rothschild & Co and Intrepid were jointly engaged to advise the Debtors on balance sheet improvement and liability management alternatives and

8

entered into the Engagement Letter on April 7, 2020, upon which time a broader evaluation of balance sheet alternatives was undertaken.

17.      In providing prepetition services to the Debtors in connection with these matters, the Investment Bankers' professionals have worked closely with the Debtors' management and other professionals and have become well-acquainted with the Debtors' operations, debt structure, creditors, business and operations, and related matters, including (a) working cooperatively with the Debtors' other professionals to explore various strategic and financial restructuring alternatives, (b) reviewing the Debtors' business plan and operating assumptions, (c) reviewing the Debtors' debt and capital structure, and (d) actively engaging in negotiations with key financial creditors. Accordingly, the Investment Bankers have developed significant relevant experience and expertise regarding the Debtors' businesses that will assist them in providing effective and efficient services in the chapter 11 cases.

18.      In providing such prepetition services to the Debtors, the Investment Bankers have worked closely with the Debtors' senior management and their other advisors, on the one hand, and with the professional advisors of other major stakeholders, on the other hand, that will be involved in the chapter 11 cases.  Accordingly, the Investment Bankers have developed relevant experience and expertise regarding the Debtors that (a) make the Investment Bankers a natural selection as the Debtors' investment bankers and (b) will assist the Investment Bankers in providing effective and efficient services in the chapter 11 cases.

19.      Should the Court approve the Debtors' retention of the Investment Bankers, the Investment Bankers will continue, without interruption, to perform the services for the Debtors as described herein.  On the other hand, if the Debtors were required to retain an investment bank other than the Investment Bankers in connection with the chapter 11 cases, the Debtors, their

9

estates, and all parties in interest would be unduly prejudiced by the time and expenses necessary to familiarize another professional with the intricacies of the Debtors and their business operations.

20.    Accordingly, the Debtors submit that the retention of the Investment Bankers on the terms and conditions set forth herein (a) is necessary, appropriate, and in the best interests of the Debtors' estates, creditors, and all other parties in interest and (b) should be granted in all respects.

## Services to be Provided by the Investment Bankers

21.    Subject to further order of the Court, and as set forth more fully in this Application and the Engagement Letter, which has been negotiated at arm's length and in good faith by the Debtors and the Investment Bankers,  the Investment Bankers have provided, and will continue to provide, a broad range of necessary investment banking services to the Debtors, in each case as the Debtors shall request, and as the Investment Bankers and the Debtors shall deem appropriate and feasible, in order to advise the Debtors in the course of the chapter 11 cases in consideration for the compensation contemplated therein.  The Engagement Letter sets forth the following services to be provided by the Investment Bankers:[4]

(a)    identify and/or initiate potential Transactions;

(b)    review and analyze the Debtors' assets and the operating and financial strategies of the Debtors;

---

[4]    The summary of the Engagement Letter in this Application is qualified in its entirety by reference to the provisions of the Engagement Letter.  To the extent that there is any discrepancy between the summary contained herein and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control.

10

(c)    review and analyze the business plans and financial projections prepared by the Debtors including, but not limited to, testing assumptions and comparing those assumptions to historical Debtor and industry trends;

(d)    evaluate the Debtors' debt capacity in light of their projected cash flows and assist in the determination of an appropriate capital structure for the Debtors;

(e)    assist the Debtors and their other professionals in reviewing the terms of any proposed Transaction, in responding thereto and, if directed, in evaluating alternative proposals for a Transaction;

(f)    determine a range of values for the Debtors and any securities that the Debtors offer or propose to offer in connection with a Transaction;

(g)    advise the Debtors on the risks and benefits of considering a Transaction with respect to the Debtors' intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Debtors;

(h)    review and analyze any proposals the Debtors receive from third parties in connection with a Transaction, including, without limitation, any proposals for debtor-in-possession financing, as appropriate;

(i)    assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Debtors and/or their respective representatives in connection with a Transaction;

(j)    advise the Debtors with respect to, and attend, meetings of the Debtors' Board of Directors, creditor groups, official constituencies and other interested parties, as necessary;

11

(k)    if requested by the Debtors, participate in hearings before the Court and provide relevant testimony with respect to the matters described in the Engagement Letter and issues arising in connection with any proposed Plan;

(l)    assist the Debtors in raising new debt or equity, including, but not limited to, debtor-in-possession and/or exit financing in connection with the chapter 11 cases, including developing marketing materials, creating and maintaining a data room and contact log, initiating contact with potential capital providers and running the process for a New Capital Raise; and

(m)    render such other financial advisory and investment banking services as may be agreed upon by the Investment Bankers and the Debtors.

