## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CHAPARRAL ENERGY, INC., *et al.*,[1] | Case No. 20-11947 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 23, 85** |

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) GRANTING RELATED RELIEF

Upon the (the "**Motion**")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), requesting, *inter alia*, pursuant to sections 105, 361, 362(d), 363(c), 503(b), and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"):

---

[1] The Debtors in these cases, along with the last four digits (or five digits, in cases in which multiple Debtors have the same last four digits) of each Debtor's federal tax identification number, are: CEI Acquisition, L.L.C. (1817); CEI Pipeline, L.L.C. (6877); Chaparral Biofuels, L.L.C. (1066); Chaparral CO2, L.L.C. (1656); Chaparral Energy, Inc. (90941); Chaparral Energy, L.L.C. (20941); Chaparral Exploration, L.L.C. (1968); Chaparral Real Estate, L.L.C. (1655); Chaparral Resources, L.L.C. (1710); Charles Energy, L.L.C. (3750); Chestnut Energy, L.L.C. (9730); Green Country Supply, Inc. (2723); Roadrunner Drilling, L.L.C. (2399); and Trabajao Energy, L.L.C. (9753). The Debtors' address is 701 Cedar Lake Boulevard, Oklahoma City, Oklahoma 73114.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

(a)     entry of an final order (the "**Final Order**") providing:

      (i)     authority for the Debtors to use Cash Collateral (as defined below) of Royal Bank of Canada, in its capacity as administrative agent (in such capacity, the "**Prepetition Agent**") for itself and for and on behalf of the other lenders from time to time party to the Tenth Restated Credit Agreement, dated as of December 21, 2017 (as amended, restated, amended and restated, supplemented, extended, or otherwise modified from time to time, the "**Credit Agreement**" and, together with all notes, security agreements, assignments, mortgages, deeds of trust, guaranties, forbearance agreements, letters of credit, Swap Agreements (as defined with the Credit Agreement), and other documents executed in connection therewith or related thereto, collectively, the "**Prepetition Claim Documents**"), by and among Chaparral Energy, Inc. (the "**Borrower**"), the guarantors party thereto (together with the Borrower, the "**Obligors**"), the Prepetition Agent and the lenders party thereto (the "**Prepetition Lenders**," and together with all other Secured Parties (as defined in the Credit Agreement), collectively, the "**Prepetition Secured Parties**");

      (ii)     the grant of superpriority claims and the grant of automatically perfected liens, security interests, and other adequate protection to the Prepetition Agent with respect to its interests in the Prepetition Collateral (as defined below) and the Adequate Protection Collateral (as defined below);

      (iii)     modification of the automatic stay of section 362 of the Bankruptcy Code (the "**Automatic Stay**") to the extent provided herein;

      (iv)     subject to certain limited challenge rights, approving certain stipulations by the Debtors with respect to the Prepetition Claim Documents and the liens and security interests arising therefrom;

      (v)     subject to the Carve Out (as defined herein), and to the extent set forth herein, waiving any "equities of the case" exception pursuant to section 552(b) of the Bankruptcy Code;

      (vi)     waiving the Debtors' right to surcharge the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code and the equitable doctrine of "marshaling" and other, similar doctrines with respect to any of the Prepetition Collateral (including the Cash Collateral); and

      (vii)     a waiver of any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of the Final Order and providing for the immediate effectiveness of the Final Order.

The Court having considered the Motion, the *Declaration of Charles Duginski in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**"), and the evidence submitted at the interim hearing held before this Court on August 18, 2020 (the "**Interim Hearing**"), to consider entry of the *Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling A Final Hearing, And (V) Granting Related Relief* [Docket No. 85] (the "**Interim Order**"); and the Court having (i) entered the Interim Order approving the relief requested in the Motion on an interim basis and (ii) scheduled the final hearing of the Motion to be held before this Court on September 14, 2020 (prevailing Eastern Time) to consider entry of this Final Order (the "**Final Hearing**"); and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and it appearing that approval of the final relief requested in the Motion is fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and essential for the continued operation of the Debtors' businesses; and all objections, if any, to the entry of this Final Order having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

1.    The Debtors and the Prepetition Agent have stipulated and agreed as follows, and based upon the pleadings and evidence presented at the Interim Hearing and the Final Hearing before this Court, this Court hereby acknowledges such stipulations, and grants the relief herein, on a final basis.  Therefore, consistent with sections 361, 362, 363, 503(b), and 507 of the Bankruptcy Code, this Court hereby finds and orders:

2.      The Debtors and the Prepetition Agent have represented to the Court that they have negotiated at arm's length and have acted in good faith in the negotiation and preparation of this Final Order, have been represented by counsel, and intend to be and are bound by their respective terms.   The terms and conditions of this Final Order reflect the Debtors' exercise of prudent business judgment under exigent circumstances and are consistent with their fiduciary duties.

## STATEMENT OF JURISDICTION AND VENUE

3.      This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for the Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## NOTICE

4.      Under the circumstances of these Chapter 11 Cases, notice of the Motion and Final Hearing has been provided in accordance with the Bankruptcy Code, Bankruptcy Rules, and the Local Rules, and no further notice of the Motion or the Final Hearing shall be required.  The Motion and this Final Order comply with the requirements of Local Rule 4001-2.

## FACTUAL AND PROCEDURAL BACKGROUND

5.      On August 16, 2020 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued in the management and possession of their business and property as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6.      On August 18, 2020, the Court conducted the Interim Hearing and entered the Interim Order.

7.      An official committee of unsecured creditors has not been appointed in these chapter 11 cases (the "**Cases**").

## PREPETITION REVOLVING CREDIT AGREEMENT

### The Prepetition Claim

8.      Subject to the limitations of paragraph 70 of this Final Order, the Debtors admit, stipulate, and agree that:

(a)      As of the Petition Date, pursuant to the Prepetition Claim Documents (as defined below) and applicable law, the Prepetition Secured Parties hold valid, enforceable, and allowable claims against the Borrower and each Guarantor (as defined in the Credit Agreement), in an aggregate amount equal to: (a) unpaid principal in the amount of not less than $188,500,000, plus (b) obligations under any Bank Products (as defined in the Credit Agreement), if any, owing to any Bank Products Provider (as defined in the Credit Agreement), in each case to the extent included in the definition of "Indebtedness" set forth in the Credit Agreement, plus (c) any and all other interest (accruing at the default rate), fees, costs, expenses, charges, and other claims, debts, or obligations of the Debtors to the Prepetition Secured Parties that have accrued as of the Petition Date under the Prepetition Claim Documents and applicable law, plus (d) all post-Petition Date interest (accruing at the default rate), fees, costs, and charges allowed to the Prepetition Secured Parties on such claims pursuant to section 506(b) of the Bankruptcy Code (collectively, the "**Prepetition Claim**").

(b)      The Prepetition Claim constitutes a legal, valid, binding, enforceable, and non-avoidable obligation of and claim against each Obligor, and the Prepetition Claim is not and shall not be subject to any offset, defense, counterclaim, avoidance, recharacterization, or subordination (whether equitable or otherwise), recovery, challenge, or claim pursuant to the

Bankruptcy Code or any other applicable law, and the Debtors, their estates, and any official committee appointed in these Cases, except as otherwise provided in this Final Order, do not possess and shall not be entitled to assert any claim, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability, allowance, amount, and/or non-avoidability of the Prepetition Claim.

## The Prepetition Claim Documents

9.    Subject to the limitations of paragraph 70 of this Final Order, the Debtors admit, stipulate, and agree that:

(a)    The Prepetition Claim is evidenced by certain documents executed and delivered to the Prepetition Secured Parties by the Debtors, including, without limitation, the Credit Agreement.

(b)    The Credit Agreement, and all notes, security agreements, assignments, pledges, mortgages, deeds of trust, guaranties, forbearance agreements, letters of credit, Swap Agreements (as defined in the Credit Agreement), and other instruments or documents executed in connection therewith or related thereto shall be referred to herein collectively as the "**Prepetition Claim Documents**."  True and correct copies of certain of the Prepetition Claim Documents are retained by the Prepetition Secured Parties and may be made available to interested parties upon request.

(c)    The Prepetition Claim Documents are genuine, valid, existing, legally enforceable, unavoidable, and admissible in the Cases for all purposes.

## The Prepetition Collateral

10.    Subject to the limitations of paragraph 70 of this Final Order, Debtors admit, stipulate, and agree that:

(a)      The Prepetition Claim evidenced by the Prepetition Claim Documents is secured by perfected liens and security interests in (collectively, the "**Prepetition Liens**") *inter alia*, certain real and personal property, wherever located, whether now owned or at any time hereafter acquired by, any of the Obligors or in which the Obligors now have or at any time in the future may acquire any right, title, or interest and whether now existing or hereafter coming into existence covered by those certain mortgages, collateral, security and pledge agreements forming a component of the Prepetition Claim Documents, including, without limitation of the Obligors as covered by those certain mortgages, collateral and pledge agreements forming a component of the Security Instruments (as defined in the Prepetition Claim Documents), including, without limitation, the following presently owned and after-acquired real and personal property: (1) to the extent not constituting Excluded Assets and Excluded Accounts,[3] (a)  all Accounts, (b) all Chattel Paper, (c) all Copyrights, Patents, and Trademarks, (d) all Documents, (e) all Equipment, (f) all Fixtures, (g) all General Intangibles, (h) all Goods (other than consumer goods), (i) all Instruments, (j) all Inventory, (k) all Investment Property and Equity Interests, (l) all cash and cash equivalents, (m) all letters of credit, Letter-of-Credit Rights, and Supporting Obligations, (n) all Deposit Accounts, (o) certain Commercial Tort Claims, (p) all Securities Accounts, (q) all Commodity Accounts, (r) all Assigned Contracts and all Swap Agreements, and (s) all accessions to, substitutions for, and replacements, Proceeds (including Stock Rights), insurance proceeds and products of the foregoing, together with all books and records, customer lists, credit files, computer files, programs, printouts and other computer materials and records related thereto and any General

---

[3]  Capitalized terms used but not otherwise defined in this clause (1) shall have the meaning ascribed to such terms in that certain *Amended and Restated Pledge and Security Agreement* dated as of December 21, 2017 among the Obligors and the Prepetition Agent (as amended from time to time).