22.    To the extent the Debtors request the Investment Bankers to perform additional services not contemplated by the Engagement Letter, such services and the fees for such services will be mutually agreed upon by the Investment Bankers and the Debtors, in writing, in advance and subject to Court approval.

23.    The services that the Investment Bankers will provide to the Debtors are necessary to assist the Debtors with their restructuring efforts and to maximize the value of their estates for the benefit of the Debtors' stakeholders.  The resources, capabilities, and experience of the Investment Bankers in advising the Debtors are important to the Debtors' chapter 11 efforts.  Highly qualified investment bankers, such as Rothschild & Co and Intrepid, fulfill a critical need that complements the services offered by the Debtors' other restructuring professionals.

24.    The Debtors believe that the Investment Bankers' services will not duplicate the services that other professionals will be providing to the Debtors in connection with these

12

chapter 11 cases. Each of Rothschild & Co and Intrepid will carry out unique functions and will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

25.     Moreover, consistent with the Investment Bankers' Strategic Alliance, the Investment Bankers will work together to provide the best and most efficient services to the Debtors by offering distinct and complementary expertise.  As described above, Rothschild & Co has significant experience with both in- and out-of-court restructuring transactions, while Intrepid has extensive knowledge and capabilities specific to the oil and gas industry. Accordingly, the Debtors' proposed retention of both Rothschild & Co and Intrepid will enable the Debtors to receive vital, coordinated services from investment banking firms that are leaders in their respective fields under a single fee structure.

### Professional Compensation

26.     In consideration of the services to be provided by the Investment Bankers, and as more fully described in the Engagement Letter, subject to the Court's approval, the Debtors have agreed to compensate the Investment Bankers in accordance with the terms and conditions and at the times set forth in the Engagement Letter, which provides in relevant part for the following compensation structure (the "Fee and Expense Structure").  Rothschild & Co and Intrepid have agreed that all fees payable to the Investment Bankers approved by the Court and paid pursuant to the Engagement Letter shall be paid 50.0% to Rothschild & Co and 50.0% to Intrepid. The Fee and Expense Structure contemplates that the Investment bankers will be jointly entitled to the following fees:

(a)     An advisory fee (the "Monthly Fee") of $150,000.00 per month.

13

(b)    A one-time fee (the "Completion Fee") of $4,000,000.00, payable upon the earlier of (i) the confirmation and effectiveness of a Plan and (ii) the closing of a Transaction.

(c)    A new capital fee (the "New Capital Fee") equal to (i) 1% of the face amount of any senior secured debt raised including, without limitation, any debtor-in-possession financing raised; (ii) 3% of the face amount of any junior secured or senior or subordinated unsecured debt raised and (iii) 5% of any equity capital, capital convertible into equity or hybrid capital raised, including, without limitation, equity underlying any warrants, purchase rights or similar contingent equity securities (each, a "New Capital Raise"), in each case raised in connection with, or prior to, a Transaction for which the Completion Fee is earned.

(d)    Pursuant to the Engagement Letter, the Investment Bankers shall credit against the Completion Fee: (a) 50% of the Monthly Fees paid in excess of $500,000.00 (the "Monthly Fee Credit") and (b) 50% of any New Capital Fees paid (the "New Capital Fee Credit"); *provided* that the sum of any New Capital Fee Credit and the Monthly Fee Credit shall not exceed the Completion Fee.

27.    If the Investment Bankers provide services to the Debtors for which a fee is not provided in the Engagement Letter, such services shall, except insofar as they are the subject of a separate agreement, be treated as falling within the scope of the Engagement Letter, and the Debtors and the Investment Bankers will agree upon a fee for such services based upon good faith negotiations and subject to Court approval.

28.    The Debtors understand that the Investment Bankers intend to apply for compensation for professional services rendered and reimbursement of reasonable and

documented out-of-pocket expenses incurred in connection with the chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court, including any order granting this Application (to the extent compliance is not waived); *provided* that the Debtors seek to retain the Investment Bankers pursuant to section 328(a) of the Bankruptcy Code and request that all compensation and expenses shall not be subject to any other standard, including section 330 of the Bankruptcy Code.