Intangibles at any time evidencing or relating to any of the foregoing; (2) (a) all rights, titles, interests and estates now owned or hereafter acquired by the Obligors in and to the Oil and Gas Properties identified in the Mortgages,[4] (b) all rights, titles, interests and estates now owned or hereafter acquired by the Obligors in and to all geological, geophysical, engineering, accounting, title, legal and other technical or business data concerning the Oil and Gas Properties, the Hydrocarbons or any other item of property which are in the possession of the Obligors, and all books, files, records, magnetic media, computer records and other forms of recording or obtaining access to such data, (c) all rights, titles, interests and estates now owned or hereafter acquired by the Obligors in and to Hydrocarbons, (d) all other rights, titles, and interests of every nature whatsoever now owned or hereafter acquired by the Obligors in the Oil and Gas Properties, including, without limitation, any rights, titles, interests, and estates as the same may be enlarged by the discharge of any payments out of production or by the removal of any charges or Excepted Liens to which any of the Oil and Gas Properties are subject or otherwise; and all rights of the Obligors to Liens securing payment of proceeds from the sale of production from any of the Oil and Gas Properties, together with any and all renewals and extensions of any of such related rights, titles, interests or estates, (e) all Accounts and Contract Rights, (f) all As-Extracted Collateral from or attributable to the Oil and Gas Properties, (g) all books and records pertaining to the Oil and Gas Properties, (h) all Goods that are or are to become Fixtures related to the Oil and Gas

---

[4] Capitalized terms used but not otherwise defined in this clause (2) shall have the meaning ascribed to such terms in that certain *Amended and Restated Mortgage, Deed of Trust, Assignment of As-Extracted Collateral, Security Agreement, Fixture Filing and Financing Statement* dated as of December 21, 2017 by the Debtors in favor of the Prepetition Agent (as amended from time to time), or in that certain *Mortgage, Deed of Trust, Assignment of As-Extracted Collateral, Security Agreement, Fixture Filing and Financing Statement* dated as of December 7, 2018 by the Debtors in favor of the Prepetition Agent (as amended from time to time), or in that certain *Mortgage, Deed of Trust, Assignment of As-Extracted Collateral, Security Agreement, Fixture Filing and Financing Statement* dated as of January 9, 2020 (as amended from time to time), as applicable (collectively, the "**Mortgages**").

Properties, (i) all Hydrocarbons, and (j) to the extent not otherwise included, all Proceeds and products of any and all of the foregoing and all collateral security, guarantees and other Supporting Obligations given with respect to any of the foregoing; (3) certain real property owned or leased by the Obligors; and (4) to the extent not otherwise included, all accessions to, additions to, substitutions for, and replacements, insurance proceeds, products, and proceeds of any of the foregoing (1) through (4), together with all books and records, and other records related thereto and any General Intangibles at any time evidencing or relating to any of the foregoing (collectively, and for the avoidance of doubt, together with the Cash Collateral (as defined below) the "**Prepetition Collateral**").

(b)     The Prepetition Liens on the Prepetition Collateral were granted pursuant to, *inter alia*, the Prepetition Claim Documents.  The Prepetition Liens are valid, properly-perfected, and unavoidable liens in the Prepetition Collateral as evidenced by, among other things, the Prepetition Claim Documents, documents held in possession of the Prepetition Secured Parties, and documents filed with the appropriate state, county, and other offices.  The Prepetition Liens (a) are not and shall not be subject to any contest, avoidance, recharacterization, or subordination (whether equitable or otherwise), recovery, challenge, or claim pursuant to the Bankruptcy Code or any other applicable law, and the Debtors, their estates, and any official committee appointed in these Cases, do not possess any claim, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability, allowance, amount, and/or non-avoidability of the Prepetition Liens and (b) are subject and subordinate only to (1) the Carve Out and (2) any valid, enforceable, unavoidable, and properly perfected liens existing on the Petition Date on property unencumbered by the Prepetition Liens or on the Prepetition Collateral (including the Cash Collateral) or the Adequate Protection Collateral (as defined below) existing

on the Petition Date or were perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code against the Obligors with priority under applicable state law over the Prepetition Secured Parties' liens on the Prepetition Collateral (collectively, the "**Permitted Liens**"), and the Debtors each irrevocably waive, for themselves and their subsidiaries and affiliates, any right to challenge or contest in any way the perfection, validity, and enforceability of the Prepetition Liens or the validity or enforceability of the Prepetition Claim and the Prepetition Claim Documents, and the Debtors each irrevocably waive, for themselves and their subsidiaries and affiliates, the right to seek avoidance under any provision of chapter 5 of the Bankruptcy Code.

(c)     The Obligors are in default of their debts and obligations to the Prepetition Secured Parties under the terms and provisions of the Prepetition Claim Documents. These defaults exist, have not been timely cured, and are continuing. The filing of these Cases has accelerated, to the extent not previously accelerated, the maturity of the Prepetition Claim for all purposes in these Cases and in connection with the Prepetition Secured Parties' enforcement of their respective rights and remedies under the Prepetition Claim Documents and applicable law. Each of the Obligors is indebted and liable under the terms and provisions of the Prepetition Claim Documents without defense, counterclaim, or offset of any kind, and the Prepetition Claim remains fully due and owing. No payments or other transfers made by or on behalf of the Debtors to the Prepetition Secured Parties prior to the Petition Date are avoidable or recoverable from any of the Prepetition Secured Parties under any section of the Bankruptcy Code, any other federal, state, or other applicable law, or otherwise and shall not be subject to any offset, defense, counterclaim, avoidance, recharacterization, or subordination (whether equitable or otherwise), recovery, challenge, avoidance, or claim pursuant to the Bankruptcy Code or any other applicable law, and the Debtors, their estates, and any official committee appointed in these Cases do not possess and

shall not be entitled to assert any claim, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability, allowance, amount, and/or non-avoidability of the Prepetition Claim.  From and after the Petition Date, except as set forth in this Final Order, neither the Prepetition Agent nor the Prepetition Lenders shall have any obligation to lend or advance funds to the Debtors or their estates pursuant to the Credit Agreement.  The Prepetition Liens shall be junior only to (A) the Carve Out (as defined below) and (B) the Permitted Liens.

## CASH COLLATERAL

### Lenders' Cash Collateral

11.    Subject to the limitations of paragraph 70 of this Final Order, other than cash held in Excluded Accounts (as defined in the Security Agreement), all cash of each of the Obligors bankruptcy estates, wherever located, and all cash equivalents, whether in the form of negotiable instruments, documents of title, securities, deposit accounts, investment accounts, or in any other form (in each case, other than trust, escrow and custodial funds held as of the Petition Date in properly established trust, escrow and custodial accounts), that were on the Petition Date in any of the Debtors' possession, custody or control (or persons in privity with any of the Debtors), or in which any of the Debtors will obtain an interest during the pendency of these Cases, or which represent income, proceeds, products, rents, or profits of any of the Prepetition Collateral shall constitute the cash collateral of the Prepetition Agent (collectively, the "**Cash Collateral**").  The Prepetition Agent has first priority, perfected liens and security interests in the Cash Collateral pursuant to the applicable provisions of the Prepetition Claim Documents, sections 363(a) and 552(b) of the Bankruptcy Code, and this Final Order.

RLF1 23962453v.1

12.     Each Debtor shall account to the Prepetition Agent for all Cash Collateral that they now possess, that they have permitted to be transferred into the possession of others (if any), that is being held by those in privity with the Debtors, or that any Debtor might hereafter obtain or have any interest in.  Each Debtor shall account to the Prepetition Agent for the receipt and use, if any, of the Cash Collateral received by the Debtors since the Petition Date and prior to the entry of this Final Order.  Such accounting obligations shall be satisfied through reporting consistent with paragraph 18 hereof.  Absent a further order of this Court or the consent of the Prepetition Agent, the Debtors are strictly prohibited from using the Cash Collateral except as expressly provided for herein.

### Need For and Consent to Limited Use of Cash Collateral

13.     The Prepetition Agent and the Prepetition Lenders do not consent to the Debtors' use of Cash Collateral except in accordance with the terms and conditions contained in this Final Order.  Without the use of Cash Collateral, the Debtors will not have the funds necessary to maintain their assets, sell or otherwise liquidate their assets, provide financial information, and pay employee compensation, payroll taxes, overhead, and other expenses necessary to maximize the value of the Debtors' estates.  The Debtors require the use of Cash Collateral for working capital purposes, other general purposes, and the costs and expenses of administering the estate.

14.     Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein.  The use of Cash Collateral will benefit the Debtors and their estates.  The ability of the Debtors to maximize the value of their estates depends upon the Debtors' ability to use the Cash Collateral of the Prepetition Lenders.  Accordingly, the use of Cash Collateral by the Debtors is actual and necessary to preserving their estates.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

RLF1 23962453v.1

15.     The relief requested in the Motion is granted in accordance with the terms and conditions of this Final Order.  Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or resolved, are hereby denied and overruled on the merits.

### Authorization for Limited Use of Cash Collateral

16.     The Debtors are hereby authorized, on a final basis, to use Cash Collateral of the Prepetition Lenders only in accordance with the terms and conditions provided in this Final Order and the Budget (as defined below) subject to the variance provisions set forth in paragraph 18 herein.  Except on the terms and conditions of this Final Order, the Debtors are prohibited from using Cash Collateral at any time absent written consent of the Prepetition Agent or further order of the Court.  The Prepetition Secured Parties are granted Adequate Protection Liens (as defined below), Adequate Protection Claims (as defined below), Prepetition Agent's Costs (as defined below), and all other forms of adequate protection set forth herein (collectively, the "**Adequate Protection**").  The Debtors' right to use Cash Collateral may be extended only upon the Prepetition Agent's written consent or further order of this Court.

### Cash Collateral Accounts

17.     To the extent there exists or comes to exist any cash of the Debtors' estates that is not Cash Collateral, wherever located and however held, such cash shall be deemed to have been used first by the Debtors and shall be subject to the Adequate Protection Liens granted to the Prepetition Lenders hereunder.