29.     The Fee and Expense Structure is the result of arm's-length negotiations between and among the Debtors and the Investment Bankers in which there was substantial dialogue and compromise.  The Debtors ultimately agreed to the Fee and Expense Structure because they require the services that the Investment Bankers will provide and the Debtors believe that the compensation under the Engagement Letter on an aggregate basis is comparable to compensation generally charged by investment bankers of similar stature to Rothschild & Co and Intrepid for comparable engagements, both in and out of bankruptcy proceedings.  Further, the Fee and Expense Structure reflects a balance between a fixed, monthly fee and a contingency amount, tied to the consummation and closing of the transactions and services contemplated by the Debtors and the Investment Bankers in the Engagement Letter.  Moreover, the Fee and Expense Structure is consistent with, and typical of, arrangements entered into by the Investment Bankers and other investment banks in connection with the rendering of comparable services to clients such as the Debtors.

30.     To induce the Investment Bankers to represent the Debtors, the Fee and Expense Structure was negotiated to (a) reflect the difficulty of the extensive assignments the Investment

Bankers have undertaken and expect to undertake and (b) account for the potential for an unfavorable outcome resulting from factors outside of the Investment Bankers' control.

31.    The Debtors and the Investment Bankers negotiated the Fee and Expense Structure to function as an interrelated, integrated unit, in correspondence with the Investment Bankers' services, which the Investment Bankers render not in parts, but as a whole.  It would be contrary to the intention of the Investment Bankers and the Debtors for any isolated component of the Fee and Expense Structure to be treated as sufficient consideration for any isolated portion of the Investment Bankers' services.  Instead, the Debtors and the Investment Bankers intend that the Investment Bankers services be considered as a whole that is to be compensated by the Fee and Expense Structure in its entirety.

32.    The Investment Bankers' knowledge of the Debtors' operations and their restructuring expertise, as well as their capital markets knowledge, financing ability, and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of the Investment Bankers' engagement, were important factors in determining the Fee and Expense Structure.  Indeed, the ultimate benefit that the Debtors derive from the services provided by the Investment Bankers cannot be measured merely by reference to the number of hours expended by the Investment Bankers' professionals.

33.    The terms and the conditions of the Engagement Letter were negotiated between the Debtors and the Investment Bankers at arm's length and they reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.  The fees have been agreed upon by the parties in anticipation of a substantial commitment of professional time and effort that will be required of the Investment Bankers and their professionals, in light of the fact that such commitment may foreclose other opportunities for the Investment Bankers and

with the understanding that the actual time and commitment required of the Investment Bankers and their professionals to perform services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

34.    In light of the foregoing, and given the numerous issues that the Investment Bankers may be required to address in the performance of their services under the Engagement Letter, the Investment Bankers' commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for the Investment Bankers' services for engagements of this nature both in the in and out of court contexts, the Debtors believe the Fee and Expense Structure is reasonable and should be approved under section 328(a) of the Bankruptcy Code.

35.    Accordingly, the Debtors have determined, in the exercise of their sound business judgment, that the Fee and Expense structure set forth in the Engagement Letter (a) appropriately reflects the nature of the services provided by the Investment Bankers and contains reasonable terms and conditions of employment and (b) should be approved.

### Payments to the Investment Bankers Prior to the Petition Date

36.    According to the Debtors' books and records, the Debtors paid Rothschild & Co fee payments totaling $435,000.00 and expense reimbursement payments totaling $24,009.32 (which includes a $20,000.00 retainer for estimated prepetition expenses of Rothschild & Co and Intrepid not yet billed) during the 90 days immediately preceding the Petition Date.  Rothschild & Co received no other payments from the Debtors during the 90 days immediately preceding the Petition Date.

37.    Within one year prior to the Petition Date, the Debtors paid Rothschild & Co $622,500.00 in fees and $24,479.36 in expense reimbursements (which includes a $20,000.00

RLF1 23912568v.1

retainer for estimated prepetition expenses of Rothschild & Co and Intrepid not yet billed) for services rendered.

38.     As of the Petition Date, Rothschild & Co did not hold a prepetition claim against the Debtors for services rendered.