RLF1 23962453v.1

## ADEQUATE PROTECTION OF THE PREPETITION LENDERS

### Budgeted Cash Collateral Usage

18.    As adequate protection of the Prepetition Lenders' interest in the Prepetition Collateral and for the Debtors' use of the Cash Collateral, the Debtors are authorized to use Cash Collateral in accordance with the 13-week cash flow budget attached hereto as **Exhibit 1** (as amended, supplemented, replaced, extended or otherwise modified from time to time in accordance with the terms hereof and acceptable to the Prepetition Agent, the "**Budget**"); *provided, however*, that, (i) the actual aggregate disbursements of the Debtors for gross lease operating expenses shall not exceed the projected amount therefor set forth in the Budget for such applicable time period by more than fifteen percent (15%), (ii) the actual aggregate disbursements of the Debtors for gross capital expenses shall not exceed the projected amount therefor set forth in the Budget for such applicable time period by more than fifteen percent (15%), (iii) the actual aggregate disbursements of the Debtors for employee payroll and benefits shall not exceed the projected amount therefor set forth in the Budget for such applicable time period by more than fifteen percent (15%), and (iv) the actual aggregate disbursements of the Debtors for total operating disbursements shall not exceed the projected amount therefor set forth in the Budget for such applicable time period by more than fifteen percent (15%), *provided*, *further*, that cash expenses and disbursements considered in determining compliance with this covenant shall exclude (w) royalty payments, production and ad valorem taxes, or other disbursements calculated based on volume or amount of oil, gas, or other natural gas liquid production, (x) the Debtors' disbursements and expenses in respect of professional fees during such time period, (y) interest and financing and bank service fees paid during such time period, and (z) net hedge settlements during such period (any variance not exceeding such maximums in subparagraph (i), (ii), (iii), and

RLF1 23962453v.1

(iv) of this sentence, a "**Permitted Variance**").  Any unused amounts with respect to a particular line item for any one-week period of the Budget may be carried forward (the "**Carryforwards**") by the Debtors' to any one week period in the next four weeks; *provided, however* that any Carryforward shall reduce to zero to when a new Budget goes into effect in accordance with the terms of this order.  The Debtors shall be prohibited from using Cash Collateral other than in accordance with the Budget, subject to Permitted Variances.

19.     By not later than 5:00 p.m. (Eastern Time) on  the first Thursday following the entry of this Final Order and on each Thursday thereafter by such time (or, if such Thursday is not a business day, then the immediately succeeding business day), the Debtors shall deliver to the Prepetition Agent and advisors of the ad hoc group of 8.75% Senior Notes due 2023 (the "**Ad Hoc Group**") a line-by-line reconciliation report showing the variances comparing actual cash receipts and disbursements of the Debtors during the immediately-preceding calendar week with corresponding forecasted amounts for such week in the Budget, including written descriptions in detail explaining any material positive or negative variances; *provided*, *however*, the Debtors shall report the actual net production of crude oil, natural gas and natural gas liquids from their Oil and Gas Properties on a monthly basis within 40 days following the end of each applicable month.

20.     By not later than 11:59 p.m. (Eastern Time) on every fourth Tuesday after September 8, 2020, the Debtors shall deliver to the Prepetition Agent and advisors of the Ad Hoc Group an updated Budget for consideration by the Prepetition Agent that shall become the Budget effective upon four (4) business days after receipt of such proposed Budget, unless the Prepetition Agent and the Majority Lenders (as defined in the Credit Agreement) disapprove of such Budget in writing by a notice sent to the Debtors, which shall cause the prior approved Budget to remain in effect.  An approved Budget may be modified in writing only with the prior written consent of

the Prepetition Agent.  On every fourth Thursday after September 8, 2020, the Debtors shall provide the Prepetition Agent an updated 13-week cash flow forecast, which shall be used for information purposes only and shall not become the Budget.  The Prepetition Agent may, in its sole discretion, agree in writing to the use of Cash Collateral in a manner or amount which does not conform to the approved Budget or the Permitted Variances (each such use of Cash Collateral, "**Non-Conforming Use**").  If such written consent is given, the Debtors shall be authorized pursuant to this Final Order to amend the approved Budget without further Court approval, and the Prepetition Secured Parties shall be entitled to all of the protections specified in this Final Order for any such use of Cash Collateral.

21.    For the avoidance of doubt, except with respect to necessary ordinary course intercompany transactions (in accordance with the terms of the Cash Management Order[5]) or as approved by order of the Court, Cash Collateral may not be used (i) by any entity that is not a Debtor or (ii) to pay any expenses of any entity that is not a Debtor.

## Replacement and Adequate Protection Liens; Superpriority Administrative Claims

22.    Taking into account all factors in these Cases, the Prepetition Lenders are entitled to, and the Debtors shall be obligated to provide, pursuant to Bankruptcy Code sections 361, 363(c)(2), and 363(e), adequate protection of their respective interests in property of the Debtors' estates, for the amount of diminution in the value of the Prepetition Secured Parties' interest in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date resulting from

---

[5] "**Cash Management Order**" means the order granting the relief sought by the Debtors in the *Motion of Debtors for Entry of Interim and Final Orders (i) Authorizing Continued Use of Existing Cash Management Systems, Including Maintenance of Existing Bank Accounts, Checks, And Business Forms, (ii) Authorizing Continuation of Existing Deposit Practices, (iii) Authorizing Continuation of Intercompany Transactions, And (iv) Authorizing Continued Use of Credit Cards*.

the imposition of the Automatic Stay, or the use, sale, or lease of Prepetition Collateral (including the Cash Collateral) under section 363 of the Bankruptcy Code.

(a)     In consideration for the Debtors' use of Cash Collateral and as adequate protection subject to the Carve Out and the Permitted Liens and to secure payment of the Adequate Protection Claims (as defined below), the Prepetition Agent is hereby granted effective as of the Petition Date, valid, binding, continuing, enforceable, unavoidable, and automatically perfected, replacement liens and security interests in and upon (a) all Prepetition Collateral, and (b) all assets and properties of the Debtors' estates, whether now owned or hereafter acquired, including, without limitation, all personal and real property of the Debtors' estates and all products, proceeds, rents, and profits thereof, including all such property that, from and after the Petition Date, is not subject to any lien or security interest, if any (the "**Adequate Protection Liens**", and the Prepetition Collateral subject to the Adequate Protection Liens, the "**Adequate Protection Collateral**") to the extent of the actual diminution in value of their interests in the Prepetition Collateral; *provided* that any of the Debtors' or the estates' claims and causes of action arising under sections 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code or any other similar state or federal law (such actions, collectively, the "**Avoidance Actions**") shall not be included in Adequate Protection Collateral or Prepetition Collateral; *provided, however* that the Adequate Protection Collateral shall include, subject to and effective upon entry of the Final Order, all proceeds of and recoveries on Avoidance Actions (the "**Avoidance Actions Proceeds**").  The Adequate Protection Liens shall be junior only to (A) the Carve Out (as defined below) and (B) any Permitted Liens.

(b)     To the extent any adequate protection is insufficient to adequately protect the Prepetition Agent's and the Prepetition Lenders' interest in the Prepetition Collateral and the

Adequate Protection Collateral, the Prepetition Agent and the Prepetition Lenders are hereby granted superpriority administrative claims and all of the other benefits and protections allowable under section 507(b) of the Bankruptcy Code in the amount of the actual diminution in value of the Prepetition Agent's interests in the Prepetition Collateral (the "**Adequate Protection Claims**"), *provided*, that the Adequate Protection Claims shall not attach to any Avoidance Actions, *provided*, *however* that the Adequate Protection Claims shall include the Avoidance Action Proceeds.  The Adequate Protection Claims shall be subject to and subordinate to payment of the Carve Out (as defined below).

(c)     The Prepetition Agent shall receive for its own benefit and on behalf of the Prepetition Secured Parties from the Debtors on the Interest Payment Date (as defined in the Credit Agreement), cash payment in an amount equal to all accrued but unpaid prepetition fees of the Prepetition Agent, interest at the default rate under the Credit Agreement in accordance with the terms thereof on the dates provided for such interest payments under the Credit Agreement, and, subject to paragraph 41, any fees and expenses payable to the Prepetition Agent under the Prepetition Claims Documents or any other documents evidencing or governing Bank Products, as applicable; *provided, further*, in the event the payment of such interest and fees are (a) determined by final order of the Court not to be allowable under section 506 of the Bankruptcy Code, or (b) not provided for under a confirmed plan, then any party in interest as provided herein may assert that any payments made in respect of the Credit Agreement constitute and may be recharacterized as principal repayments on account of the Prepetition Claim, and further provided that no party to that certain restructuring support agreement, dated August 15, 2020, attached as Exhibit B to the First Day Declaration (such agreement, as may be further amended, modified, or supplemented from time to time, the "**Restructuring Support Agreement**") may make any such

assertion so long as the Restructuring Support Agreement has not been terminated, and nothing herein shall in any way waive, modify, or limit any rights of the Prepetition Agent or any of the Prepetition Secured Parties under the Restructuring Support Agreement, all of which are expressly reserved.

## **Automatic Perfection**

23.    This Final Order shall be sufficient and conclusive evidence of the priority, perfection, attachment, and validity of all of the Prepetition Agent's and the Prepetition Lenders' Adequate Protection Liens on the Adequate Protection Collateral granted and created hereunder, and such security interests and liens shall constitute valid, automatically perfected and unavoidable security interests and liens, with the priorities granted hereunder, effective as of the Petition Date, without the necessity of executing deposit account control agreements or creating, filing, recording, or serving any financing statements, mortgages, or other documents, that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted to the Prepetition Agent by this Final Order.

24.    To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the Prepetition Agent's and the Prepetition Lenders' Adequate Protection Liens granted and created by this Final Order or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of the Court.

25.    By virtue of the terms of this Final Order, to the extent that the Prepetition Agent has entered into deposit account control agreements with the Debtors or filed Uniform Commercial

Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the Debtors, such execution and filings, as applicable, shall be deemed to properly perfect its liens and security interests granted under this Final Order without further action by the Prepetition Agent or by any of the Prepetition Lenders.

26.     If the Prepetition Agent shall, in its sole and absolute discretion, elect for any reason to file any Uniform Commercial Code financing statements, mortgages, deeds of trust, or other recordable documents, or enter into any deposit account control agreements, to further evidence perfection of its interests in property of the estates, the Prepetition Agent, or, upon the request of the Prepetition Agent, the Debtors, shall execute, or cause to be executed, all such mortgages, deeds of trust, other documents, or deposit account control agreements, and the filing, recording, or service (as the case may be) of such financing statements, mortgages, deeds of trust, or similar documents, or the execution of any deposit account control agreements, shall be deemed to have been made at the time of and on the Petition Date, and the Prepetition Agent is hereby authorized to file or record such documents in their discretion without seeking modification of the Automatic Stay, including the Prepetition Agent may, in its sole and absolute discretion, file a certified copy of this Final Order in any filing or recording office in any county or other jurisdiction in which any of the Debtors have real or personal property, and in such event, the subject filing or recording officer shall file or record such documents or certified copy, and in which event, all documents shall be deemed to have been filed or recorded at the time and date of the entry of this Final Order.

## Authorization to Act

27.     The Debtors shall perform all acts, take any action, and execute and comply with the terms of such other documents, instruments and agreements, as the Prepetition Agent may reasonably require as evidence of and for the protection of the Prepetition Collateral or the

RLF1 23962453v.1

Adequate Protection Collateral, or that may be otherwise deemed necessary by the Prepetition Agent to effectuate the terms and conditions of this Final Order.