39.     According to the Debtors' books and records, the Debtors paid Intrepid fee payments totaling $300,000.00 and expense reimbursement payments totaling $406.07 during the 90 days immediately preceding the Petition Date.  Intrepid received no other payments from the Debtors during the 90 days immediately preceding the Petition Date.

40.     Within one year prior to the Petition Date, the Debtors paid Intrepid $622,500.00 in fees and $8,115.04  in expense reimbursements for services rendered.

41.     As of the Petition Date, Intrepid did not hold a prepetition claim against the Debtors for services rendered.

42.     As set forth in the Glodowski Declaration and the Gehring Declaration, the Investment Bankers have not shared or agreed to share any of their compensation from the Debtors with any other person, other than the respective employees of each of the Investment Bankers, as permitted by section 504 of the Bankruptcy Code.

## **Indemnification**

43.     The Debtors have agreed to indemnify, exculpate and hold harmless the Investment Bankers and each Indemnified Person (as defined in the Engagement Letter) from and against certain losses arising out of their engagement by the Debtors in connection with the chapter 11 cases, other than claims resulting from the willful misconduct, gross negligence, or fraud of the Investment Bankers, pursuant to the indemnification provisions set forth in the Engagement Letter and Exhibit A to the Engagement Letter (the "Indemnification Provisions").

18

44.    The Indemnification Provisions were negotiated by the Debtors and the Investment Bankers at arm's length and in good faith.  The terms and conditions of the Engagement Letter were negotiated by the Debtors and the Investment Bankers at arm's length and in good faith.  The Debtors respectfully submit that the indemnification, contribution, exculpation, reimbursement, and other provisions contained in Exhibit A to the Engagement Letter, viewed in conjunction with the other terms of the Investment Bankers' proposed retention, are reasonable and in the best interests of the Debtors and their estates and creditors in light of the fact that the Debtors require the Investment Bankers' services to successfully reorganize.

45.    The Debtors submit that such indemnification is standard for investment banking engagements, both in and out of court, and that the provision of such indemnification by the Debtors, as modified by the Proposed Order, is fair and reasonable considering the Investment Bankers' qualifications and the expectations of other investment banking firms in connection with engagements of this scope and size. The terms of the Indemnification Provisions, as modified in the Proposed Order, are similar to indemnification terms that have been previously approved by the Court and other bankruptcy courts in other large chapter 11 cases.  *See, e.g.*, *In re Sheridan Holding Company I, LLC*, No. 21-31884 (Bankr. S.D. Tex. Mar. 24, 2020); *In re GCX Limited*, Case No. 19-12031 (CSS) (Bankr. D. Del. Nov. 25, 2019); *In re Forever 21, Inc.*, Case No. 19-12122 (KG) (Bankr. D. Del. Nov. 4, 2019); *In re Southcross Energy Partners, L.P.*, Case No. 19 10702 (Bankr. D. Del. May 5, 2019).  Accordingly, as part of this Application, the Debtors request that the Court approve the indemnification provisions set forth in the Engagement Letter, as modified by the proposed Order attached to this Application.

19

**Record Keeping Requirements**

46.     The Investment Bankers will apply for compensation and reimbursement of expenses in compliance with section 328 of the Bankruptcy Code, the applicable provisions of the Bankruptcy Rules, the Local Rules, the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective November 1, 2013* (the "UST Guidelines"), and any other applicable procedures or orders of the Court.  The Investment Bankers' fee applications for allowance of their compensation and expenses will be paid by the Debtors as authorized by the Court.

47.     Bankruptcy Rule 2016 and Local Rule 2016-2 require retained professionals to submit applications for payment of compensation in chapter 11 cases.  Local Rule 2016-2(d) also requires retained professionals to submit detailed time entries that set forth, among other things, a detailed description of each activity performed, the amount of time spent on the activity (in tenth of an hour increments), the subject matter of the activity, and the parties involved with the activity at issue.  Local Rule 2016-2(h), however, allows a retained professional to request a waiver of these requirements for cause.

48.     It is not the general practice of financial advisory and investment banking firms, including the Investment Bankers, to keep detailed time records similar to those customarily kept by attorneys.  Because the Investment Bankers do not ordinarily maintain contemporaneous time records in one-tenth hour (0.10) increments or provide or conform to a schedule of hourly rates for its professionals, the Debtors requests that the Investment Bankers should, pursuant to Local Rule 2016-2(h), be excused from compliance with such requirements and should only be required to maintain time records in half-hour (0.50) increments setting forth, in a summary

20

format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.