28.    Until such time as the Prepetition Claim and the Adequate Protection Claim shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Prepetition Claim Documents and this Final Order, as applicable, and without further order of the Court: (a) the Debtors shall use all Cash Collateral strictly in accordance with the terms of the Budget requirements and the other terms of this Final Order; and (b) the Debtors shall not, without prior order from the Court, engage in any transaction that is not in the ordinary course of the Debtors' business.

## No Subordination of Liens

29.    The Adequate Protection Liens granted to the Prepetition Secured Parties pursuant to this Final Order shall not at any time be (a) made subject or subordinated to, or made *pari passu* with, any other lien or security interest existing on the Petition Date, or any claim, lien, or security interest created under sections 363 or 364(d) of the Bankruptcy Code or otherwise (other than the Carve Out and Permitted Liens), or (b) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; *provided* that the provisions of this paragraph shall not apply to any liens granted pursuant to the Hedging Order,[6] which such Hedging Order shall be acceptable to the Prepetition Agent.

---

[6] "**Hedging Order**" means the order granting the relief sought by the Debtors in the *Motion of the Debtors' For Entry of Interim and Final Orders (i) Authorizing the Debtors to Enter Into and Perform Under Postpetition Hedging Arrangements, (ii) Granting Liens and Superpriority Administrative Expense Claims, And (iii) Granting Related Relief.*

## No Additional Liens

30.     Until such time as the Prepetition Claim and the Adequate Protection Claim shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Prepetition Claim Documents and this Final Order, as applicable, the Debtors shall not be authorized to obtain credit secured by a *pari passu* or senior lien or security interest in the Prepetition Collateral or Adequate Protection Collateral without the prior written consent of the Prepetition Agent or order of the Court upon reasonable notice, *provided* that the provision of this paragraph shall not apply to any liens granted pursuant to the Hedging Order, which such Hedging Order shall be acceptable to the Prepetition Agent.

31.     Notwithstanding anything to the contrary herein, JPMorgan Chase Bank N.A. ("**JPMorgan**") is authorized to extend credit secured by a lien or security interest on cash in the Credit Card Account (as defined in the Cash Management Order) and make advances from time to time on behalf of the Debtors, and the Debtors are authorized to obtain such credit, under the credit card program (the "**Credit Card Program**") administered by JPMorgan.  In accordance with the Credit Card Program, JPMorgan is authorized to exercise any of its remedies under the Assignment of Deposit Account in the event of any default under the Credit Card Program.  Notwithstanding anything to the contrary in any document or order of this Court, no relief shall be requested or granted that would in any way interfere with the right of JPMorgan to exercise remedies under the Assignment of Deposit Account.

## No Liability

32.     No act committed or action taken by the Prepetition Agent under this Final Order, or the Prepetition Claim Documents shall be used, construed, or deemed to hold the Prepetition Agent or the Prepetition Lenders to be in "control" of or participating in the governance,

management, or operations of any of the Debtors for any purpose, without limitation, or to be acting as a "responsible person(s)" or "owner(s) or operator(s)" or a person(s) in "control" with respect to the governance, management, or operation of any of the Debtors or their respective businesses (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, Comprehensive Environmental Response, Compensation and Liability Act, or the Bankruptcy Code, each as may be amended from time to time, or any other federal or state statute, at law, in equity, or otherwise) by virtue of the interests, rights, and remedies granted to or conferred upon the Prepetition Agent or the Prepetition Lenders under the Prepetition Claim Documents or this Final Order, including, without limitation, such rights and remedies as may be exercisable by the Prepetition Agent or the Prepetition Lenders in connection with this Final Order.

## Automatic Stay

33.    The Automatic Stay is hereby modified to the extent necessary to permit (a) the Debtors, the Prepetition Agent, and the Prepetition Lenders to commit all acts and take all actions necessary to implement the this Final Order, (b) all acts, actions, and transfers contemplated herein, and (c) the Debtors, the Prepetition Agent, and the Prepetition Lenders to commit all acts and take all actions necessary to exercise any rights under, including without limitation any rights to terminate, the Restructuring Support Agreement.

## Collateral Insurance, Maintenance, Taxes, and Deposits

34.    The Debtors shall maintain insurance in accordance with section 7.12 of the Credit Agreement.  Upon receipt of notification (written or oral) that an insurance policy covering any Prepetition Collateral will not be renewed by the respective carrier, the Debtors shall promptly notify the Prepetition Agent in writing of such occurrence and thereafter provide the Prepetition Agent with the status of all negotiations, if any, regarding such policy on a weekly basis.

RLF1 23962453v.1

35.     To the extent permitted by this Final Order (including the Budget), the Debtors shall make any and all payments necessary to keep the Prepetition Collateral and their other property in good repair and condition and not permit or commit any waste thereof.  The Debtors shall exercise their business judgment and, in so doing shall preserve, maintain, and continue all material leases, patents, licenses, privileges, franchises, certificates and the like necessary for the operation of their businesses.

36.     To the extent the Debtors have made or make any deposits for the benefit of any entity (and the Debtors shall not make any such deposits after the date of this Final Order which are not included in the Budget or authorized by an order of the Court, without first obtaining prior written consent of the Prepetition Agent), such deposits shall be, and hereby are, upon return to the Debtors, shall be subject to the Adequate Protection Liens, and the Debtors' use of Cash Collateral granted by this Final Order.

## **Reporting Requirements**

37.     The Debtors shall provide to the Prepetition Agent all of the documentation and reports required under the Prepetition Claim Documents, including, without limitation, the reports required by the Credit Agreement, schedules, assignments, financial statements, insurance policies, and endorsements, unless the Prepetition Agent waives or modifies such requirements in writing (the "**Reporting Information**").

38.     The Reporting Information shall also include: (a) copies of all reports submitted or filed with the Office of the United States Trustee (the "**U.S. Trustee**") within two (2) days after such submission or filing; (b) such additional financial or other information concerning the acts, conduct, property, assets, liabilities, operations, financial condition, and transactions of any of the Debtors, or concerning any matter that may affect the administration of any of the Debtors' estates,

as the Prepetition Agent may from time to time reasonably request; and (c) weekly reports of receipts, budgeted cash usage and variance reports consistent with paragraph 18 of this Final Order.  All Reporting Information shall be in accordance with accounting principles and bookkeeping practices consistently applied with past accounting principles and bookkeeping practices and reporting of the Debtors to the Prepetition Agent.

39.     The Prepetition Agent, and its representatives, agents, consultants and other professionals, shall be permitted, in coordination with Debtors' counsel, to contact and communicate with the Debtors and their financial and restructuring advisors regarding potential transactions for the Debtors' reorganization and any sale or other disposition of material assets of any of the Debtors' estates, if any.  The Debtors shall be responsive and employ their best efforts to cooperate in the coordination of all such contacts and communications, including, without limitation, by conducting update telephone conferences with the Debtors, their financial and restructuring advisors, and the Prepetition Secured Parties upon request regarding any potential restructuring transactions or transactions for any sale or other disposition of the assets of any of the Debtors' estates, if any, during regular business hours and with reasonable advance notice.

40.     Upon reasonable advance written notice (including via email) during normal business hours, the Debtors shall permit the Prepetition Agent, and its representatives, agents and advisors, shall have access to the Debtors' business records, business premises, and to the Prepetition Collateral to enable the Prepetition Agent or its representatives, agents and advisors to (a) review, appraise, and evaluate the physical condition of the Prepetition Collateral, (b) inspect and review the financial records and all other records of the Debtors concerning the operation of the Debtors' businesses, and (c) evaluate the Debtors' overall financial condition and all other records relating to the operations of the Debtors.  The Debtors shall fully cooperate with the

Prepetition Agent regarding such reviews, evaluations, and inspections, and shall make their employees and professionals available to the Prepetition Agent and its representatives, agents and advisors, to conduct such reviews, evaluations, and inspections.

41.    Subject to any confidentiality requirements, the Debtors shall promptly deliver to the Prepetition Agent any and all material documentation that constitutes a written, bona fide solicitation, offer, or proposed sale or disposition of a material amount of property of any of the Debtors' estates actually received by a Responsible Officer (as defined in the Credit Agreement) of a Debtor or its counsel or financial advisor, including, without limitation, letters of inquiry, solicitations, letters of intent, or asset purchase agreements.

### Fees, Costs and Expenses of the Prepetition Secured Parties

42.    During the Cases, as additional adequate protection, all fees, costs, and expenses, including, without limitation, attorneys' fees and expenses and financial advisors' fees and expenses, including any fees incurred by Vinson & Elkins LLP, as counsel to the Prepetition Agent, and FTI Consulting, Inc. as financial advisor to the Prepetition Agent, under the Prepetition Claim Documents that are incurred as a result of or in way related to these Cases, or incurred prior to and remain unpaid on the Petition Date (collectively, the "**Prepetition Agent's Costs**"), may be charged by the Prepetition Agent and shall be paid by the Debtors out of the Cash Collateral. The Debtors are hereby authorized to pay such Prepetition Agent's Costs without the Prepetition Agent, or the Prepetition Agent's counsel, having to file any further application with the Court for approval, allowance, or payment.  Any such Prepetition Agent's Costs that constitute fees and expenses incurred by any professional retained by the Prepetition Agent shall be paid within ten (10) calendar days of delivery of a summary invoice to the Debtors, the U.S. Trustee, and any official committee appointed in these Cases, which may be redacted for privilege as determined

by the Prepetition Agent; *provided, however*, that (a) any redacted fee statements shall retain all privileges irrespective of any disclosure of any privileged matter, and any such disclosure shall be deemed inadvertent for all purposes and deemed stricken from any record in these Cases or otherwise, (b) if the Debtors, U.S. Trustee, or any official committee objects to the reasonableness of such fees and expenses, then the Debtors, U.S. Trustee, or any official committee, as the case may be, shall submit to such professional an objection (a "**Fee Objection**") limited to the issue of the reasonableness of the disputed fees and expenses within ten (10) calendar days of the delivery of such invoice; (c) if the Debtors, U.S. Trustee, or any official committee fails to object to the reasonableness of such fees and expenses within ten (10) calendar days, any objection of the Debtors, U.S. Trustee, or any official committee, as the case may be, shall be waived, (d) the Debtors shall timely pay in accordance with this Final Order the undisputed fees and expenses incurred by any professional retained by the Prepetition Agent reflected on any invoice to which a Fee Objection has been timely filed, and (e) notwithstanding the foregoing (a), (b), (c), and (d) of this sentence, the Prepetition Agents' Costs incurred prior to and unpaid as of the Petition Date shall be paid indefeasibly upon entry of this Final Order. The summary invoices shall include the number of hours billed (except for financial advisors compensated on other than an hourly basis) and be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses. Subject to any Fee Objection, all Prepetition Agent's Costs owed to the Prepetition Agent, regardless of whether or not such Prepetition Agent's Costs are set forth in the Budget and including, without limitation, all fees referred to in the Prepetition Claim Documents (including, without limitation, all attorneys' and other professionals' fees and expenses), shall constitute obligations that are part of the Prepetition Claim, as applicable, and shall be secured by the

Prepetition Collateral and afforded all priorities and protections afforded to the Prepetition Agent under this Final Order and the Prepetition Claim Documents.