49.     The Investment Bankers will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.  The Investment Bankers' applications for compensation and expenses will be paid by the Debtors, pursuant to the terms of the Engagement Letter, in accordance with the procedures established by the Court.

**<u>Disinterestedness</u>**

50.     To the best of the Debtors' knowledge, information, and belief as of the date hereof, each Investment Banker (a) is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code and as required under section 327(a) of the Bankruptcy Code and, as set forth in further detail in the Glodowski Declaration and the Gehring Declaration, (b) does not hold or represent an interest materially adverse to Debtors' estates, their creditors, and shareholders for the matters for which the Investment Bankers are to be employed, and (c) has no connection to the Debtors, their creditors, shareholders, or related parties, except as disclosed in the Glodowski Declaration and the Gehring Declaration and <u>Schedule 2</u> attached thereto.

51.     As set forth in further detail in the Glodowski Declaration and the Gehring Declaration, the Investment Bankers have certain connections with creditors, equity security holders and other parties in interest in these chapter 11 cases.  All of these matters, however, are unrelated to these chapter 11 cases.  The Debtors and the Investment Bankers do not believe that any of these matters represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these chapter 11 cases.

21

52.     The Debtors' knowledge, information, and belief regarding the Investment Bankers' disinterestedness as set forth in this Application are based on, and made in reliance upon, the Glodowski Declaration and the Gehring Declaration.  To the extent that either Investment Banker discovers any additional facts bearing in a material respect on its disinterestedness during the period of such Investment Banker's retention in connection with the chapter 11 cases, such Investment Banker will file a supplement with the Court, as applicable.

53.     Each Investment Banker has informed the Debtors that it will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, Rothschild & Co or Intrepid, as applicable, will promptly inform the Court as required by Bankruptcy Rule 2014(a)

### Basis for Relief

### The Debtors Should Be Permitted To Employ and Retain the Investment Bankers on the Terms of the Engagement Letter Pursuant to Sections 327 and 328 of the Bankruptcy Code

54.     The Debtors seek approval of the Investment Bankers' retention and compensation structure pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code provides, in relevant part, as follows:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

55.     Section 328(a) of the Bankruptcy Code provides, in pertinent part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a

22

retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."

11 U.S.C. § 328(a).  Thus, section 328(a) of the Bankruptcy Code permits the compensation of

professionals, including investment banking firms, on more flexible terms that reflect the nature

of their services and market conditions.  As the United States Court of Appeals for the Fifth

Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l*

*Gypsum Co.)*:

> Prior to 1978 the most able professionals were often unwilling to
> work for bankruptcy estates where their compensation would be
> subject to the uncertainties of what a judge thought the work was
> worth after it had been done.  That uncertainty continues under the
> present § 330 of the Bankruptcy Code, which provides that the
> court award to professional consultants "reasonable compensation"
> based on relevant factors of time and comparable costs, etc.  Under
> present § 328 the professional may avoid that uncertainty by
> obtaining court approval of the compensation agreed to with the
> trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).

56.     As discussed above and as set forth in the Glodowski Declaration and the Gehring

Declaration, each Investment Banker satisfies the disinterestedness standard in section 327(a) of

the Bankruptcy Code.  Additionally, given the numerous issues that the Investment Bankers may

be required to address in the performance of the services for the Debtors pursuant to the

Engagement Letter, the Investment Bankers' commitment to the variable level of time and effort

necessary to address all such issues as they arise and the market prices for the Investment

Bankers' services for engagements of this nature, the Debtors believe that the terms and

conditions of the Engagement Letter are fair, reasonable, and market-based under the standards

set forth in section 328(a) of the Bankruptcy Code.

57.     Similar fixed and contingency fee arrangements have been approved and

implemented by courts in other large chapter 11 cases.  *See, e.g., In re M&G USA Corporation*,

Case No. 17-12307 (BLS) (Bankr. D. Del. Nov. 30, 2017); *In re TerraVia Holdings, Inc.*, Case No. 17-11655 (CSS) (Bankr. D. Del. Sept. 1, 2017); *In re GenOn Energy, Inc.*, Case No. 17-33695 (DRJ) (Bankr. S.D. Tex. July 14, 2017).