## Additional Adequate Protection and Reservation of Rights

43.     This Final Order and the transactions contemplated hereby shall be without prejudice to the rights of the Prepetition Agent to seek additional or different adequate protection, move to vacate the automatic stay, move for the appointment of a trustee or examiner, move to dismiss or convert these Cases, or to take any other action in these Cases and to appear and be heard in any matter raised in these Cases.  Any and all rights, remedies, claims, and causes of action that the Prepetition Agent may have against any non-Debtor party liable for the Prepetition Claims are reserved.  For all adequate protection purposes throughout these Cases, the Prepetition Agent shall be deemed to have requested relief from the automatic stay and adequate protection for any decrease in value of the Prepetition Collateral or Adequate Protection Collateral from and after the Petition Date.  For the avoidance of doubt, such request will survive any termination of this Final Order.

## Milestones

44.     It is a condition to the Debtors' use of Cash Collateral and shall be an Event of Default unless the Debtors shall file a chapter 11 plan of reorganization acceptable to the Prepetition Agent, and accomplish each of the following requirements by the applicable date set forth below ("**Milestones**"):

(a)     On the Petition Date, the Debtors shall have filed a motion seeking approval of the Final Order, in form and substance acceptable to the Prepetition Agent.

(b)     Not later than the date that is 30 calendar days following the Petition Date, the Debtors shall have obtained entry of the Final Order and the Final Order shall be consistent with the Interim Order and otherwise in the form and substance acceptable to  the Prepetition Agent.

(c)    On or before 100 calendar days after the Petition Date, the Debtors shall have obtained entry by the Court of an order approving the disclosure statement and an order confirming the Plan (the "**Confirmation Order**") each, in form and substance acceptable to the Prepetition Agent.

(d)    On or before 115 days after the Petition Date, the effective date of the Plan shall have occurred.

45.    The Debtors covenant and agree that they will use their best efforts to comply with each of the Milestones.  Each of the Milestones may be extended or waived in writing by the Prepetition Agent in its sole and absolute discretion.  The Debtors shall promptly file with the Court a notice of any such extension or waiver.

## Carve Out

46.    As used in this Final Order, the term "**Carve Out**" shall mean a carve-out from claims pursuant to section 507(b) of the Bankruptcy Code, the Adequate Protection Liens and the Prepetition Liens, in an amount equal to the sum of (a) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus as applicable interest at the statutory rate (without regard to the notice set forth in (c) below); (b) all reasonable fees and expenses up to $75,000 incurred by a trustee appointed in the Debtors' Chapter 11 Cases under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (c) below); (c) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**"), and any appointed committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") at any time before or on the first business day following delivery by the Prepetition Agent of a Carve Out Trigger Notice (as defined below),

whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (d) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,000,000 incurred after the first business day following delivery by the Prepetition Agent of a Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amount set forth in this clause (d) being the "**Post-Carve-Out Trigger Notice Cap**"); *provided* that any success, completion, or similar fees payable following delivery by the Prepetition Agent of the Carve Out Trigger Notice shall be subject and subordinate, and junior in right of payment, to all other Allowed Professional Fees incurred following delivery by the Prepetition Agent of the Carve-Out Trigger Notice.  For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice sent following the Termination Date (as defined below) stating that the Post-Carve-Out Trigger Notice Cap has been invoked, delivered by hard copy, facsimile, or email (or other electronic means) by the Prepetition Agent to the Debtors, Davis Polk & Wardwell LLP as their lead restructuring counsel, the U.S. Trustee, counsel to the Ad Hoc Group, and counsel to the Committee (if any), which notice may be delivered following the termination of the Debtors' right to use the Prepetition Collateral by such Prepetition Agent, stating that the Post-Carve-Out Trigger Notice Cap has been invoked.  For the avoidance of doubt, the incurrence of payment of any amounts subject to the Carve Out shall not be restricted by the Budget.

47.    Immediately on the day on which a Carve-Out Trigger Notice is given by the Prepetition Agent to the Debtors, Davis Polk, the U.S. Trustee, counsel to the Ad Hoc Group, and counsel to the Committee (if any) (the "**Termination Declaration Date**"), and prior to the payment to any Prepetition Secured Party on account of adequate protection, the Carve-Out Trigger Notice shall constitute a demand of the Debtors to utilize all cash on hand (including Cash

Collateral) as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees. The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "**Pre-Carve-Out Trigger Notice Reserve**") prior to any and all other claims. On the Termination Declaration Date, the Carve-Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand (including Cash Collateral) as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve-Out Trigger Notice Reserve, prior to the payment to any Prepetition Secured Party on account of adequate protection, to fund a reserve in an amount equal to the Post-Carve-Out Trigger Notice Cap. The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such Allowed Professional Fees benefiting from the Post-Carve-Out Trigger Notice Cap (the "**Post-Carve-Out Trigger Notice Reserve**" and, together with the Pre-Carve-Out Trigger Notice Reserve, the "**Carve-Out Reserves**") prior to any and all other claims. All funds in the Pre-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (a) through (c) of the definition of Carve Out set forth above (the "**Pre-Carve-Out Amounts**"), but not, for the avoidance of doubt, the Post-Carve-Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve-Out Trigger Notice Reserve has not been reduced to zero, paid to the Prepetition Agent for the benefit of the Prepetition Lenders until the Credit Agreement Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Prepetition Agent for the benefit of the Prepetition Lenders in accordance with their rights and priorities under the Prepetition Claim Documents and this Final Order. All funds in the Post-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (d) of the definition of Carve Out set forth above (the "**Post-Carve-Out Amounts**"), and then, to

the extent the Post-Carve-Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Agent for the benefit of the Prepetition Lenders until the Obligations have been indefeasibly paid in full, in cash, and any excess shall be paid to the Prepetition Agent for the benefit of the Prepetition Lenders in accordance with rights and priorities under the Prepetition Claim Documents and this Final Order.  Notwithstanding anything to the contrary herein, if either of the Carve-Out Reserves is not funded in full in the amounts set forth herein, then any excess funds in one of the Carve-Out Reserves following the payment of the Pre-Carve-Out Amounts and Post-Carve-Out Amounts, respectively, shall be used to fund the other Carve-Out Reserve, up to the applicable amount set forth herein, prior to making any payments to the Prepetition Agent or any other prepetition secured creditors, as applicable.  Notwithstanding anything to the contrary in the Credit Agreement or this Final Order, following delivery of a Carve-Out Trigger Notice, the Prepetition Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve-Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve-Out Reserves, with any excess paid to the Prepetition Agent for application in accordance with the Credit Agreement.  Further, notwithstanding anything to the contrary in this Final Order, (i) disbursement by the Debtors from the Carve Out reserves shall not constitute Loans (as defined in the Credit Agreement), (ii) the failure of the Carve-Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Post-Carve-Out Trigger Notice Cap, Carve-Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order or in any Credit Agreement, the Carve Out shall be senior to all liens and claims under the Prepetition Claim

Documents, the Adequate Protection Liens and the Adequate Protection Claims, and any and all other forms of adequate protection, liens, or claims securing the Credit Agreement Obligations, or obligations secured pursuant to any prepetition secured facilities, and provided further that any residual interest in the Carve Out shall be subject to the Prepetition Liens, the Adequate Protection Liens, and the Adequate Protection Claims set forth above.

48.     By no later than 5:00 p.m. (Eastern Time) on September 24, 2020 and  every other Thursday thereafter (or, if such Thursday is not a business day, then the immediately succeeding business day), Davis Polk & Wardwell LLP and counsel to any Committee, if any, shall deliver to the Prepetition Agent a statement setting forth the amount (estimated in good faith) of professional fees incurred by the applicable Professional Persons employed by the Debtors, their estates, or any Committee, if any, (the "**Estate Professional Fees**") during the preceding two weeks by the applicable Professional Persons (Sunday through Saturday of the two week period, the "**Calculation Date**"), together with a cumulative total and a statement of the amount of allowed Estate Professional Fees that have been paid to date by the Debtors, and the cumulative statement of the amount of allowed Estate Professional Fees of such Professional Person that remain unpaid (each such statement, a "**Bi-Weekly Statement**").  If the Bi-Weekly Statement is not delivered when due hereunder, or within three business days thereof, or fails to accurately or timely report all relevant information in a Bi-Weekly Statement, then amounts that were not included in such timely Bi-Weekly Statement or that were incurred during the time period in which a Bi-Weekly Statement was not timely submitted shall be excluded from the Carve Out.

49.     Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

50.     None of the Prepetition Agent nor the Prepetition Lenders shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Persons incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code or otherwise.  Nothing in this Final Order or otherwise shall be construed to obligate the Prepetition Agent or Prepetition Lenders, in any way, to pay compensation to, or to reimburse expenses of, any Professional Persons or to guarantee or ensure that the Debtors have sufficient funds to pay such compensation or reimbursement and, any such obligation to make payments to any Professional Person shall be an obligation of the Debtors' estates.

51.     Other than the Carve Out, neither the Prepetition Agent nor the Prepetition Lenders consent to any carve-out from the Prepetition Collateral for the payment of any fees or expenses of any Professional Persons.

52.     Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees incurred on or after the delivery of the Carve Out Trigger Notice shall permanently reduce the Carve Out on a dollar-for-dollar basis.

53.     The amounts payable on account of Allowed Professional Fees are subject to final approval and allowance by the Court, and the Prepetition Agent expressly retains their right to object to any fees or expenses of any Professional Persons as to reasonableness or on any other grounds.

54.     Until such time as the Prepetition Claim and the Adequate Protection Claim shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Prepetition Claim Documents and this Final Order or receive such other treatment under a confirmed plan or reorganization, as applicable, any remaining unapplied retainer funds at the conclusion of a Professional Person's engagement shall be immediately returned to the Prepetition Agent as Cash

RLF1 23962453v.1

Collateral.  Any and all payments of fees and expenses to any Professional Person or use of Cash Collateral shall constitute a decrease in the value of the Prepetition Collateral and the Cash Collateral for all purposes including, without limitation, all adequate protection and superpriority claims granted under the Bankruptcy Code and this Final Order.  Nothing herein shall be construed to affect the rights of any party in interest to file an application for the allowance of fees and expenses, provided that all parties' rights to object to or otherwise contest the relief requested in any such application are reserved.