### *Nunc Pro Tunc* Relief Is Warranted

58.    The Debtors believe that the employment of the Investment Bankers effective *nunc pro tunc* to the Petition Date is warranted under the circumstances of the chapter 11 cases so that the Investment Bankers may be compensated for their services prior to entry of an order approving the Investment Bankers' retention.  Further, the Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment because the Investment Bankers have provided, and will continue to provide, valuable services to the Debtors' estates in the interim period.

59.    Courts in this jurisdiction routinely approve *nunc pro tunc* employment similar to that requested herein.[5]  *See, e.g.*, *In re GCX Limited*, Case No. 19-12031 (CSS) (Bankr. D. Del. Nov. 25, 2019); *In re Forever 21, Inc.*, Case No. 19-12122 (KG) (Bankr. D. Del. Nov. 4, 2019); *In re Southcross Energy Partners, L.P.*, Case No. 19 10702 (Bankr. D. Del. May 5, 2019); *In re David's Bridal, Inc*., Case No. 18-12635 (Bankr. D. Del. Jan. 4, 2019); *In re New MACH Gen, LLC*, Case No. 18-11368 (Bankr. D. Del. Jul. 2, 2018); *In re Enduro Resource Partners LLC*, Case No. 18-11174 (Bankr. D. Del. Jun. 8, 2018); *In re Southeastern Grocers, LLC*, Case No. 18 10700 (Bankr. D. Del. Apr. 23, 2018); *In re RCS Capital Corporation*, Case No. 16-10223 (MFW) (Bankr. D. Del. Feb. 23, 2016).

---

[5]    Local Rule 2014-1(b) provides, in relevant part: "If the retention motion is granted, the retention shall be effective as of the date the motion was filed, unless the Court orders otherwise." Del. Bankr. L.R. 2014-1(b)

**The Retention of the Investment Bankers is Critical to the Debtors' Reorganization Efforts**

60.     The Debtors submit that the retention of the Investment Bankers is in the best interests of all parties in interest in the chapter 11 cases.  The Investment Bankers are preeminent investment banking firms that are intimately familiar with the Debtors' businesses.  Denial of the relief requested herein will deprive the Debtors of the assistance of uniquely qualified professionals who have served them for the past several months.  Indeed, if the Debtors were forced to engage a new investment banker who lacks a thorough understanding of the Debtors' businesses and the initiatives that have been implemented over the course of the Investment Bankers' engagement, such change would mandate the commitment of significant and costly resources to educate a replacement.  Based on services performed to date, the Investment Bankers have been integral to preparing the Debtors for the chapter 11 cases.

61.     Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules to support entry of an order authorizing the Debtors to employ and retain the Investment Bankers in the chapter 11 cases on the terms described herein and in the Engagement Letter.

**Notice**

62.     Notice of this Application will be given to the following parties or, in lieu thereof, their counsel, if known:  (a) the Office of the United States Trustee for the District of Delaware; (b) the administrative agent for the Debtors' prepetition revolving credit facility; (c) counsel to the administrative agent for the Debtors' prepetition revolving credit facility; (d) the indenture trustee under the Debtors' 8.750% senior notes due 2023; (e) Stroock & Stroock & Lavan LLP and Young, Conaway, Stargatt & Taylor, LLP, as counsel to the ad hoc group of holders of the 8.750% senior notes due 2023; (f) the Internal Revenue Service; (g) the Environmental

Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (h) the United States Attorney for the District of Delaware; (i) the Attorneys General for the states of Oklahoma and Texas; (j) counsel to Naylor Farms, Inc. and Harrel's LLC, as lead plaintiffs in the action captioned *Naylor Farms, Inc., individually and as class representative on behalf of all similarly situated persons v. Chaparral Energy, L.L.C.*, Case No. 11-00634 (W.D. Ok. 2011); (k) the parties included on the Debtors' consolidated list of twenty (20) largest unsecured creditors; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").  A copy of this Application and any order approving it will also be made available on the Debtors' Case Information Website located at https://www.kccllc.net/chaparral2020.  The Debtors submit that, under the circumstances, no other or further notice is required.

### No Prior Request

63.    The Debtors have not previously sought the relief requested herein from the Court or any other court.

[*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*]

26

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit C**, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: August 24, 2020

Chaparral Energy, Inc.
Debtors and Debtors in Possession


*/s/ Charles Duginski*
Charles Duginski
Chief Executive Officer and President of
Chaparral Energy, Inc.