55.     Notwithstanding anything to the contrary in this Final Order, neither the Carve Out, Cash Collateral, or any proceeds of the Prepetition Collateral shall be used to pay any Allowed Professional Fees (including, without limitation, expenses) in connection with any of the following (each a "**Prohibited Purpose**"): (a) objecting to, seeking subordination of, seeking to avoid, or contesting in any manner the validity, amount, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim or offset to, the Motion or any of the relief requested therein, the Interim Order, this Final Order, the Prepetition Claim, the Adequate Protection Claim, or any other claim of the Prepetition Agent or the Prepetition Lenders, or the perfected status or priority of any of the Prepetition Liens, the Adequate Protection Liens, or any other liens of the Prepetition Agent or the Prepetition Lenders, or any other rights or interests of the Prepetition Agent or the Prepetition Lenders; (b) asserting, investigating, prosecuting, or joining in any claim, demand, or cause of action against the Prepetition Agent or any Prepetition Lender, including, without limitation, for lender liability, breach of contract, or tort, or pursuant to Section 105, 506, 510, 544, 547, 548, 549, 550, 552 or 553 of the Bankruptcy Code, applicable non-bankruptcy law, or otherwise; (c) seeking to modify, or modifying, any of the rights granted under this Final Order to the Prepetition Agent or any Prepetition Lender or under the Prepetition Claim Documents;

(d) after the occurrence and during the continuance of an Event of Default and the expiration of the Default Notice Period, objecting to, contesting, delaying, preventing, hindering, or interfering in any way with (i) the Prepetition Agent's or the Prepetition Lenders' enforcement of realization upon any of the Prepetition Collateral, or (ii) the exercise of any rights and remedies by the Prepetition Agent or the Prepetition Lenders with respect to any Prepetition Collateral (e) asserting or declaring any of the Prepetition Claim Documents or this Final Order to be invalid, not binding, or unenforceable in any respect, (f) using Cash Collateral except as specifically permitted in this Final Order and the Budget, *provided* that, notwithstanding the foregoing, Cash Collateral may be used to pay the fees earned and expenses incurred of counsel to any official committee appointed in the Cases prior to the expiration of the Challenge Period in an amount not to exceed $75,000 to review the Prepetition Claim, the Prepetition Claim Documents, and any lien or security interest granted thereby, and to investigate the foregoing matters described in clause (a) through (e) of this paragraph and assert any challenges to one or more of the Debtors' stipulations or the releases set forth herein; provided further that nothing herein shall preclude the Debtors from seeking reimbursement for their reasonable fees and expenses incurred in responding to formal discovery requests brought by third parties in connection with any of the foregoing; provided further that nothing herein shall preclude the Debtors from (x) seeking, in good faith, a determination regarding whether the Termination Date has occurred (or curing or attempting to cure any alleged termination events hereunder) (y) seeking, in good faith, an order authorizing the Debtors' non-consensual use of Cash Collateral, or (z) contesting, in good faith, whether the Restructuring Support Agreement is breached or otherwise terminated.

## Section 552(b) of the Bankruptcy Code

56.     Subject to the Carve Out, the Prepetition Agent shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Agent with respect to the proceeds, products, offspring, or profits of any of the Prepetition Collateral or Adequate Protection Collateral.

## No Surcharge/Marshalling

57.     All rights to surcharge the interests of the Prepetition Agent in any Prepetition Collateral or Adequate Protection Collateral under section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties in interest in these Cases.

58.     The Prepetition Agent shall not be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Prepetition Collateral or Adequate Protection Collateral.

## Proofs of Claim

59.     None of the Prepetition Agent or any of the Prepetition Lenders shall be required to file proofs of claim in any of the Cases or in any subsequent cases of the Debtors under any chapter of the Bankruptcy Code, and the Debtors' stipulations in this Final Order shall be deemed to constitute a timely filed proof of claim against the applicable Debtor(s) in order to assert a claim for the Prepetition Claim arising under the Prepetition Claim Documents.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation, administrative expense claims) in any of the Cases or any subsequent cases shall not apply to the Prepetition Agent or the Prepetition Lenders with respect to the Prepetition Claim or the Adequate

Protection Claim, as applicable, arising under the Prepetition Claim Documents.  Notwithstanding

the foregoing, the Prepetition Agent is hereby authorized and entitled, in its discretion, but not

required, to file (and amend and/or supplement, as applicable) a single, master proof of claim (a

"**Master Proof of Claim**") for any claims of the Prepetition Agent or the Prepetition Lenders

arising from the Prepetition Claim Documents.  Upon the filing of a Master Proof of Claim by the

Prepetition Agent, each of the Prepetition Lenders and each of their respective successors and

assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name

therein in respect of its claims against each of the Debtors of any type or nature whatsoever, and

the claim of the Prepetition Agent and each Prepetition Lender (and each of its respective

successors and assigns) named in a Master Proof of Claim shall be treated as if such entity had

filed a separate proof of claim in each of the Cases; provided, however, that nothing herein shall

waive the right of any Prepetition Lender to file its own proof(s) of claim against the Debtors.

### Events of Default

60.    The occurrence of any of the following events shall constitute an event of default

(each an "**Event of Default**"):

> (a)    any default, violation, or breach of any of the Debtors, or the Debtors' failure to comply with, any of the terms of this Final Order;
>
> (b)    the Debtors shall fail to obtain, on or before thirty (30) days after the Petition Date, entry of the Final Order in form and substance acceptable to the Prepetition Agent;
>
> (c)    an ERISA Event (as defined in the Credit Agreement) shall have occurred that, when taken together with all other ERISA Events that have occurred, would reasonably be expected to result in liability of the Debtors in an aggregate amount exceeding $15,000,000;
>
> (d)    the dismissal or conversion to chapter 7 of the Bankruptcy Code of any of the Cases, or the Debtors shall file a motion or other pleading or support a motion or other pleading filed by any other person seeking the dismissal or conversion of any of the Cases without the consent of the Prepetition Agent;

(e)     the appointment of a trustee or examiner with expanded powers (beyond those set forth in Bankruptcy Code sections 1106(a)(3) and (4)) under Bankruptcy Code section 1106(b) in the Cases, or the Debtors shall file a motion or other pleading or support a motion or other pleading filed by any other person seeking appointment of such a trustee or examiner with expanded powers (beyond those set forth in Bankruptcy Code sections 1106(a)(3) and (4)) in any of the Cases without the consent of the Prepetition Agent;

(f)     except in the case of Permitted Liens granted pursuant to section 546(b) of the Bankruptcy Code or as otherwise permitted by this Final Order (including liens granted pursuant to the Hedging Order), the grant of any security interest, lien, or encumbrance in any of the Prepetition Collateral or Adequate Protection Collateral which is *pari passu* with or senior to the liens, security interests, or claims of the Prepetition Secured Parties (including, without limitation, the Adequate Protection Liens), including, without limitation, any surcharge of or the imposition or assessment of any costs against of the Prepetition Collateral or Adequate Protection Collateral pursuant to Bankruptcy Code section 506(c) or 552(b) or otherwise, unless the Prepetition Agent agrees in writing that such security interest, lien, or encumbrance does not constitute an Event of Default;

(g)     without the consent of the Prepetition Agent, the entry of an order granting relief from the Automatic Stay to the holder or holders of any other security interest or lien (other than the Prepetition Secured Parties) in any Prepetition Collateral or the Adequate Protection Collateral to permit the pursuit of any judicial or non-judicial transfer or other remedy against any of the Prepetition Collateral or the Cash Collateral, in each case involving assets with a value in excess of $1,000,000;

(h)     any attempt by any Debtor to vacate or modify this Final Order over the objection of the Prepetition Agent, and the entry of any order modifying, reversing, revoking, staying, rescinding, vacating, or amending this Final Order without the consent of Prepetition Agent;

(i)     the Debtors contest or commence any challenge to the extent, validity, priority, amount, or unavoidability of the Prepetition Claim, the Prepetition Secured Parties' liens securing the Prepetition Claim, or the Adequate Protection Claim or any Prepetition Claim Document, or shall support or consent to any other person concerning the foregoing;

(j)     the Debtors fail to timely pay within three (3) business days of the date such payment is due, any amount required to be paid to the Prepetition Agent by this Final Order or the Budget;

(k)     the Debtors fail to adhere to the Budget (subject to the Permitted Variance) in accordance with this Final Order;

(l)     the allowance of any priority claims (other than the Carve Out) in the Cases that are senior to or *pari passu* with the Adequate Protection Claims or secured claims of the Prepetition Secured Parties against the Debtors and their estates arising from the Prepetition Claim Documents and this Final Order, in each case other than the Carve Out and Permitted Liens;

(m)     except in the ordinary course of the Debtors' business, the sale, transfer, lease, disposition of, or the imposition of any encumbrance on (other than the Carve Out or Permitted Liens), any of the Prepetition Collateral or Cash Collateral, without the prior written consent of the Prepetition Agent;

(n)     one or more judgments for the payment of money in an aggregate amount in excess of $500,000 (to the extent not covered by independent third party insurance provided by insurers satisfactory to Prepetition Agent as to which the insurer does not dispute coverage and is not subject to an insolvency proceeding, provided that a claim that is pending under review by such an insurer shall not be deemed "denied" for purposes of this clause), shall be rendered against the Debtors and the same shall remain undischarged for a period of thirty (30) consecutive days during which execution shall not be effectively stayed (including as a result of the pendency of the Cases);

(o)     the entry of an order by the Court terminating or reducing the period during which the Debtors have the exclusive right to file a chapter 11 plan and solicit acceptances thereof pursuant to section 1121 of the Bankruptcy Code;

(p)     the Debtors shall have obtained court authorization to commence, or shall commence, join in, assist or otherwise participate as an adverse party in any suit or other proceeding against any of the Prepetition Secured Parties, provided, however, that the Debtors may comply with discovery requests in connection with any such suit or other proceeding in accordance with applicable law;

(q)     the entry of an order by the Court (or any other court of competent jurisdiction) approving any financing under section 364 of the Bankruptcy Code that does not provide for the payment in full of the Prepetition Claim or the Debtors shall file a motion or other pleading or shall support a motion or other pleading filed by any other person seeking any of the foregoing;

(r)     the filing by any Debtor of a chapter 11 plan without the prior written consent of the Prepetition Agent that does not provide for the payment in full of the Prepetition Claim in cash on the effective date of such plan, *provided*, *however*, the Prepetition Agent shall be deemed to consent to the

filing of the chapter 11 plan annexed to the Restructuring Support Agreement, including any amendment or modification thereto that is consistent with the consent rights provided under the Restructuring Support Agreement;

(s)    other than sales in the ordinary course of the Debtors' business, the entry of an order of the Court pursuant to Bankruptcy Code section 363 approving the sale of any Prepetition Collateral or Adequate Protection Collateral that does not provide for the payment in full of the Prepetition Claim upon the closing of the sale without the consent of the Prepetition Agent;

(t)    the entry of an order of the Court limiting the ability of the Prepetition Secured Parties, either individually or together with one or more Prepetition Secured Party, to credit bid pursuant to Bankruptcy Code section 363(k) their claims in the Cases in connection with any asset sale process or plan sponsorship process or any sale of assets (in whole or part) by any Debtor, including without limitation sales occurring pursuant to Bankruptcy Code section 363 or included as part of any restructuring plan subject to confirmation under Bankruptcy Code section 1129(b)(2)(A)(ii)-(iii), provided, however, that the foregoing shall not apply to the extent any Prepetition Collateral is the subject of a successful Challenge (as defined below);

(u)    the entry of an order of the Court without the consent of the Prepetition Agent providing for a transfer in venue of any of the Cases;

(v)    the failure of the Debtors to meet any of the Milestones; and

(w)    the termination of the Restructuring Support Agreement.

## REMEDIES

61.    Without requiring further order from the Court and without the need for filing any motion for relief from the Automatic Stay or any other pleading, upon the occurrence of any Event of Default and following the giving of not less than five (5) business days' prior written notice (the "**Default Notice Period**") by the Prepetition Agent via email (the "**Default Notice**") to counsel to the Debtors, the U.S. Trustee, counsel to the Ad Hoc Group, and counsel to any official committee appointed in these Cases, unless such occurrence is cured by the Debtors prior to the expiration of the Default Notice Period, the Debtors' authority to use Cash Collateral shall immediately

terminate on such a date when the Default Notice Period expires (the "**Termination Date**");
*provided, however*, that during the Default Notice Period, the Debtors, any official committee
appointed in these Cases, and any party in interest may seek an emergency hearing before the
Court for any purpose, including to contest whether an Event of Default has occurred, and must
provide prompt notice of such hearing to the Prepetition Agent and its counsel; *provided* that
during the Default Notice Period, the Debtors shall be entitled to continue to use the Cash
Collateral in accordance with the terms of this Final Order and the Debtors and the Prepetition
Agent consent to an expedited hearing before the Court; *provided*, *further*, that if a hearing to
consider any relief in connection with the delivery of the Default Notice or continued use of Cash
Collateral is requested to be heard within such Default Notice Period but is scheduled for a later
date by the Court, the Default Notice Period shall be automatically extended, for a maximum five
(5) business days, to the date of such hearing.  For the avoidance of doubt, notwithstanding the
foregoing, the Debtors shall be permitted to make payments from the Carve Out.

62.     Upon the occurrence of the Termination Date, unless otherwise ordered by this
Court, the Automatic Stay shall be immediately modified as to the Prepetition Agent and the
Prepetition Lenders in order to permit the Prepetition Agent and the Prepetition Lenders to exercise
any or all of their other rights and remedies set forth in this Final Order and the Prepetition Claim
Documents (subject only to the Carve Out and the Permitted Liens)  pursuant to and subject to the
terms and provisions of this Final Order and the Prepetition Claim Documents.  Notwithstanding
the occurrence of a Termination Date, all of the rights, remedies, benefits, and protections provided
to the Prepetition Secured Parties in this Final Order shall survive.

63.     Notwithstanding anything to the contrary in this Final Order, if the Debtors are no
longer authorized to use Cash Collateral under this Final Order, including during the Default

RLF1 23962453v.1

Notice Period, the Debtors may seek authority to use Cash Collateral without the consent of the Prepetition Secured Parties, and the Prepetition Secured Parties rights to contest the same on any grounds are reserved.

64.    Subject to section 363(k) of the Bankruptcy Code, the Prepetition Agent may, at the direction of the Majority Lenders (as defined in the Credit Agreement), credit bid all or any portion of the Prepetition Agent's and the Prepetition Lenders' respective claims, including, without limitation, the Prepetition Claim, at any time, including during any auction or other sale process, on any individual asset, portion of the assets, or all assets constituting their respective Prepetition Collateral or Adequate Protection Collateral in conjunction with any sale of the Debtors' assets pursuant to any chapter 11 plan or sale transaction.

## OTHER TERMS

65.    No obligations incurred or payments or other transfers made by or on behalf of the Debtors to the Prepetition Agent or the Prepetition Lenders after the Petition Date pursuant to this Final Order shall be avoidable or recoverable from the Prepetition Agent or the Prepetition Lenders under any section of the Bankruptcy Code, any other federal, state, or other applicable law, or otherwise.  Any postpetition transfer or other payment by or on behalf of the Debtors to the Prepetition Agent, or any postpetition application by the Prepetition Agent, pursuant to this Final Order or otherwise, shall be subject to the priorities in payment as set forth in this Final Order (including the Carve Out) and the Prepetition Claim Documents, as applicable.

66.    The provisions of this Final Order shall inure to the benefit of the Debtors, the Prepetition Agent, and the Prepetition Lenders, and they shall be binding upon (a) the Debtors and their successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed as legal representative of the Debtors or with respect to property of the estates of the

Debtors, whether under chapter 11 of the Bankruptcy Code, any confirmed plan, any subsequent chapter 7 case, or after any dismissal of the Cases and (b) all creditors of any of the Debtors and other parties in interest.

67.    The Prepetition Lenders' consent for the Debtors' use of Cash Collateral is given in reliance on this Final Order, and so long as the Prepetition Claim, the Adequate Protection Claim, and all other claims of the Prepetition Agent and the Prepetition Lenders against the Debtors remain unpaid, there shall not at any time be entered in the Cases any other order that, except as consented to by the Prepetition Agent in writing, (a) authorizes the use of Cash Collateral or the sale, lease, or other disposition of the Prepetition Collateral or Adequate Protection Collateral unless the cash proceeds will indefeasibly pay the Prepetition Claim, the Adequate Protection Claim, and all other claims of the Prepetition Agent and the Prepetition Lenders against the Debtors in full, (b) authorizes the obtaining of credit or the incurring of indebtedness secured by a lien or security interest in property in which the Prepetition Agent or the Prepetition Lenders hold or assert liens or security interests, or (c) grants to any claim a priority administrative claim status that is equal or superior to the superpriority status granted to the Prepetition Agent and the Prepetition Lenders herein, *provided*, *however*, that notwithstanding the forgoing, there shall be no prohibition on the use of Cash Collateral to pay any fees and expenses required to be paid under the Backstop Commitment Agreement including, without limitation, any break up fee.

68.    The terms hereunder and under the Prepetition Claim Documents, the Prepetition Liens, and the Adequate Protection Liens granted to the Prepetition Agent and the Prepetition Lenders under this Final Order, and the rights of the Prepetition Agent and the Prepetition Lenders pursuant to this Final Order with respect to the Prepetition Collateral and the Adequate Protection

Collateral shall not be altered, modified, extended, impaired, or affected by any chapter 11 plan of the Debtors without the prior written consent of the Prepetition Agent.

69.     The terms and provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order that may be entered converting to chapter 7 or dismissing the Debtors' Cases, except for the Debtors' authority to use any Cash Collateral and any obligations. The terms and provisions of this Final Order, as well as the priorities in payment, liens, and security interests granted pursuant to this Final Order and the Prepetition Claim Documents, shall continue after any dismissal of the Debtors' Cases in this or any subsequent case under the Bankruptcy Code of any of the Debtors, and such priorities in payment, liens, and security interests shall maintain their priority as provided by this Final Order until such time as the Carve Out, the Prepetition Claim and the Adequate Protection Claim, and all other claims of the Prepetition Agent and the Prepetition Lenders against the Debtors shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Prepetition Claim Documents and this Final Order, and the Prepetition Secured Parties shall have no further obligation or financial accommodation to any of the Debtors.

70.     The Debtors' stipulations, admissions, releases, and waivers contained in paragraphs 8 through 11 and paragraph 80 of this Final Order shall be binding upon the Debtors and any successor thereto, upon entry of this Final Order, in all circumstances and for all purposes. The Debtors' stipulations, admissions, releases, and waivers contained in paragraphs 8 through 11 and paragraph 80 of this Final Order shall be binding upon the Debtors' estates and all other parties in interest, including, without limitation, any statutory or non-statutory committee appointed or formed in these Cases (a "**Committee**"), any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors and any other person or entity acting or seeking to act on behalf of the

Debtors' estates, upon entry of this Final Order,  in all circumstances and for all purposes unless: (a) such other party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) by no later than (i) the earlier of (x) if any chapter 11 plan is proposed, the date on which such plan is confirmed (the "**Plan Confirmation Date**") and (y) seventy-five (75) calendar days after entry of the Interim Order, (ii) solely with respect to any Committee, the earlier of (x) the Plan Confirmation Date, (y) sixty (60) calendar days after the formation of such Committee, and (z) seventy-five (75) calendar days after entry of the Interim Order, (iii)  solely with respect to any chapter 7 or 11 trustee, the later of (x) the earlier of (a) the Plan Confirmation Date and (b) seventy-five (75) calendar days after entry of the Interim Order and (y) if any chapter 7 or chapter 11 trustee is appointed prior to conclusion of the time period set for in the preceding (x) above, ten (10) calendar days after the date on which such trustee is appointed, (iv) any such later date as has been agreed to in writing by the Prepetition Agent (the time period established by the foregoing clauses (i) and (iv), the "**Challenge Period**"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority, or extent of the Prepetition Claim or the Prepetition Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims, or any other claims, counterclaims, or causes of action, objections, contests, or defenses (each a "**Challenge**" and, collectively, the "**Challenges**") against any of the Prepetition Secured Parties or their representatives in connection with matters related to against any of the Prepetition Secured Parties or their representatives in connection with matters related to the (i) Prepetition Claim Documents, (ii) the Prepetition Claim, (iii) the Prepetition Liens, or (iv) the Prepetition Collateral,

and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; *provided*, *however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred.  If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding, then: (a) the Debtors' stipulations, admissions, agreements and releases contained in this Final Order shall be binding on all parties in interest, including, without limitation, the Committee (if any), (b) the obligations of the Debtors under the Prepetition Claim Documents shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in these Cases, and any subsequent chapter 7 case(s), (c) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance subject only to (i) the Carve Out and (ii) Permitted Liens, or other defense, in each case, and (d) the Prepetition Claim and the Prepetition Liens shall not be subject to any other or further claim or challenge by any Committee or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims and offsets by the Committee (if any), any non-statutory committees appointed or formed in these Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors, whether arising under the Bankruptcy Code

or otherwise, against any of the Prepetition Secured Parties and their representatives arising out of or relating to the Prepetition Claim Documents shall be deemed forever waived, released, and barred.  If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Final Order in paragraphs 8 through 11 and paragraph 80 of this Final Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee (if any), and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of court of competent jurisdiction.  Nothing in this Final Order vests or confers on any person, including the Committee (if any), standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to (i) the Prepetition Claim Documents, (ii) the Prepetition Claim, or (iii) the Prepetition Liens.

71.     If any or all of the provisions of this Final Order are hereafter modified, vacated, or stayed without the prior written agreement of the Prepetition Agent, such modification, vacation, or stay shall not affect the validity or enforceability of any security interest, lien, priority or other protection authorized, granted, or created hereby or pursuant to any of the Prepetition Claim Documents and notwithstanding any such modification, vacation, or stay, any indebtedness, obligations, or liabilities incurred by the Debtors to the Prepetition Agent before the effective date of such modification, vacation, or stay shall be governed in all respects by the original provisions of this Final Order, and the Prepetition Agent shall be entitled to all the liens, rights, remedies, privileges, and benefits granted herein and pursuant to the Prepetition Claim Documents with respect to all such indebtedness, obligations, or liabilities.

72.     No approval, agreement, or consent requested of the Prepetition Agent by the Debtors pursuant to the terms of this Final Order or otherwise shall be inferred from any action, inaction, or acquiescence of the Prepetition Agent other than a writing acceptable to the Prepetition Agent that is signed by the Prepetition Agent and expressly shows such approval, agreement or consent, without limitation.  Nothing herein shall in any way affect the rights of the Prepetition Agent or the Prepetition Lenders as to any non-Debtor entity, without limitation.  Unless expressly required otherwise hereunder, any determination, agreement, decision, consent, election, approval, acceptance, waiver, designation, authorization, or other similar circumstance or matter of the Prepetition Agent or the Prepetition Lenders hereunder or related hereto, shall be in the Prepetition Agent's and/or the Prepetition Lenders', as applicable, sole discretion.  Any act committed or action taken by the Prepetition Agent hereunder shall be deemed to be made for itself and for and on behalf of the Prepetition Lenders, as applicable.  Any authority or other right, benefit, or interest granted to the Prepetition Agent hereunder is deemed to be granted to the Prepetition Agent for itself and for and on behalf of the Prepetition Lenders, as applicable.  Any postpetition transfer or other payment by or on behalf of the Debtors to the Prepetition Agent, or any postpetition application by the Prepetition Agent, pursuant to this Final Order or otherwise, shall be deemed to be made to the Prepetition Agent, for itself and for and on behalf of the Prepetition Lenders.

73.     Nothing herein shall be deemed or construed to waive, limit, or modify the rights of the Prepetition Agent to obtain further adequate protection and other statutory protections for the use of the Prepetition Collateral and Cash Collateral, or to seek other relief in these Cases in accordance with any provision of the Bankruptcy Code or applicable law.

74.     Unless expressly and specifically provided otherwise herein, nothing herein shall be deemed or construed to waive, limit, modify or prejudice the claims, rights, protections,

Case 20-11947-MFW    Doc 180    Filed 09/10/20    Page 50 of 53


privileges and defenses of the Prepetition Agent and the Prepetition Lenders afforded pursuant to the Bankruptcy Code.

75.     Notwithstanding anything in this Final Order to the contrary, nothing in this Final Order shall in any way prime or affect any rights of U.S. Specialty Insurance Company and/or its successors and/or assigns (the "**Surety**"), as to (a) any funds it is holding and/or being held for it, whether in trust, as security or otherwise, (b) any substitutions or replacements of said funds (including accretions to and interest earned on said funds), and (c) any letters of credit related to any indemnity, collateral trust, or related agreements between the Surety and any of the Debtors (collectively (a) to (c), the "**Surety Assets**").  Nothing in this Final Order shall (a) affect any rights of the Surety under any indemnity, collateral trust, or related agreements between the Surety and any of the Debtors as to the Surety Assets, and any requirement of the Debtors to segregate Cash Collateral shall not apply to the Surety Assets, (b) prime any setoff, recoupment and/or lien rights of the Surety or any party to whose rights the Surety may become subrogated therein, or (c) affect any rights or remedies of the Prepetition Secured Parties in connection with (i) the Surety Assets, or (ii) any rights or remedies of the Surety or any party to whose rights the Surety may become subrogated therein, all of which are expressly preserved.

76.     Notwithstanding anything in this Final Order to the contrary, to the extent that Certain Texas Taxing Entities[7] hold valid, binding, perfected, enforceable, and non-avoidable liens for prepetition ad valorem taxes on any of the Prepetition Collateral (the "Taxing Entities' Tax Liens"), such Taxing Entities' Tax Liens shall neither be primed by nor subordinated to any Adequate Protection Liens granted in this Final Order.  To the extent any of the Debtors' assets

---

[7] For purposes of this Final Order, the term "Certain Texas Taxing Entities" shall refer to Hemphill County Tax Office, Canadian ISD, Ochiltree County Appraisal District, Lipscomb County Tax Office and Roberts County Tax Office.

**FINAL FINANCING ORDER**                                                      **PAGE 50**

RLF1 23962453v.1

subject to the Taxing Entities' Tax Liens is sold, transferred or otherwise disposed of, the Taxing

Entities Tax Liens shall attach to the proceeds of such assets to the same extent and with the same

priority as existed prior to such sale, transfer or other disposition.  All parties' rights to object to

the priority, validity, enforceability, amount, and extent of the claims and liens asserted by the

Certain Texas Taxing Entities are fully preserved.

77.    This Final Order, and the findings of fact and conclusions of law contained herein,

shall be effective upon approval by the Court, and may be relied upon by the Prepetition Agent,

the Prepetition Lenders, and the Debtors without the necessity of entry into the docket sheet of

these Cases.  To the extent any findings may constitute conclusions, and vice versa, they are hereby

deemed as such.

78.    The Court hereby expressly retains jurisdiction to enforce the terms of this Final

Order and to adjudicate any and all disputes in connection therewith by motion and without

necessity of an adversary proceeding.

79.    All headings in this Final Order are descriptive and for reference only, and do not

have separate meaning or change any terms therein.

## **WAIVER OF CLAIMS**

80.    SUBJECT TO PARAGRAPH 70 HEREOF, EACH OF THE DEBTORS (IN

THEIR OWN RIGHT, ON BEHALF OF THEIR ESTATES, AND THEIR SUCCESSORS AND

ASSIGNS, IN EACH CASE TO THE EXTENT PERMITTED BY APPLICABLE LAW)

(COLLECTIVELY, THE "**RELEASING PARTIES**"), HEREBY RELEASES, ACQUITS,

FOREVER DISCHARGES AND COVENANTS NOT TO SUE THE PREPETITION AGENT,

THE PREPETITION LENDERS, IN EACH CASE IN THEIR CAPACITY AS PREPETITION

LENDERS OR PREPETITION AGENT, RESPECTIVELY, AND THE PREPETITION AGENT,

AND THE PREPETITION LENDERS' REPRESENTATIVES, AFFILIATES, DIRECTORS, OFFICERS, EMPLOYEES, INDEPENDENT CONTRACTORS, ATTORNEYS AND AGENTS, AND THEIR SUCCESSORS AND ASSIGNS, IN EACH CASE IN THEIR CAPACITY AS SUCH (THE "**RELEASED PARTIES**") FROM ANY AND ALL ACTS AND OMISSIONS OF THE RELEASED PARTIES, AND FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, AVOIDANCE ACTIONS, COUNTERCLAIMS, DEMANDS, CONTROVERSIES, COSTS, DEBTS, SUMS OF MONEY, ACCOUNTS, RECKONINGS, BONDS, BILLS, DAMAGES, OBLIGATIONS, LIABILITIES, OBJECTIONS, LEGAL PROCEEDINGS, EQUITABLE PROCEEDINGS, AND EXECUTIONS OF ANY NATURE, TYPE, OR DESCRIPTION WHICH THE RELEASING PARTIES HAVE OR MAY COME TO HAVE AGAINST THE RELEASED PARTIES THROUGH THE DATE OF THIS FINAL ORDER, AT LAW OR IN EQUITY, BY STATUTE OR COMMON LAW, IN CONTRACT, IN TORT, INCLUDING, WITHOUT LIMITATION, BANKRUPTCY CODE CHAPTER 5 CAUSES OF ACTION, WHETHER THE LAW OF THE UNITED STATES OR ANY OTHER COUNTRY, UNION, ORGANIZATION OF FOREIGN COUNTRIES OR OTHERWISE, KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED (COLLECTIVELY, THE "**RELEASED CLAIMS**").  THE DEBTORS, ON BEHALF OF THE RELEASING PARTIES, FURTHER COVENANT NOT TO SUE THE RELEASED PARTIES ON ACCOUNT OF ANY RELEASED CLAIM.  THIS PARAGRAPH IS IN ADDITION TO AND SHALL NOT IN ANY WAY LIMIT ANY OTHER RELEASE, COVENANT NOT TO SUE, OR WAIVER BY THE RELEASING PARTIES IN FAVOR OF THE RELEASED PARTIES.  NOTWITHSTANDING THE RELEASES AND COVENANTS IN FAVOR OF THE RELEASED PARTIES CONTAINED ABOVE IN THIS PARAGRAPH, SUCH RELEASES AND COVENANTS IN

FAVOR OF THE RELEASED PARTIES SHALL BE DEEMED ACKNOWLEDGED AND REAFFIRMED BY THE DEBTORS EACH TIME THERE IS A FINANCIAL ACCOMMODATION OR USE OF CASH COLLATERAL UNDER THIS FINAL ORDER AND THE PREPETITION CLAIM DOCUMENTS.  THE RELEASES AND WAIVERS IN THIS PARAGRAPH SHALL SURVIVE THE OCCURRENCE OF AN EVENT OF DEFAULT UNDER THIS FINAL ORDER.

## EXPIRATION DATE/MATURITY

81.     The Prepetition Agent's consent and Debtors' authority to use Cash Collateral this Final Order, subject to the funding and Budget limitations above, shall be effective upon entry of this Final Order to and including, without limitation, the earlier of: (a) thirty (30) days after the Petition Date, if the Court has not entered the Final Order (the "**Expiration Date**") or (b) the effective date of any chapter 11 plan, at which time all of the Debtors' authority to use Cash Collateral and this Final Order shall terminate, unless extended by written agreement of the parties hereto.

82.     This Final Order is effective immediately.

Dated: September 10th, 2020
Wilmington, Delaware

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**